## NO. 25-1837

# In the United States Court of Appeals for the Eighth Circuit

CHRISTINE KLIMEK,

APPELLANT,

v.

CENTRACARE HEALTH SYSTEM,

APPELLEE.

*Appeal from the
United States District Court
for the District of Minnesota*

## BRIEF OF APPELLANT CHRISTINE KLIMEK

ANDREW D. PARKER
JOSEPH A. PULL

PARKER DANIELS KIBORT LLC
888 COLWELL BUILDING
123 NORTH THIRD STREET
MINNEAPOLIS, MN 55401
(612) 355-4100

*Counsel for Appellant*

Appellate Case: 25-1837    Page: 1    Date Filed: 06/25/2025 Entry ID: 5530609

## Summary of the Case and Request for Oral Argument

Christine Klimek was a full-time remote employee of CentraCare Health System. Due to a health condition, Klimek's doctors have advised her since 2016 not to take vaccinations. In 2021, CentraCare adopted a policy requiring its employees to receive COVID-19 vaccination. Because of her health condition, Klimek asked to be excused from the requirement and to be permitted instead to continue working from home. CentraCare denied her request and terminated her. Klimek sued under the Americans with Disabilities Act for failure to accommodate her disability.

The district court entered summary judgment in favor of CentraCare on the bases that vaccination was an essential job function for Klimek and that CentraCare engaged in an interactive process to find a reasonable accommodation and properly determined there was none, leaving only vaccination or termination. The district court also concluded there was a genuine dispute whether Klimek had a disability due to her condition substantially limiting any major life activity.

The district court misapplied the ADA and its decision lacks evidentiary support. Klimek undisputedly meets the elements of a failure to accommodate claim. Klimek requests 15 minutes of oral argument.

i

Appellate Case: 25-1837     Page: 2     Date Filed: 06/25/2025 Entry ID: 5530609

# Table of Contents

Summary of the Case and Request for Oral Argument ................................... i

Table of Contents ........................................................................... ii

Table of Authorities ...................................................................... iv

Jurisdictional Statement .................................................................1

Statement of Issues Presented for Review.......................................................2

Statement of the Case .....................................................................5

Summary of the Argument....................................................................14

Argument ..................................................................................17

   I.   Prima Facie Case ...................................................................20

     A.  Klimek Is Disabled Because Her CRPS Substantially Limits
         Numerous Major Life Activities. .........................................................20

       1. "Substantially Limits" Means a Non-Trivial Reduction
          of Ability as Compared with Most People. .....................................21

       2. Klimek's CRPS Substantially Reduces Her Ability to
          Perform Major Life Activities. ...........................................................24

       3. There Is No Evidence to Create a Genuine Dispute of Fact
          That Klimek's CRPS Substantially Reduces Her Ability to
          Perform Major Life Activities. ...........................................................27

     B.  Klimek Is a Qualified Individual...............................................29

       1. Vaccination Was Not an Essential Job Function for
          Klimek, a Remote Worker.................................................................30

       2. The District Court's "Essential Job Function" Conclusion
          Is Unsupported. ..............................................................................31

       3. "Policy Compliance" Was Not an Essential Job Function
          for Klimek. ....................................................................................38

       4. *Hustvet v. Allina Health Sys*. Is Inapposite.......................................41

Appellate Case: 25-1837   Page: 3   Date Filed: 06/25/2025 Entry ID: 5530609

II. Failure to Accommodate.................................................................................46

    A. CentraCare Did Not Engage in a Good Faith Interactive
       Process to Identify a Reasonable Accommodation for Klimek........46

        1. The District Court Misapplied the Summary Judgment
           Standard.............................................................................................47

        2. The Undisputed Evidence Shows CentraCare Lacked
           Good Faith. ........................................................................................48

    B. A Reasonable Accommodation Existed for Klimek to
       Perform the Essential Functions of Her Job. ......................................52

        1. Allowing Klimek to Continue Working Remotely
           Full-Time Was a Reasonable Accommodation. ...............................53

        2. The District Court Erred by Excluding Consideration
           of Klimek Continuing to Work from Home as a Reasonable
           Accommodation. ...............................................................................55

        3. Application of CentraCare's Policy to All Employees Is Not
           a Permissible Reason to Deny Klimek an Accommodation. .........58

        4. The District Court Erred by Concluding Klimek's
           Requested Accommodation Was Not Related to Her
           Disability, Because CDC Guidance Does Not Obviate an
           Employer's Responsibility Under the ADA.....................................61

Conclusion................................................................................................................67

Certificate of Compliance .....................................................................................68

Certificate of Service .............................................................................................69

Appellate Case: 25-1837    Page: 4    Date Filed: 06/25/2025 Entry ID: 5530609

# Table of Authorities

**Cases**

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
    594 U.S. 758 (2021)....................................................................................44

*Alexander v. Wash. Metro. Area Transit Auth.*,
    826 F.3d 544 (D.C. Cir. 2016)....................................................................22

*Bates v. United Parcel Serv.*,
    511 F.3d 974 (9th Cir. 2007).......................................................................60

*Bragdon v. Abbott*,
    524 U.S. 624 (1998)....................................................................................43

*Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*,
    439 F.3d 894 (8th Cir. 2006)........................................................ 2, 35, 48, 52

*Cravens v. Blue Cross & Blue Shield*,
    214 F.3d 1011 (8th Cir. 2000)....................................................... 2, 19, 48, 49

*Cripe v. City of San Jose*,
    261 F.3d 877 (9th Cir. 2001).......................................................................59

*EEOC v. Convergys Customer Mgmt. Grp.*,
    491 F.3d 790 (8th Cir. 2007).............................................. 3, 4, 52, 53, 56, 58

*EEOC v. Wal-Mart Stores, Inc.*,
    477 F.3d 561 (8th Cir. 2007)................................................................. 2, 34

*Ehlers v. Univ. of Minn.*,
    34 F.4th 655 (8th Cir. 2022)........................................................................52

*Fjellestad v. Pizza Hut of Am., Inc.*,
    188 F.3d 944 (8th Cir. 1999)................................................................ 3, 49, 57

*Garrison v. Dolgencorp, LLC*,
    939 F.3d 937 (8th Cir. 2019).............................................................. 3, 4, 51, 56

iv

Appellate Case: 25-1837    Page: 5    Date Filed: 06/25/2025 Entry ID: 5530609

*Hall v. Higgins,*
77 F.4th 1171 (8th Cir. 2023) ...................................................................57

*Hamilton v. Westchester Cty.,*
3 F.4th 86 (2d Cir. 2021) ..........................................................................21

*Harris v. Union Pac. R.R.,*
953 F.3d 1030 (8th Cir. 2020) ............................................................ 3, 59

*Hill v. Walker,*
737 F.3d 1209 (8th Cir. 2013) ...................................................................29

*Holiday v. City of Chattanooga,*
206 F.3d 637 (6th Cir. 2000) .....................................................................66

*Hustvet v. Allina Health Sys.,*
910 F.3d 399 (8th Cir. 2018) ............................................................... 41, 42

*Kammueller v. Loomis, Fargo & Co.,*
383 F.3d 779 (8th Cir. 2004) .............................................................. 2, 35

*Kowitz v. Trinity Health,*
839 F.3d 742 (8th Cir. 2016) .....................................................................51

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) ...................................................................................44

*Mobley v. St. Luke's Health Sys.,*
53 F.4th 452 (8th Cir. 2022) ......................................................................54

*Morrissey v. Laurel Health Care Co.,*
946 F.3d 292 (6th Cir. 2019) ............................................................... 2, 22

*Murthy v. Missouri,*
603 U.S. 43 (2024) .....................................................................................45

*Nyrop v. Indep. Sch. Dist. No. 11,*
616 F.3d 728 (8th Cir. 2010) .....................................................................22

*Sutton v. United Air Lines,*
527 U.S. 471 (1999) ........................................................................ 4, 65, 66

Appellate Case: 25-1837    Page: 6    Date Filed: 06/25/2025 Entry ID: 5530609

*Toyota Motor Manufacturing v. Williams*,
534 U.S. 184 (2002) ................................................................22

*Way v. City of Mo. City*,
133 F.4th 509 (5th Cir. 2025) ................................................ 2, 21

*Windham v. Harris County*,
875 F.3d 229 (5th Cir. 2017) ..................................................57

*Woodruff v. Peters*,
482 F.3d 521 (D.C. Cir. 2007) ................................................54

**Statutes**

28 U.S.C. § 1291 .......................................................................1

28 U.S.C. § 1331 .......................................................................1

28 U.S.C. § 1367 .......................................................................1

42 U.S.C. § 12101 ................................................................ 1, 17

42 U.S.C. § 12102(1) ........................................................... 21, 66

42 U.S.C. § 12102(2) ......................................................... 2, 25, 26

42 U.S.C. § 12102(4) ..................................................... 2, 22, 27, 28

42 U.S.C. § 12111 ............................................................ 3, 4, 54, 60

42 U.S.C. § 12112 ................................. 2, 4, 15, 17, 37, 58, 59, 60, 61

Minn. Stat. § 363A.01 .................................................................1

Minn. Stat. § 363A.08 ................................................................15

Appellate Case: 25-1837    Page: 7    Date Filed: 06/25/2025 Entry ID: 5530609

**Regulation**

29 C.F.R. § 1630.2 ................................................................................ 22, 23, 34

Appellate Case: 25-1837     Page: 8     Date Filed: 06/25/2025 Entry ID: 5530609

## Jurisdictional Statement

Plaintiff Christine Klimek brought claims pursuant to the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.*, and the Minnesota Human Rights Act (MHRA), Minn. Stat. § 363A.01 *et seq.*, in the United States District Court for the District of Minnesota. The district court had subject matter jurisdiction over the action pursuant to 28 U.S.C. § 1331 as the ADA claim arises under the laws of the United States, and pursuant to 28 U.S.C. § 1367 as the MHRA claim forms part of the same case or controversy.

The Court of Appeals has appellate jurisdiction pursuant to 28 U.S.C. § 1291 as this is an appeal from a final decision of the district court granting summary judgment in favor of Defendant CentraCare Health System on all claims. The district court entered its Order Granting Defendant's Motion for Summary Judgment on March 25, 2025 and its Judgment dismissing the Complaint on March 26, 2025. Klimek timely filed her Notice of Appeal on April 25, 2025.

Appellate Case: 25-1837    Page: 9    Date Filed: 06/25/2025 Entry ID: 5530609

## Statement of Issues Presented for Review

1. Whether the district court erred by failing to conclude there was no genuine dispute of material fact that Klimek has a "disability" within the meaning of the ADA.

   - *Way v. City of Mo. City*, 133 F.4th 509 (5th Cir. 2025)

   - *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292 (6th Cir. 2019)

   - 42 U.S.C. § 12102(2)(B), (4)

2. Whether the district court erred by concluding an employee who works full-time from home is not "qualified" for her position because receiving a COVID-19 vaccination is an "essential job function" for her.

   - *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561 (8th Cir. 2007)

   - *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779 (8th Cir. 2004)

   - *Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894 (8th Cir. 2006)

   - 42 U.S.C. § 12112(d)

3. Whether the district court erred in concluding that CentraCare engaged in a good faith interactive process to accommodate Klimek's disability.

   - *Cravens v. Blue Cross & Blue Shield*, 214 F.3d 1011 (8th Cir. 2000)

2

Appellate Case: 25-1837    Page: 10    Date Filed: 06/25/2025 Entry ID: 5530609

- *EEOC v. Convergys Customer Mgmt. Grp.*, 491 F.3d 790 (8th Cir. 2007)

- *Garrison v. Dolgencorp, LLC*, 939 F.3d 937 (8th Cir. 2019)

- *Fjellestad v. Pizza Hut of Am.*, 188 F.3d 944 (8th Cir. 1999)

4. Whether the district court erred by concluding there was no genuine dispute of fact as to whether there was a reasonable accommodation allowing Klimek to continue to work without taking the vaccine.

- *EEOC v. Convergys Customer Mgmt. Grp.*, 491 F.3d 790 (8th Cir. 2007)

- *Garrison v. Dolgencorp, LLC*, 939 F.3d 937 (8th Cir. 2019)

- *Harris v. Union Pac. R.R.*, 953 F.3d 1030 (8th Cir. 2020)

- 42 U.S.C. § 12111(9)(B)

5. Whether under the ADA an employer may on the basis of policy deny an employee's request for accommodation, without considering the employee's individual job function, medical condition, and numerous medical providers' medical opinions.

- *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030 (8th Cir. 2020)

3

- *EEOC v. Convergys Customer Mgmt. Grp.*, 491 F.3d 790 (8th Cir. 2007)

- *Garrison v. Dolgencorp, LLC*, 939 F.3d 937 (8th Cir. 2019)

- *Sutton v. United Air Lines*, 527 U.S. 471 (1999)

- 42 U.S.C. § 12112(b)(5)(A)

- 42 U.S.C. § 12111(9)(B)

4

Appellate Case: 25-1837    Page: 12    Date Filed: 06/25/2025 Entry ID: 5530609

## Statement of the Case

Christine Klimek is a nurse and case manager who was employed by CentraCare from 2008 through 2021. R. Doc. 64-1 at 2; App. 88; R. Doc. 64-9, at 168:14-16. In 2016, Klimek applied for and received exemption from CentraCare's MMR vaccination requirement due to a medical condition. *See* App. 77; R. Doc. 64-9 at 67:8-13; App. 129; R. Doc. 66. In 2021 and 2022, Klimek's medical providers and later an independent medical examiner recommended she not take a COVID-19 vaccination due to the same condition. App. 135; R. Doc. 69; App. 143; R. Doc. 72; App. 146-47; R. Doc. 73. However, CentraCare implemented a policy requiring all employees to be vaccinated for COVID-19, denied Klimek's request to be exempted, and terminated her. App. 22; R. Doc. 56-10; App. 55; R. Doc. 64-6; App. 81; R. Doc. 64-9 at 89:2-4. Klimek brought disability discrimination claims against CentraCare. App. 10; R. Doc. 1.

**Klimek's Disability and Health History.** Klimek injured her right arm in 2010, tearing a tendon and ligament and sustaining nerve damage. App. 73; R. Doc. 64-9, at 34:4-16. She underwent reconstructive surgery in January 2011. App. 73; R. Doc. 64-9, at 36:4-9. The surgery was risky, but her

5

condition raised concern that absent surgery she might lose her arm. App. 84-85; R. Doc. 64-9, at 112:20-113:1; App. 34; R. Doc. 63 ¶ 2.

Klimek subsequently developed Complex Regional Pain Syndrome ("CRPS") or Reflex Sympathetic Dystrophy ("RSD").[1] App. 34; R. Doc. 63, ¶ 2; R. Docs 71, 75. CRPS/RSD causes chronic pain, and often causes disproportionate pain in response to minor injuries. App. 162; R. Doc. 78 ¶ 10; App. 122; R. Doc. 64-13; App. 151; R. Doc. 73 at 7.

For Klimek, CRPS causes severe pain and fragility. App. 75; R. Doc. 64-9 at 41:12-42:20. Any injury causes her excruciating pain. *Id*. Because her body "does not have the ability to understand painful stimuli," any physical insult to it, even as trivial as a bug bite, triggers CRPS symptoms. App. 76; R. Doc. 64-9 at 45:16-19; App. 37; R. Doc. 63 ¶ 8. Her right arm cannot touch anything. App. 75; R. Doc. 64-9 at 44:6-8. She is right-handed but no longer uses her right hand and arm for most tasks. App. 168; R. Doc. 89 ¶ 3. CRPS affects her cognitive abilities and mood, and causes nausea and dry heaves. App. 75; R. Doc. 64-9 at 43:13-14. Her sleep and appetite are often adversely affected. App. 37; R. Doc. 63 ¶ 8.

---

[1] CRPS and RSD are used interchangeably here.

6

Appellate Case: 25-1837     Page: 14     Date Filed: 06/25/2025 Entry ID: 5530609

Because of CRPS, Klimek has declined vaccinations since 2010. App. 75; R. Doc. 64-9 at 44:14-22. She testified, "The medical experts that have treated me have stated that it is a contraindication for me to receive any form of injection. And that includes steroid injections, vaccinations, tattoos, piercings." App. 76; R. Doc. 64-9 at 45:8-11. She underwent blood work procedures in 2020 and 2021, but did so after weighing the risks of not having the procedures – possibly death – against the risk posed by the procedures. App. 170; R. Doc. 89 ¶ 10.

**Klimek's Previous Vaccine Exemption.** In 2016, CentraCare mandated that all staff receive the measles, mumps, rubella (MMR) vaccination. App. 77; R. Doc. 64-9 at 67:5-15. Klimek applied for exemption because of her RSD. *See* App. 127; R. Doc. 65. Her doctor stated, "Christine Klimek is a long time patient of mine. I have treated her for RSD of the upper right extremity. Unfortunately a painful stimulus like a vaccine can flare up her RSD. In her condition the risks of a vaccine seem to outweigh the benefits. I would advise she refrain from accepting the MMR vaccination to avoid possible complications." *Id.* CentraCare excused Klimek from MMR vaccination, stating, "Based on the information provided, you meet the criteria for a permanent medical exemption. You should not have live

7

vaccinations as long as you are on the medication and/or being treated for the condition outlined in your medical statement." App. 129; R. Doc. 66.

**Klimek's New, Remote Job.** In the spring of 2021, Klimek transferred to a new position at CentraCare, as a Clinical Documentation Nurse I. App. 72; R. Doc. 64-9 at 29:6-18; App. 28; R. Doc. 56-12. This was a full-time administrative role focused on record preparation, coding, and retention. *See* App. 44-45; R. Doc. 64-2. The position was one hundred percent remote, never requiring Klimek to physically appear at CentraCare. App. 36; R. Doc. 63 ¶ 6. She moved to Alexandria and worked from home. App. 72; R. Doc. 64-9 at 29:10-30:18.

**Klimek's Request for COVID-19 Vaccine Accommodation.** In August 2021, months after Klimek had started her full-time role working from home, CentraCare implemented a new policy ("Policy" or "COVID-19 Policy") which required all employees to receive a COVID-19 vaccination unless they qualified for a medical or religious exemption according to the terms of the Policy. App. 19; R. Doc. 56-9; App. 22; R. Doc. 56-10; App. 116; R. Doc. 64-12 at 66:3-10.

Klimek requested medical exemption based on her RSD and her previously granted vaccine exemption. *See* App. 131-132; R. Doc. 67. Her

8

Appellate Case: 25-1837     Page: 16     Date Filed: 06/25/2025 Entry ID: 5530609

application included a statement from her treating provider, CentraCare nurse practitioner Jennifer Chirhart. App. 132; R. Doc. 67. Chirhart stated that Klimek "has RSD as well as documentation that explains her reaction to all vaccines. It is not recommended that she get any vaccines due to her RSD." *Id.* Chirhart also stated, "[Klimek's] condition is permanent and progressive. She has followed with specialties who provided documentation explaining reactions and reasoning why she is to be exempt from receiving vaccines. It is not recommended she get any vaccines due to her RSD. Christine is to be exempt from receiving the Covid vaccine." App. 135; R. Doc. 69.

Klimek's COVID-19 exemption request was reviewed by Thomas Math, M.D. and Jill Amsberry, D.O. App. 154; R. Doc. 77; App. 111; *see* R. Doc. 64-11 at 107:1-108:22. Dr. Math is an infectious disease specialist, and Dr. Amsberry is a pediatrician. App. 91; R. Doc. 64-10 at 7:12-13; App. 101; R. Doc. 64-11 at 9:21-22. CentraCare's COVID-19 response was headed by Dr. George Morris, a sports medicine specialist, who appointed Dr. Amsberry to review exemption requests. App. 114; R. Doc. 64-12 at 7:21-22; App. 103; R. Doc. 64-11 at 40:22-41:23.

9

Even in the face of Chirhart's statement regarding exemption, CentraCare denied Klimek's request on October 12, 2021. App. 53; R. Doc. 64-5. At CentraCare's invitation, Klimek asked CentraCare to reconsider, stating, "I have been working from home since May 2021 as an RN Outpatient Clinical Documentation Integrity Specialist. I am not in the presence of other co-workers or patients, and all of my work requirements can be accommodated via WebEx from home if needed." App. 140; R. Doc. 70; App. 55; R. Doc. 64-6. CentraCare again denied her request. App. 55; R. Doc. 64-6.

Klimek sought additional dialogue and attended a December 3, 2021 videoconference interview with Dr. Morris, which she recorded and later transcribed. App. 85; R. Doc. 64-9 at 114:7-12; App. 57; R. Doc. 64-7. In the videoconference, Dr. Morris stated his belief that Klimek was able to take the vaccine and offered to speak with her health care providers so he could explain "the safety and efficacy of [her] receiving the vaccine." App. 85; R. Doc. 64-9, at 116:16-25. He did not ask about other ways of accommodating Klimek or ask any questions about her condition or treatment. *See* App. 57-64; R. Doc. 64-7. He stated that he didn't want to "force" her to take the vaccine, "but what we really feel is that this is part of working for

10

CentraCare." App. 60, R. Doc. 64-7, at PL-001188. When told she worked at home full time, he said, "where you work has not been a part of the equation." App. 62-63, R. Doc. 64-7, at PL-001190-91.

Klimek did not receive the vaccine and was ultimately terminated for this reason. App. 81; R. Doc. 64-9 at 89:2-4.

Klimek later received opinions from three additional medical providers regarding her inability to take the vaccine. Her primary care physician said she should not take a vaccine because of her RSD. App. 82; R. Doc. 64-9 at 100:17-23. Her chiropractor stated, "She has been correctly advised to avoid invasive medical procedures and vaccines." App. 143; R. Doc. 72. An independent medical examination as part of her workers' compensation claim resulted in a report by an orthopedist that he "agree[d] with the recommendation that she does not receive vaccines due to her RSD." App. 147; R. Doc. 73.

**CentraCare's Decision Process.** Dr. Math made the first review of CentraCare employee medical exemption requests. If he rejected a request, Dr. Amsberry reviewed it again, applying the same criteria. App. 104; R. Doc. 64-11 at 45:1-9; App. 92; R. Doc. 64-10 at 15:1-13. Dr. Math's role and Dr. Amsberry's role was only to determine whether any conditions identified in

11

a request fit within the CDC's published "guidelines on contraindication for COVID vaccination." App. 105-106; R. Doc. 64-11, at 48:19-25, 51:13-52:5; *see* App. 92-93; R. Doc. 64-10, at 16:8-18, 21:4-12. Information provided by CentraCare to its employees stated that there were three valid "contraindications": "Medical exemptions will be considered for people who had anaphylaxis, myocarditis or Guillain-Barre after the first dose." App. 26; R. Doc. 56-11.

Regarding RSD/CRPS, Dr. Math testified, "The term is known to me, yes. I'm not an expert in it." App. 95; R. Doc. 64-10, at 26:18-23. In reviewing Klimek's request, Dr. Math did not review any literature concerning RSD, did not attempt to obtain any other information about RSD, and did not know anything about whether there was medical literature concerning whether injections are problematic for a person with RSD. App. 95-96; R. Doc. 64-10, at 26:18-27:13, 30:7-17. He stated there were no possible contraindications for a COVID-19 vaccine injection for a person with RSD. App. 97; R. Doc. 64-10, at 57:3-12. Dr. Math gave treating physicians' opinions "little" "weight" and felt those opinions were not an "objective evaluation." App. 95; R. Doc. 64-10, at 28:10-20.

Appellate Case: 25-1837    Page: 20    Date Filed: 06/25/2025 Entry ID: 5530609

Dr. Amsberry did not know anything about treatment protocols or contraindications for patients with RSD. App. 107; R. Doc. 64-11 at 87:13-23. Dr. Amsberry rejected Klimek's medical providers' opinions solely on the basis that CRPS/RSD was not listed as a CDC contraindication to the vaccine. App. 109-111; R. Doc. 64-11, at 94:8-19, 98:7-99:3; 108:13-22.

Dr. Math did not know Klimek's job duties at the time he reviewed the exemption request. App. 95; R. Doc. 64-10, at 26:7-16. Dr. Amsberry testified that the question of whether any employee could work safely without taking the vaccine was not considered at all. App. 111-112; R. Doc. 64-11, at 109:18-110:2. Nor did anyone at CentraCare consider Klimek's full-time remote status. According to CentraCare, "whether [Klimek] was, or was not, involved in providing direct patient care was not a consideration upon which [CentraCare] relied" in denying Klimek's request for exemption. App. 67; R. Doc. 64-8. Further, "[CentraCare] did not grant or deny any other individual's COVID-19 exemption request based on whether such individual provided direct patient care." *Id.*

**Relevant Procedural History.** On September 30, 2024, CentraCare moved for summary judgment dismissing all remaining claims. App. 16; R. Doc. 50. Klimek also moved for summary judgment. App. 32; R. Doc. 60. On

13

March 25, 2025, the district court granted CentraCare's motion and denied Klimek's motion. App. 202-203; R. Doc. 100. The district court's summary judgment order is the ruling presented for review by this Court.

## Summary of the Argument

Klimek worked exclusively from home beginning in the spring of 2021. In August 2021, CentraCare implemented a new Policy requiring all employees to receive a COVID-19 vaccination if they did not qualify for an exemption according to the terms of the Policy. Klimek's treating medical providers recommended she not receive any vaccinations due to the CRPS she suffered since before 2016. Klimek asked CentraCare to permit her to continue working from home without receiving the COVID-19 vaccination, as a reasonable accommodation for her medical condition. CentraCare denied the request and in December 2021 terminated her for refusing the vaccination.

A COVID-19 vaccination is not an essential job requirement for an employee who works from home full-time. When CentraCare denied Klimek permission to continue working from home without receiving the vaccination, it failed to make "reasonable accommodations to the known

14

physical . . . limitations of an otherwise qualified individual," in violation of 42 U.S.C. § 12112(a) and (b)(5)(A), as well as Minn. Stat. § 363A.08, subd. 6.

Neither CentraCare nor the district court identified any reason that Klimek's request for accommodation was unreasonable. The reasons cited by the district court for dismissing Klimek's claims are contrary to the record, contrary to law, and logically incoherent. Among other errors, the district court erred by holding that

- An employer may regard the health of "the communities surrounding [its] facilities" as a basis to require all employees to receive a vaccination without regard to the employees' remote status or function, App. 191-92, 195; R. Doc. 100, at 20-21, 24;

- An employer may refuse an employee's request for ADA accommodation to the requirements of a policy if the policy "applied to *all* . . . employees regardless of their role . . . or the location where they worked," App. 195; R. Doc. 100, at 24;

- Vaccination is an essential job function based solely on the employer's assertion that it is essential, App. 192; R. Doc. 100, at 21;

- The inchoate possibility that an employer may desire, at an unspecified time in the future, to ask a full-time remote employee to begin treating

15

patients in-person provides a sufficient basis for the employer to require the employee to be vaccinated, even though

- o the employer did not consider whether the employee currently treated patients in-person when deciding whether to grant her an exemption;

- o the employee has in fact never treated patients in her current position; and

- o the employer exempted from vaccination more than 1,000 other employees who currently treat patients in-person. *See* App. 191; R. Doc. 100, at 20; App. 67; R. Doc. 64-8.

The district court's decision ignores or misapplies basic principles of the ADA, including the requirement that an employer must respond to a request for accommodation by particularly considering the requesting employee's specific job responsibilities and disability. Employers may not blindly apply broad-brush policies in response to a request for accommodation (such as only allowing exemption for one of three medical conditions). At a minimum there is a genuine factual dispute as to whether allowing Klimek, in light of her undisputed medical condition, to continue

16

working from home without vaccination as she had been doing for months was a reasonable accommodation.

## Argument

Klimek's Complaint alleges CentraCare violated the ADA and MHRA by failing to accommodate her disability and instead terminating her. App. 9-12; R. Doc. 1 ¶¶ 41-64. "Discrimination in violation of the ADA includes 'not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual.'" *Sanders v. Union Pac. R.R.*, 108 F.4th 1055, 1062 (8th Cir. 2024) (quoting 42 U.S.C. § 12112(b)(5)(A)). To prevail on a failure-to-accommodate claim under the ADA, the plaintiff must show "a prima facie case of discrimination based on disability and a failure to accommodate it." *Moses v. Dassault Falcon Jet - Wilmington Corp*, 894 F.3d 911, 923 (8th Cir. 2018) (quotation omitted).

The district court denied Klimek's motion for summary judgment solely on the basis that there was a dispute of material fact whether Klimek has a "disability" within the meaning of the ADA. App. 187-189; R. Doc. 100 at 16-18. The district court granted CentraCare's summary judgment motion on the bases that (1) Klimek was not a "qualified individual" under the ADA, and (2) CentraCare demonstrated it acted in good faith in assisting Klimek

17

to seek an accommodation and therefore cannot be liable. *Id.* at 19-31. Each of these conclusions was erroneous.

Regarding the "disability" issue, the district court treated evidence that Klimek could perform *some* major life activities as evidence that Klimek could perform *all* major life activities. It thereby erroneously concluded that there was a dispute of material fact concerning whether Klimek has a disability. *See* App. 188-89; R. Doc. 100, at 17-18. The district court's determination ignored undisputed evidence that Klimek's CRPS substantially limits her in numerous major life activities, thereby meeting the ADA's definition of a disability. After disability is established, the undisputed evidence shows the remaining elements of Klimek's failure-to-accommodate claim are also established, so the district court should have granted Klimek's motion for summary judgment. *See* Part I(A) below.

The district court's conclusion that Klimek was not a "qualified individual" for the job she already held rested upon three supporting determinations: (1) "compliance with the COVID-19 Policy was an essential job function," App. 191; R. Doc. 100 at 20; (2) "Klimek's failure to comply with the COVID-19 Policy means she was not qualified for her position without an accommodation," *id.* at 23; and (3) "Klimek's requested

18

accommodation was not related to her purported disability and therefore was not reasonable," *id*. at 25. Each of these determinations misapplies the ADA and ignores contrary facts. *See* Part I(B) below.

The district court's conclusion that "CentraCare demonstrated good faith in at least two ways," and "[t]here is accordingly no genuine dispute of material fact as to whether CentraCare made 'a good faith effort to assist [Klimek] in seeking accommodations,'" *id.* at 30-31 (citation omitted), regards two events in CentraCare's response to Klimek as conclusive evidence that CentraCare acted in good faith. The district court's reasoning misapplied the summary judgment standard and misconstrued the record. The undisputed evidence shows CentraCare made no attempt to consider Klimek's specific job function, remote status, and health but instead applied a broad-brush policy to Klimek without individualized consideration, which is necessarily bad faith. *See* Part II(A) below.

**Standard of Review.** A decision to grant summary judgment is reviewed *de novo*, applying the same standard as the district court. *Cravens v. Blue Cross & Blue Shield*, 214 F.3d 1011, 1016 (8th Cir. 2000). The Court views all evidence in the light most favorable to the non-moving party, granting summary judgment only if "the evidence could not support any

19

reasonable inference for the nonmovant." *Id.* Summary judgment is only proper where no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. *Id.*

## I. PRIMA FACIE CASE

The prima facie case for an ADA claim requires Klimek to show she "(1) is disabled within the meaning of the ADA; (2) is a qualified individual under the ADA; and (3) has suffered an adverse employment decision because of the disability." *See Moses*, 894 F.3d at 923 (quotation omitted). It is undisputed that Klimek suffered an adverse employment decision because she did not receive a COVID-19 vaccination. App. 55; R. Doc. 64-6; App. 81; R. Doc. 64-9 at 89:2-4. The district court erred in concluding that there was a dispute of material fact concerning whether Klimek is disabled, and in concluding that Klimek is not a qualified individual.

### A. <u>Klimek Is Disabled Because Her CRPS Substantially Limits Numerous Major Life Activities.</u>

Klimek's motion for summary judgment should have been granted. The only issue the district court considered concerning Klimek's motion was the issue of whether Klimek has a "disability." App. 188-89; R. Doc. 100, at 17-18. The ADA defines disability to include "a physical or mental

20

Appellate Case: 25-1837    Page: 28    Date Filed: 06/25/2025 Entry ID: 5530609

impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The parties agreed that Klimek's condition qualifies as a physical or mental impairment impacting one or more of her major life activities, so, in the words of the district court, "the [only] disputed issue is whether Klimek's CRPS 'substantially limits' any of those 'major life activities.'" App. 188; R. Doc. 100 at 17.

The undisputed evidence shows CRPS substantially limits Klimek in major life activities including her neurological function, caring for herself, performing manual tasks, sleeping, eating, driving, and thinking. CentraCare's attempt to show Klimek is not disabled rests entirely on a logical fallacy: inferring that Klimek is able to do *all* major life activities based only on evidence that she can do *one* major life activity, her job.

### 1. "Substantially Limits" Means a Non-Trivial Reduction of Ability as Compared with Most People.

The standard to show a substantial limitation is not "demanding." *See Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1111 (8th Cir. 2016); *Hamilton v. Westchester Cty.*, 3 F.4th 86, 92 (2d Cir. 2021) (short-term injury may qualify as ADA disability); *Way v. City of Mo. City*, 133 F.4th 509, 517 & n.8 (5th Cir. 2025) ("If the scope of 'disability' seems wide, it is intentionally so");

21

*Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 299-301 (6th Cir. 2019) (difficulty walking, standing, lifting, and bending "after an eight- to twelve-hour shift" qualified as "substantially limit[ing]"); *Alexander v. Wash. Metro. Area Transit Auth.*, 826 F.3d 544, 550 (D.C. Cir. 2016) ("not meant to be a demanding standard") (quoting 29 C.F.R. § 1630.2(j)(1)(i)).

The meaning of the standard flows out of the history of the ADA. Prior to 2008, the Supreme Court read the ADA to require an impairment that "severely restricts the individual from doing activities that are of central importance to most people's daily lives." *Toyota Motor Manufacturing v. Williams*, 534 U.S. 184, 198 (2002). Congress rejected this construction and passed the ADA Amendments Act of 2008 ("ADAAA"), expressly overruling *Toyota. See* 110 P.L. 325, Sec. 2, 122 Stat. 3553, 3553-54; *Nyrop v. Indep. Sch. Dist. No. 11*, 616 F.3d 728, 734 n.4 (8th Cir. 2010).

As a result of ADAAA, the ADA now provides that disability "shall be construed in favor of broad coverage of individuals under this Act, to the maximum extent permitted by the terms of this Act." 42 U.S.C. § 12102(4)(A). Specifically, "[t]he term 'substantially limits' shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008." *Id.* § 12102(4)(B). The ADAAA "Findings" state that "lower courts

22

have incorrectly found in individual cases that people with a range of substantially limiting impairments are not people with disabilities." 110 P.L. 325, Sec. 2(a)(6), 122 Stat. 3553, 3553. The ADAAA "Purposes" include "reinstating a broad scope of protection to be available under the ADA," conveying "that the question of whether an individual's impairment is a disability under the ADA should not demand extensive analysis," and "express[ing] Congress' expectation that the Equal Employment Opportunity Commission will revise that portion of its current regulations that defines the term 'substantially limits' as 'significantly restricted' to be consistent with this Act." 110 P.L. 325, Secs. 2(b)(1), (5), (6), 122 Stat. 3553, 3554.

The EEOC abided by Congress's expectation. Its subsequent regulation defining "substantially limits" states that the term "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA" and "is not meant to be a demanding standard." 29 C.F.R. § 1630.2(j)(1)(i). An "impairment" qualifies as a "disability" if "it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the

Appellate Case: 25-1837    Page: 31    Date Filed: 06/25/2025 Entry ID: 5530609

individual from performing a major life activity in order to be considered substantially limiting." *Id.* § (j)(1)(ii).

The outcome of this dialogue among the courts, Congress, and the EEOC is that an impairment "substantially limits" an ADA plaintiff if the impairment causes a non-trivial reduction in the plaintiff's ability to perform a major life activity, as compared with most people in the general population. The impairment need not entirely prevent, or even severely restrict, the plaintiff's ability.

### 2. Klimek's CRPS Substantially Reduces Her Ability to Perform Major Life Activities.

The record before the district court unambiguously shows that Klimek's abilities to perform major life activities, including her neurological function, completing manual tasks, caring for herself, sleeping, eating, driving, and thinking, are meaningfully reduced as compared with most people.

Klimek suffers extreme neurological malfunction. Because her body "does not have the ability to understand painful stimuli," any physical insult to it, even as trivial as a bug bite, triggers CRPS symptoms. App. 76; R. Doc. 64-9 at 45:16-19; App. 37; R. Doc. 63 ¶ 8. "[B]umping" her arm causes her

24

"intense pain, which can sometimes be debilitating." App. 37; R. Doc. 63 at ¶ 8. Her condition causes "nausea and vertigo," and her "sleep and appetite are adversely affected." *Id*. When she experiences any injury, "the reflex sympathetic dystrophy response to that injury is excruciating," requiring her to obtain occupational or physical therapy or primary care attention. App. 75; R. Doc. 64-9, at 41:16-42:10. Stress and weather changes exacerbate her symptoms. *Id*. at 42:18-20. CentraCare presented no evidence to contest any of these facts.

The ADA expressly includes "the operation of a major bodily function, including but not limited to . . . neurological . . . functions" within the definition of major life activities whose impairment establishes a "disability." 42 U.S.C. § 12102(2)(B). There is no reasonable dispute of fact that Klimek's neurological function is substantially limited as compared with most people.

The limitations Klimek suffers go far beyond neurological function. CRPS prevents Klimek from using her dominant right hand for "fine motor tasks." App. 168; R. Doc. 89 at ¶ 3. "Carrying items, even small items, is difficult and sometimes impossible" for her, making it "awkward and slow" to "accomplish things which used to be routine," such as "housework, yard

25

work, snow removal." *Id*. ¶ 7. She cannot sleep without pain unless she uses "a number of pelvic blocks, lumbar and neck support rolls, pillows and other tools." *Id*. ¶ 4. She often cannot drive long distances due to pain. *Id*. ¶ 5. She cannot perform "many or most direct nursing activities, such as transferring patients, boosting patients in bed . . . plac[ing] needles or remov[ing] large bore needles or IV's." *Id*. ¶ 8. CRPS affects Klimek's ability to think, and causes insomnia, nausea, and dry heaves. App. 75; R. Doc. 64-9 at 43:8-20. CentraCare presented no evidence to contest any of these facts.

Klimek's major life activities of performing manual tasks, caring for herself, sleeping, eating, driving, and thinking are meaningfully reduced as compared with most people. *See* 42 U.S.C. § 12102(2)(A). Again, the threshold is not demanding. In *Way*, an anxiety condition that disrupted the employee's ability to think and concentrate was held sufficient to constitute a disability for purposes of an ADA claim, defeating summary judgment. 133 F.4th at 518. In *Morrissey*, a nurse whose physical limitations of "difficulty walking, standing, lifting, and bending" only manifested "after an eight- to twelve-hour shift," where the shift also "exacerbated" her experience of pain, was held to be "substantially limited." 946 F.3d at 300.

Appellate Case: 25-1837    Page: 34    Date Filed: 06/25/2025 Entry ID: 5530609

The limitations imposed on Klimek by CRPS vastly exceed the limitations in *Way* and *Morrissey*.

### 3. There Is No Evidence to Create a Genuine Dispute of Fact That Klimek's CRPS Substantially Reduces Her Ability to Perform Major Life Activities.

The absence of one specific impaired life activity does not support the inference that a person's *other* life activities are unimpaired. Elementary reasoning dictates as much, and the ADA leaves no doubt: "An impairment that substantially limits one major life activity need not limit other major life activities in order to be considered a disability." 42 U.S.C. § 12102(4)(C). Yet, against the overwhelming evidence of Klimek's reduced ability to perform many ordinary life activities, the district court inferred that Klimek was not impaired in *any* life activity merely because it concluded that Klimek is able to perform her job duties with only occasional limitations.

The district court identified three purportedly contrary facts that it characterized as creating a genuine dispute whether Klimek has a disability: Klimek was "pretty independent" by 2014 and "able to perform all of her job duties with only occasional limitations when she experienced an acute exacerbation of her CRPS," and "never had to request an accommodation" after 2013. *See* App. 188-89; R. Doc. 100 at 17-18. The third purported fact is

27

Appellate Case: 25-1837     Page: 35     Date Filed: 06/25/2025 Entry ID: 5530609

plainly not true. In 2016 Klimek requested, and CentraCare granted, an exemption from CentraCare's policy requiring the MMR vaccine, as a result of her CRPS. App. 129; R. Doc. 66. But even if these assertions were true, they do not give rise to a material dispute of fact in this case.

The relevant question for purposes of the parties' claims and defenses is not whether Klimek was "pretty independent." The relevant question is whether Klimek has a disability that substantially impairs a major life activity. It can be, and is, true **both** that Klimek was pretty independent by 2014 and was able to perform all her job duties with only occasional limitations, **and** that all of her above-mentioned life functions are impaired by CRPS. CentraCare construes evidence concerning the limited effect of Klimek's CRPS on *part* of her life (her day-to-day work) as evidence concerning the effect of CRPS on *all* of her life. The inference is prohibited by 42 U.S.C. § 12102(4)(C). It is akin to arguing that a paraplegic has no disability merely because she is able to eat as most others eat and can usually work from home without any accommodation by her employer.

The district court erred by failing to conclude that the undisputed evidence shows Klimek to have a disability.

28

## B. <u>Klimek Is a Qualified Individual.</u>

The district court held that Klimek failed to show she was a qualified individual under the ADA. App. 190-94; R. Doc. 100 at 19-23. To be a qualified individual, Klimek was required to (1) possess the skill, education, experience, and training the position requires and (2) be able to perform the essential job functions with or without a reasonable accommodation. *Hill v. Walker*, 737 F.3d 1209, 1216 (8th Cir. 2013). Klimek's skill, education, experience, and training were not disputed. App. 190; R. Doc. 100 at 19. Accordingly, "the inquiry turns on whether Klimek could perform the essential functions of the job she held with or without a reasonable accommodation." *Id*.

The outcome of the inquiry is yes. It is undisputed that Klimek performed her remote job successfully. The only question is whether CentraCare's new August 2021 COVID-19 Policy added an essential function to her job that she could not perform. The relevant evidence shows vaccination was not important, much less essential, to Klimek's fully-remote position. There is extensive evidence supporting a conclusion that Klimek could perform her job with or without accommodation of continuing remote work. At a minimum there are numerous genuine disputes of fact.

29

Appellate Case: 25-1837    Page: 37    Date Filed: 06/25/2025 Entry ID: 5530609

### 1. Vaccination Was Not an Essential Job Function for Klimek, a Remote Worker.

"Essential functions are the fundamental job duties of the employment position." *Moses*, 894 F.3d at 923 (quotation omitted). Klimek's written job description classified her as a "CCH Clinical Documentation Nurse I" with the "Job Function" of "Quality Assurance Methods." App. 44; R. Doc. 64-2, at DEF 0278. Listed "Core Functions" of the job revolved around "concurrent review on selected admissions and documents findings," "Identifies documentation issues," "Utilizes monitoring tools," "Collects data," and "Identifies documentation trends and issues." *Id.* The "Additional Essential Requirements of the Position" were "Use of computer, mouse, and keyboard for 7-8 hrs/day." *Id.* at App. 48, DEF0282. None of these fundamental job duties required Klimek to be in the physical presence of CentraCare patients or even other CentraCare employees. Her testimony that she worked from home "100% of the time, and was not required to personally interact with patients or other employees" is uncontradicted. App. 36; R. Doc. 63 ¶ 6. She began working remotely full-time in the spring of 2021. App. 72; R. Doc. 64-9 at 29:12-30:24; App. 117; R. Doc. 64-12 at 149:22-24.

30

Appellate Case: 25-1837     Page: 38     Date Filed: 06/25/2025 Entry ID: 5530609

Accordingly, there is no evidence to support the conclusion that vaccination was a relevant, much less *fundamental*, part of Klimek's job duties. The district court did not identify any job-related reason why CentraCare could reasonably require Klimek to be vaccinated. *See* App. 191-94; R. Doc. 100 at 20-23. The CentraCare doctors who denied Klimek's request for accommodation did not have meaningful knowledge of, or interest in, her job duties at the time they made their decision. App. 95; R. Doc. 64-10 at 26:7-16; App. 111-112; R. Doc. 64-11 at 109:18-110:2. They did not identify, and could not have identified, any job function for which vaccination might have been relevant.

### 2. The District Court's "Essential Job Function" Conclusion Is Unsupported.

The district court's contrary conclusion is unsupported by evidence. Without considering, or even mentioning, Klimek's job description or the tasks the job required or the tasks she routinely performed, the district court cited three reasons for its view that compliance with the Policy was an essential job function. App. 191-194; R. Doc. 100 at 20-23. None are sustainable.

Appellate Case: 25-1837    Page: 39    Date Filed: 06/25/2025 Entry ID: 5530609

**Possible New Responsibilities in the Future.** The district court stated that compliance with the Policy was essential to Klimek's job function because at times of staffing shortages CentraCare "called on staff working remotely who had nursing experience, like [Klimek], to assist with in-person patient care" and "it was possible CentraCare may have called on her." App. 191; R. Doc. 100 at 20 & n.9. The district court's speculation about future possibilities does not transmute vaccination into an essential job function for Klimek for four reasons.

First, by CentraCare's own account the actuality or likelihood of patient contact *did not affect* CentraCare's decision-making concerning vaccination exemption requests, for Klimek or for any other employee. CentraCare stated, "providing direct patient care was not a consideration upon which [CentraCare] relied in denying [Klimek's] 2021 medical exemption request" and "[CentraCare] did not grant or deny any other individual's COVID-19 exemption request based on whether such individual provided direct patient care." App. 67; R. Doc. 64-8. CentraCare cannot rely on the possibility of future patient contact as a reason to require Klimek to receive vaccination if CentraCare did not consider present patient contact as a reason for or against requiring vaccination.

32

Second, CentraCare permitted approximately 1,035 employees presently engaged in direct patient care to continue working unvaccinated, where those employees asserted a religious objection to vaccination. *Id.* CentraCare plainly did not consider vaccination an "essential job function" for these employees. CentraCare's claim that vaccination was essential for Klimek, as a remote employee, cannot reasonably be reconciled with a policy of permitting patient-interacting employees to continue in their positions without vaccination.[2]

Third, speculation about the possibility of CentraCare changing Klimek's job in the future to add new duties does not cause on-site, physical patient care to become a "fundamental" aspect of the job Klimek actually held at the time she requested to be excused from vaccination. "Essential

---

[2] The district court refused to lend any significance to CentraCare's religious exemptions, asserting these were evaluated under different criteria. App. 193-94; R. Doc. 100 at 22-23 & n.10. The differing criteria are irrelevant because qualification under the Policy, whether medical or religious, is not the germane consideration. Whether vaccination constituted an "essential job function" *for purposes of the ADA* is a distinct inquiry from whether an employee qualified for an exemption under the terms of the Policy. The relevant point is that CentraCare's willingness to permit unvaccinated employees to interact with patients shows CentraCare did not regard vaccination as essential to the job function of interacting with patients.

33

Appellate Case: 25-1837    Page: 41    Date Filed: 06/25/2025 Entry ID: 5530609

function" means "fundamental job duties" of the position the employee "holds or desires" and does not include "marginal functions of the position." *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568 (8th Cir. 2007) (quotation omitted). The employer bears the burden of providing evidence to establish the essential functions of a position. *Id.* The applicable federal regulation cites "Written job descriptions," "amount of time spent on the job performing the function," and "current work experience of incumbents in similar jobs" as relevant considerations. 29 C.F.R. § 1630.2(n)(3). New responsibilities that an employer might later want to add to a position are not "current" work experience. They are not even a "marginal" function. The undisputed evidence shows that in-person patient care was not part of the position Klimek held. Speculation for purposes of litigation about the possibility of CentraCare changing her job in the future does not make patient care a "fundamental" part of the job she "holds or desires."

Fourth, if speculation about potential future job responsibilities could establish an essential job function, no ADA plaintiff would ever meet the "qualified individual" requirement for an ADA claim. All employers can manufacture future scenarios in which they might want to "call upon" an employee to do something the disabled employee cannot do. CentraCare's

34

purported desire to (hypothetically) "call upon" Klimek to perform duties outside of her ordinary tasks in the future does not provide evidence of Klimek's present essential job function.

**CentraCare's Say-So.** The district court next stated that compliance with the Policy was essential to Klimek's job function because CentraCare said so, citing *Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 786 (8th Cir. 2004). App. 191-192; R. Doc. 100 at 20-21. *Kammueller* does not so hold. On the contrary, *Kammueller* recognizes that the ADA would be a dead letter if an employer's say-so in litigation was conclusive concerning essential job functions: "Were we to give conclusive weight to the employer's opinion on this issue, Loomis, and in fact, any employer, would escape ADA and MHRA liability simply by defining job duties in a manner that excludes disabled employees." 383 F.3d at 787. Determination of an essential job function may depend upon evidence of *several factors*, which include "the amount of time spent on the job performing the function," "the consequences of not requiring the incumbent to perform the function," and "the current work experience of incumbents in similar jobs." *Id.* at 786. The employer's view, "although highly probative, is merely evidence and is not conclusive." *Id. See also Canny v. Dr. Pepper/Seven-Up Bottling Grp., Inc.*, 439

35

F.3d 894, 902 (8th Cir. 2006) (rejecting argument that "the employer determines the essential functions of a job").

The district court erred by treating CentraCare's self-interested view as conclusive. Neither the district court nor CentraCare identified any reasonable basis for CentraCare to regard vaccination as "essential" for Klimek's job. All relevant considerations show vaccination *not* to be essential. CentraCare would not be harmed – indeed, would not even be affected – by a fully remote worker's vaccination status. At a minimum, Klimek has presented evidence to dispute CentraCare's assertion that vaccination was "essential."

**Health of the Community.** The district court lastly rested its conclusion on the unsupported assertion that CentraCare could point to the health of "the broader communities it serves" as a reason to require its employees to receive vaccination. App. 192; R. Doc. 100 at 21. An employer's view of desirable social policy and outcomes outside the workplace is not a permissible basis under the ADA for the employer to even inquire whether an employee has received a vaccine or any other medical procedure, much less require these things. Almost by definition, matters outside the

36

workplace are not job-related. They certainly are not "fundamental" to Klimek's job function.

Further, the ADA expressly defines "medical examinations and inquiries" by employers as prohibited discrimination except for matters that are "job-related" and "consistent with business necessity." 42 U.S.C. § 12112(d)(1), (d)(4)(A), (a), (b)(6). "This provision applies to all employees, regardless of whether the employee has an actual disability." *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). The burden of showing "business necessity" for a medical inquiry is steep – the asserted "necessity" must be "vital to the business" and the medical inquiry must be "no broader or more intrusive than necessary." *Id.* at 527. Generalized notions of amorphous overall community health do not have any meaningful tie to Klimek's specific job function, and the health of a "broader community" satisfies neither the element of "job-related" nor "business necessity" to permit CentraCare to inquire into Klimek's vaccination status, or require a vaccination.

Again the ramifications of the district court's legal principle are too far-reaching for the principle to be sustainable. If the health of the broader community were relevant, CentraCare could also require its employees to

Appellate Case: 25-1837     Page: 45     Date Filed: 06/25/2025 Entry ID: 5530609

refrain from smoking; to drive no faster than 65 mph; to never provide guests with alcohol or sugary drinks at social functions; and to self-quarantine when suffering from a head cold. The list of arguably socially-beneficial behaviors is endless, but such behaviors are not essential job functions.

After setting aside the district court's three articulated justifications, no basis remains to support its conclusion that vaccination was an essential job function for Klimek. The conclusion is erroneous.

### 3. "Policy Compliance" Was Not an Essential Job Function for Klimek.

The district court emphasized that in its view actual vaccination was *not* an essential job function for Klimek, but rather "*compliance* with the COVID-19 Policy, which included receiving a medical or religious exemption, was an essential job function." App. 192; R. Doc. 100 at 21. This distinction is empty. Policy "compliance" is even more clearly *not* an essential job function for Klimek than actual vaccination.

"Compliance" with a policy is a label, not a job function. The meaning of the label depends entirely on the requirements for receiving the label. To determine whether compliance with the COVID-19 Policy was an essential

38

Appellate Case: 25-1837     Page: 46     Date Filed: 06/25/2025 Entry ID: 5530609

job function for Klimek, the district court would have needed to consider how the various methods of complying with the Policy (vaccination, religious exemption, and medical exemption) interacted with Klimek's work tasks. But the district court did not. *Id.* at 21-22. If it had, it would have run into the considerations discussed above showing that *actual* vaccination was not essential to Klimek's job function, plus two additional considerations:

- If actual vaccination is not an essential job function, then qualifying for an exemption *in lieu of vaccination* is also not essential. In parallel terms, if a driver's license is not required to legally ride a bicycle, then it is nonsensical to say a bicycle rider must either have a driver's license or an exemption in lieu of having a driver's license. Klimek could perform her job without vaccination; therefore, she had no need of a Policy exemption from vaccination to perform the job. The only potentially job-related aspect of the Policy was its vaccination requirement. The district court did not cite any reason or evidence to support the view that a medical or religious exemption would allow Klimek to perform her job in a way that she could not perform the job without a medical or religious exemption. There is none. The district court committed a basic error of reasoning by regarding Policy

39

compliance as somehow changing the application of the ADA to CentraCare's treatment of Klimek.

- Because CentraCare employees could become Policy compliant without being vaccinated, labeling an employee as Policy "compliant" does not communicate any information about the employee's susceptibility to being infected by COVID-19. The "compliant" employee may or may not be vaccinated, and therefore may not have any more protection against being infected by COVID-19 than a non-compliant employee. Accordingly, CentraCare's argument that it was not requiring vaccination as an essential job function, only Policy compliance, makes CentraCare's legal position weaker, not stronger. There is no reason why earning a "compliant" label that communicates no information about the employee's susceptibility to COVID-19 would be useful, much less essential. The theory that Policy compliance was an essential job function is even less plausible than the theory that vaccination was an essential function.

The district court's focus on Policy compliance, rather than actual vaccination, was an erroneous analytical detour that confused matters without introducing any relevant legal consideration.

40

### 4. *Hustvet v. Allina Health Sys.* **Is Inapposite.**

In the district court, CentraCare relied heavily on *Hustvet v. Allina Health Sys.*, 910 F.3d 399 (8th Cir. 2018). *E.g.* R. Doc. 52 at 25-27. Because *Hustvet* involved a medical professional's challenge under the ADA to a vaccination requirement imposed by her health system employer, *Hustvet* provides overarching statements of some legal principles applicable to Klimek's claims. However, the outcome in *Hustvet* has no applicability here because the key facts in *Hustvet* were opposite Klimek's decisive facts. Indeed the juxtaposition of the facts in *Hustvet* supports Klimek's position.

Janice Hustvet worked as an "Independent Living Skills Specialist," where "[t]he clients Hustvet worked with included those who were disabled" and "were treated as if they had 'compromised' or 'fragile' immune systems." *Id*. at 405. Hustvet's employer eventually required her to develop immunity to rubella by taking an MMR vaccine, and terminated her when she refused. *Id*. The district court granted summary judgment dismissing Hustvet's ADA and MHRA claims. *Id*. at 405-406.

On the most important issue – contact with patients – *Hustvet* is opposite Klimek. Hustvet had regular patient contact; Klimek had none. This difference alone makes *Hustvet* inapposite. An employee who routinely is in

41

the physical presence of immune-compromised disabled individuals is not comparable to a fully-remote worker who is never in the physical presence of any patient or any other employee.

The differences between *Hustvet* and Klimek run deeper. *Hustvet*'s failure-to-accommodate claim was dismissed because she failed to show she had a disability. She argued that she had "chemical sensitivities and allergies derive[d] from an immune system disability." *Id.* at 411. However, she had "never been hospitalized due to an allergic or chemical reaction, never seen an allergy specialist, and never been prescribed an EpiPen. Nor has she ever sought any significant medical attention when experiencing a chemical sensitivity, taken prescription medication because of a serious reaction, or had to leave work early because of a reaction." *Id.* Klimek's disability, by contrast, is well-established and attested by numerous medical providers.

*Hustvet* stated, "[i]n addition," that "the accommodations [Hustvet] sought did not sufficiently relate to her purported disability" because "the CDC does not consider past seizures to be a contraindication or even a precaution for the vaccine." *Id.* at 411. This undeveloped statement by the Court does not establish statements by the CDC as the final word concerning medical matters in ADA litigation, for four reasons.

42

Appellate Case: 25-1837     Page: 50     Date Filed: 06/25/2025 Entry ID: 5530609

First, the ADA expressly requires employers to conduct a particularized evaluation of an employee's individual health condition, not rely on generic principles without regard to the employee. *See* Parts II(A)(2) and II(B)(3), below.

Second, CentraCare did not rely upon CDC guidance specifically addressing the interplay of CRPS and the COVID-19 vaccine. Rather, CentraCare relied upon the *absence* of CRPS from the CDC's list of recognized counterindications for the vaccine. App. 182; R. Doc. 100 at 11; App. 92; R. Doc. 64-10 at 16:10-18; App. 110; R. Doc. 98:7-99:3. The absence of a counterindication in CDC guidance may simply indicate that the CDC lacks sufficient information to include the counterindication, or not enough data has been received, particularly in the context of a novel health condition. To read into the CDC guidance an affirmative, conclusive statement that the COVID-19 vaccine was *known* to have no negative effects on *any* person with CRPS is an unsustainable inference from the mere absence of CRPS among the CDC's listed counterindications.

Third, CDC opinions cannot be treated as conclusive. In *Bragdon v. Abbott*, the Supreme Court explained, "courts should assess the objective reasonableness of the views of health care professionals without deferring to

43

Appellate Case: 25-1837     Page: 51     Date Filed: 06/25/2025 Entry ID: 5530609

their individual judgments," and though "the views of public health authorities, such as the U.S. Public Health Service, CDC, and the National Institutes of Health, are of special weight and authority," the views of such organizations "are not conclusive, however. A health care professional who disagrees with the prevailing medical consensus may refute it by citing a credible scientific basis for deviating from the accepted norm." 524 U.S. 624, 650 (1998). CentraCare was permitted to consider CDC guidance concerning CRPS and the COVID-19 vaccine, but CentraCare also was required to meaningfully consider the views of Klimek's treating medical professionals, including CentraCare's own provider, Jennifer Chirhart. It did not.[3]

Fourth, particularly with respect to medical questions that are novel or politically controversial – and COVID-19 was both – the guidance of federal agencies like the CDC is inherently less authoritative. In *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 759-60 (2021), the Supreme Court affirmed an injunction vacating the CDC's COVID-19-based

---

[3] The end of *Chevron* deference to administrative agencies, *see Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), further undercuts any theory that the district court could simply defer to the general current opinions of the CDC without regard to Klimek's specific health condition.

44

Appellate Case: 25-1837     Page: 52     Date Filed: 06/25/2025 Entry ID: 5530609

nationwide moratorium on tenant evictions, concluding, "It strains credulity to believe that this statute grants the CDC the sweeping authority that it asserts." The director of the National Institutes of Health is now Jayanta Bhattacharya, who was characterized in *Murthy v. Missouri*, 603 U.S. 43, 63 (2024), as one of a group of "doctors who questioned the wisdom of then-prevailing COVID-19 policies." These cases dramatically illustrate that recommendations of federal agencies may easily be affected by national political currents. To enshrine unstable, politically-affected recommendations as the final scientific word for purposes of ADA litigation would be unwise and blind to the real-world meaning of these recommendations.

To summarize, there is no evidence in the record that vaccination was relevant to any job-related task performed by Klimek, much less essential. Nor is there evidence that receiving a medical or religious exemption from vaccination has any bearing or relationship whatsoever to Klimek's job-related tasks. There is no evidence that receiving a vaccination is an essential job function for a remote employee. The district court's conclusion that Klimek was not a "qualified employee" under the ADA is unsupported by the record and contrary to law.

45

Appellate Case: 25-1837    Page: 53    Date Filed: 06/25/2025 Entry ID: 5530609

## II. FAILURE TO ACCOMMODATE

Failure to accommodate requires Klimek to show (1) CentraCare knew she was disabled; (2) she requested an accommodation; (3) CentraCare failed to engage in an 'interactive process' with her about possible accommodations; and (4) her disability could have been reasonably accommodated if the interactive process had taken place. *See Sanders*, 108 F.4th at 1063. There is no dispute that CentraCare knew of Klimek's CRPS and that Klimek requested an accommodation.[4] The district court erred in concluding that CentraCare engaged in a good faith interactive process and that no reasonable accommodation existed.

### A. CentraCare Did Not Engage in a Good Faith Interactive Process to Identify a Reasonable Accommodation for Klimek.

The district court's conclusion that Klimek could not establish the elements of a failure to accommodate claim because "CentraCare

---

[4] As addressed in Part II(B)(2) below, CentraCare and the district court placed erroneous weight upon *which* accommodation Klimek purportedly requested, contrary to the ADA's mandate that an employer help the employee explore potential accommodations through an interactive process. However, neither CentraCare nor the district court maintained that Klimek did not request an accommodation of some kind.

46

Appellate Case: 25-1837     Page: 54     Date Filed: 06/25/2025 Entry ID: 5530609

demonstrated good faith in at least two ways here," App. 201; R. Doc. 100 at 30, misapplied both the summary judgment standard and the law of reasonable accommodation under the ADA.

### 1. The District Court Misapplied the Summary Judgment Standard.

The district court misapplied the summary judgment standard because it conclusively found that CentraCare demonstrated good faith without considering contrary evidence. The district court considered only two matters in reaching its "good faith" conclusion: CentraCare's offer to Klimek of "a second opportunity to provide the medical documentation she and her care providers referenced in her exemption request" and CentraCare's offer "to extend the deadline for Klimek to comply with the COVID-19 Policy and to discuss the safety of COVID-19 vaccination for Klimek with her care providers." *Id.* These two facts, the district court believed, irrefutably established CentraCare's good faith. *Id.* at 30-31.

The summary judgment standard does not permit a district court to make conclusive findings of fact based on two bits of evidence pulled from the record without regard to countervailing evidence. On a motion for summary judgment the district court is obligated to consider *all* the

47

evidence, and to view the evidence in the light most favorable to the non-moving party. In a closely parallel situation, this Court reversed a grant of summary judgment on the issue of good faith where the employer cited two facts that tended to support a finding of good faith, but the Court noted other evidence in the record that contradicted this conclusion. *Cravens*, 214 F.3d at 1021-22. Here, as discussed below, there was ample evidence of CentraCare's lack of good faith, and the matters cited by the district court do not show good faith at all.

### 2. The Undisputed Evidence Shows CentraCare Lacked Good Faith.

The district court's evaluation of the evidence was precisely backward. CentraCare's procedural steps do not prove good faith. They are not even evidence of good faith. *E.g. Canny*, 439 F.3d at 902 ("although Dr Pepper argues Canny's discussions with Doug and O'Neill, as well as Doug's multiple efforts to assist Canny are evidence of its good faith efforts, we disagree"). The notion of good faith tests whether the procedural steps taken by the employer were performed to give genuine consideration to possible accommodation for the employee, *or* whether the procedures were merely performative – pretextual steps along the way to a predetermined

48

conclusion. Failure of the employer to engage in a truly interactive process may be sufficient to show bad faith. *Cravens*, 214 F.3d at 1021-22; *Fjellestad v. Pizza Hut of Am.,* 188 F.3d 944, 952 (8th Cir. 1999). Here, it is. The record without exception shows bad faith because all relevant evidence shows CentraCare never actually searched for, or considered granting, an accommodation for Klimek:

- CentraCare admits that it did *not* consider whether Klimek had patient contact and that CentraCare regarded Policy compliance as an essential job function for *all* employees without any particularized reason other than its blanket approach of requiring Policy compliance. App. 67; R. Doc. 64-8. CentraCare does not even argue that it made a decision to deny Klimek an accommodation after analyzing Klimek's specific job function and the specific limitations imposed by her disability.

- Yet CentraCare permitted over a thousand patient-treating employees to continue working in their positions without vaccination, while demanding that Klimek receive vaccination for her fully remote position. *Id.*

49

- CentraCare's interaction with Klimek was not directed toward identifying possible accommodations; it sought to persuade Klimek that she didn't need an accommodation and should just take the vaccine. App. 59-61; R. Doc. 64-7 at PL-001187-1189, 1190-91; App. 117; R. Doc. 64-12 at 149:18-21 ("Q. Did you talk with Christine about any potential solutions to the problem absent taking the vaccine itself? A. No.") (deposition of Dr. Morris).[5]

- CentraCare does not even argue that it ever considered refraining from applying the COVID-19 Policy to Klimek; rather, it says that it offered Klimek an opportunity to *comply* with the Policy by meeting the Policy's medical standards to be excused from vaccination. *See* App. 183-184; R. Doc. 100 at 12-13. An offer of opportunity to comply with a policy is not a reasonable accommodation; reasonable accommodation

---

[5] The district court identified the following relevant substance from Klimek's final meeting with CentraCare executive Dr. Morris: Dr. Morris "explained to Klimek that CRPS was not contraindicated for COVID-19 vaccination," "sought to clarify why Klimek's request was denied in this instance but had been approved under the MMR Policy," and offered to extend Klimek's compliance deadline "so he could meet with Klimek's care providers to discuss the safety of the COVID-19 vaccination for Klimek." App. 184; R. Doc. 100, at 13.

Appellate Case: 25-1837     Page: 58     Date Filed: 06/25/2025 Entry ID: 5530609

means modification or exclusion of policy requirements to accommodate the employee's disability.

The CentraCare process for Klimek was performative, a liturgy inevitably resulting in denial. No reasonable jury could conclude that CentraCare made a good-faith effort to ascertain whether reasonable accommodation could be made based on Klimek's individual situation. CentraCare only asked whether Klimek complied with its COVID-19 Policy by taking the vaccine or showing she had one of the three then-listed CDC contraindications for the vaccine. When it concluded she did not, it terminated her.

The ADA required CentraCare to engage in a good faith effort to identify a possible accommodation. When CentraCare became aware of Klimek's request, CentraCare "had an obligation to 'take some initiative' and identify a reasonable accommodation." *Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 942 (8th Cir. 2019) (citation omitted). This means engaging in a "'flexible' and 'informal[] interactive process' with her about possible accommodations," *id.* at 941 (citation omitted), and "considering how best to accommodate" her specific needs, *Kowitz v. Trinity Health*, 839 F.3d 742, 746 (8th Cir. 2016). Determination of the appropriate accommodation had to be

51

done by "first analyz[ing] the relevant job and the specific limitations imposed by the disability." *EEOC v. Convergys Customer Mgmt. Grp.*, 491 F.3d 790, 795 (8th Cir. 2007) (quotation omitted). Failure to investigate the employee's abilities and possible alternate available positions supports the conclusion that the employer did not act in good faith. *See Ehlers v. Univ. of Minn.*, 34 F.4th 655, 661-62 (8th Cir. 2022) (construing *Canny*, 439 F.3d at 899, 902-03).

Because CentraCare applied a blanket policy of requiring COVID-19 Policy compliance for all employees and never considered excepting Klimek from the Policy based on her specific job function and individual health needs, CentraCare did not engage in a good faith effort to identify a reasonable accommodation. The district court erred by concluding otherwise.

### B. <u>A Reasonable Accommodation Existed for Klimek to Perform the Essential Functions of Her Job.</u>

The district court also erroneously determined Klimek's qualification for her position "*with* an accommodation." App. 194; R. Doc. 100 at 23. Because vaccination was not even relevant to Klimek's job function, the outcome of this inquiry does not support dismissal of Klimek's claims. In

52

Appellate Case: 25-1837    Page: 60    Date Filed: 06/25/2025 Entry ID: 5530609

any event, if vaccination *had* been relevant, Klimek was qualified to perform her job function with the reasonable accommodation of CentraCare allowing her to continue working from home and not applying the Covid-19 Policy to her.

### 1. Allowing Klimek to Continue Working Remotely Full-Time Was a Reasonable Accommodation.

CentraCare was obligated, as a reasonable accommodation, to permit Klimek to continue working from home, unvaccinated, without regard to CentraCare's COVID-19 Policy.

"There is no precise test for what constitutes a reasonable accommodation." *Convergys*, 491 F.3d at 796. The ADA says that a reasonable accommodation "may include" various possibilities, inherent in which is the basic principle of modifying circumstances applicable to all employees to accommodate a specific employee's needs resulting from disability. The illustrative modifications include:

> making existing facilities used by employees readily accessible to and usable by individuals with disabilities . . . acquisition or modification of equipment or devices, **appropriate adjustment or modifications of** examinations, training materials or **policies** . . . and other similar accommodations for individuals with disabilities.

53

42 U.S.C. § 12111(9) (emphasis added). The accommodation that CentraCare was obligated to provide Klimek was the combination of both

- letting her continue to work from home, and

- excepting her from the COVID-19 Policy due to her medical condition.

Even prior to COVID-19, working at home was recognized as a mode of reasonable accommodation. *E.g. Woodruff v. Peters*, 482 F.3d 521, 528 (D.C. Cir. 2007). Post-COVID-19, this Court observed that an employer who permits an employee to "consistently work remotely aside from his medical condition" implicitly demonstrates a belief that the employee can perform the essential job functions "without being in the office all the time." *Mobley v. St. Luke's Health Sys.,* 53 F.4th 452, 456 (8th Cir. 2022).

In the case of Klimek, who was working remotely full-time prior to her request for accommodation, permitting her to *continue* working remotely full-time was not an unreasonable request. Nor can it be reasonably argued that hardship would accrue to CentraCare by not applying the COVID-19 Policy to Klimek as a full-time remote worker.

54

### 2. The District Court Erred by Excluding Consideration of Klimek Continuing to Work from Home as a Reasonable Accommodation.

The district court's consideration of the reasonable accommodation issue erred by relying upon the premise that "the accommodation at issue is Klimek's requested medical exemption under the COVID-19 Policy" and *not* "for her to continue working from home." App. 194; R. Doc. 100 at 23. In the district court's view, Klimek did not specifically *ask* to continue working from home as an accommodation. *Id.* at 23-24. This premise was unreasonable, factually incorrect, and legally irrelevant.

The premise was unreasonable because Klimek was already working from home full-time. She had no need to expressly state a desire to continue that arrangement as part of her accommodation. A reasonable employer confronted with Klimek's request to be excepted from vaccination would understand Klimek was not asking to discontinue working from home.

Moreover, the district court's premise was factually incorrect because Klimek *did* ask to be permitted to continue working from home. *See* App. 141; R. Doc. 70, at DEF0407. The district court disregarded her request because Klimek did not expressly mention working from home until her second letter to CentraCare, after CentraCare's initial denial of

55

accommodation. App. 194-195; R. Doc. 100 at 23-24. But it is undisputed that Klimek requested to continue working from home in the second letter and that CentraCare considered the second letter in its decision. *See* App. 55; R. Doc. 64-6. Accordingly, the district court's assertion that Klimek did not request working from home as accommodation is factually incorrect.

More importantly, as a legal matter it does not matter whether Klimek formally stated in writing that she was requesting to continue working from home as an accommodation. ADA requests for accommodation are not governed by formalistic pleading standards. An employee need only "initiate the accommodation-seeking process by making his employer aware of the need for an accommodation" and "provide relevant details of his disability and, if not obvious, the reason that his disability requires an accommodation." *Convergys*, 491 F.3d at 795. After that, "the employer must make a reasonable effort to determine the appropriate accommodation" by "analyz[ing] the relevant job and the specific limitations imposed by the disability and then, in consultation with the individual, identify potential effective accommodations." *Id.* (quotations omitted). **The employer must act to identify possible accommodations**. It has an "obligation to 'take some initiative' and identify a reasonable accommodation." *Garrison*, 939 F.3d at

56

942 (citation omitted). "An employer who has received notice that reasonable accommodation is requested cannot escape its duty to engage in the interactive process simply because the employee did not come forward with a reasonable accommodation that would prevail in litigation." *Fjellestad*, 188 F.3d at 953 (quotation omitted).

Contrary to the district court's view, it was not incumbent on Klimek to particularly state a desire specifically to continue working from home. Klimek needed only to articulate her need for accommodation, the details of her disability, and the reason her disability required accommodation. There is no dispute she did all of these things. This Court recently noted that even a plaintiff who "fails to request an accommodation can still prevail if 'the disability, resulting limitation, and necessary reasonable accommodation were open, obvious, and apparent to the entity's relevant agents." *Hall v. Higgins*, 77 F.4th 1171, 1182 (8th Cir. 2023) (quoting *Windham v. Harris County*, 875 F.3d 229, 237 (5th Cir. 2017)).

CentraCare understood the substance of Klimek's request. Klimek had a medical condition that prevented her from taking the vaccine and she wanted to be permitted to continue working without taking the vaccine. Once CentraCare received that information, the ADA imposed upon

57

CentraCare an obligation to "identify potential effective accommodations" in consultation with Klimek. *Convergys*, 491 F.3d at 795.

The district court's premise that Klimek procedurally failed to request to continue working from home as accommodation was unreasonable, factually wrong, and legally erroneous.

### 3. Application of CentraCare's Policy to All Employees Is Not a Permissible Reason to Deny Klimek an Accommodation.

After its erroneous premise that Klimek did not ask to continue working from home, the district court offered a second reason that it believed working from home was not a reasonable accommodation for Klimek: "the COVID-19 Policy applied to *all* CentraCare employees regardless of their role at CentraCare or the location where they worked" because the policy was intended "to serv[e] the needs of [CentraCare's] patients, *and the communities it serves.*" App. 195; R. Doc. 100 at 24. This rationale is expressly prohibited by the ADA. Prohibited discrimination includes "not making reasonable accommodations . . . unless . . . the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). CentraCare may not simply require vaccination as a matter of "policy"; it must show that

58

providing an accommodation exempting Klimek from the "policy" would "impose an undue hardship." CentraCare has not, and cannot, make that showing. *See also id.* at (b)(6) (prohibiting use of "qualification standards" that "screen out" an individual with a disability unless the standard "is shown to be job-related for the position in question and is consistent with business necessity.").

"Policy" is the beginning of an ADA analysis, not the end. The employer must have a substantive reason to refuse accommodation, and its reason must be individualized to the specific employee's job. In *Harris v. Union Pac. R.R.*, this Court held that class certification under Fed. R. Civ. P. 23 could not be granted for a class of employees asserting ADA claims because

> under the plain language of the ADA, the district court cannot determine whether the 'policy itself' constituted a pattern or practice of unlawful discrimination without considering whether the policy is job-related for each of over 650 positions in question and whether the policy is consistent with business necessity in each situation.

953 F.3d 1030, 1035 (8th Cir. 2020) (citing 42 U.S.C. § 12112(b)(6) and *Cripe v. City of San Jose*, 261 F.3d 877, 889 (9th Cir. 2001)). "To show 'job-relatedness,' an employer must demonstrate that the qualification standard fairly and

59

accurately measures the individual's actual ability to perform the essential functions of the job." *Id.* (quoting *Bates v. United Parcel Serv.*, 511 F.3d 974, 996 (9th Cir. 2007)).

The district court's focus on CentraCare's Policy also led the district court into the error of deciding whether *Klimek met the requirements of the Policy for an exemption* instead of deciding, as it was required to do, whether *CentraCare met the requirements of the ADA to provide an accommodation. See* App. 197; R. Doc. 100 at 26. Again, an employer must make "reasonable accommodations" for an employee with a disability, and reasonable accommodation may include "adjustment or modifications of . . . policies." 42 U.S.C. § 12112(b)(5)(A), 42 U.S.C. § 12111(9). CentraCare was obligated to determine whether to modify its COVID-19 Policy in application to Klimek. The question whether Klimek met procedural or substantive Policy requirements for a "medical exemption" was superfluous.

The district court's reliance on CentraCare's universally-applied "policy" as a basis to deny Klimek an accommodation is legally wrong and evinces a basic misapplication of the requirements of the ADA. An employer's admission that it applied its policy to a disabled employee "regardless of their role," App. 195; R. Doc. 100 at 24, is an admission that

60

the employer *violated* 42 U.S.C. § 12112(b)(5), not an excuse that avoids liability.

### 4. The District Court Erred by Concluding Klimek's Requested Accommodation Was Not Related to Her Disability, Because CDC Guidance Does Not Obviate an Employer's Responsibility Under the ADA.

In view of the above, the district court committed at least four reversible errors in building the foundation for its "decisive determination: Klimek's requested accommodation was not related to her purported disability and therefore was not reasonable." App. 196; R. Doc. 100 at 25. In the "decisive determination" the district court again erred. It concluded the only evidence in the record showed that CRPS did not medically preclude Klimek from receiving a COVID-19 vaccine. *Id*. at 25-29. The opposite is true. The only evidence in the record showed that *Klimek's CRPS* medically precluded her from receiving the vaccine. At most the evidence on this point is disputed; it cannot be found to undisputedly show Klimek's requested accommodation was not relevant to her disability.

CentraCare presented a single reason to support its view that Klimek's CRPS did not prevent her from being vaccinated: the fact that "CDC guidance did not identify CRPS or RSD as a contraindication for COVID-19

61

vaccination." App. 197; R. Doc. 100 at 26. Applying this broad-brush rationale blindly to Klimek without consideration of her individual health condition violates the ADA. The CentraCare doctors who denied Klimek's request for accommodation did not have knowledge about CRPS beyond an understanding of the general nature of the condition. Dr. Math testified, "The term is known to me, yes. I'm not an expert in it." App. 95-96; R. Doc. 64-10, at 26:18-23. Dr. Math did not review any literature concerning RSD, did not attempt to obtain any other information about RSD, and did not know anything about whether there was medical literature concerning whether injections are problematic for a person with RSD. *Id.* at 26:18-27:13, 30:7-17. Dr. Amsberry did not know anything about treatment protocols or contraindications for patients with RSD. App. 107; R. Doc. 64-11 at 87:13-23. Dr. Amsberry rejected Klimek's medical providers' opinions solely on the basis that CRPS/RSD was not listed as a CDC contraindication to the vaccine. App. 109-111; R. Doc. 64-11 at 94:8-19, 98:7-99:3; 108:13-22.

On the other side of the ledger, the undisputed evidence is that

- Klimek suffers from CRPS, App. 161; R. Doc. 78 ¶ 9.

62

- CRPS is a condition which causes chronic pain, and often causes disproportionate pain in response to minor injuries, App. 162; R. Doc. 78 ¶ 10; App. 122; R. Doc. 64-13; App. 151; R. Doc. 73 at 7.

- Klimek's CRPS affects her by causing severe pain and fragility. App. 75; R. Doc. 64-9 at 41:12-42:20. Any injury causes her excruciating pain. *Id*. Because her body "does not have the ability to understand painful stimuli," any physical insult to it, even as trivial as a bug bite, triggers CRPS symptoms. App. 76; R. Doc. 64-9 at 45:16-19; App. 37; R. Doc. 63 ¶ 8.

- In 2016, Klimek's treating physician advised Klimek and CentraCare that "a painful stimulus like a vaccine can flare up her RSD" and that she should refrain from receiving an MMR vaccination. App. 127; R. Doc. 65. Klimek's medical providers have advised her that it is a contraindication for her to receive any form of injection. App. 76; R. Doc. 64-9 at 45:8-13.

- In 2016, CentraCare exempted Klimek from receiving a vaccination, due to Klimek's CRPS. App. 129; R. Doc. 66.

- Klimek's treating nurse practitioner, a CentraCare employee, stated in 2021, "[Klimek] is under my care . . . . It is not recommended she get

63

Appellate Case: 25-1837    Page: 71    Date Filed: 06/25/2025 Entry ID: 5530609

any vaccines due to her RSD" and therefore Klimek "is to be exempt from receiving the Covid vaccine." App. 132, 135; R. Docs. 67, 69.

- Klimek's primary care physician, her chiropractor, and an independent orthopedist all later advised that she not receive the COVID-19 vaccine. App. 82; R. Doc. 64-9 at 100:1-23; App. 143; R. Doc. 72; App. 146; R. Doc. 73.

The legal question presented by this record is whether a generalized statement by the CDC not even mentioning CRPS, taken without any consideration of Klimek's specific condition, is evidence that overrules the contrary opinions of medical practitioners who examined Klimek. If the boilerplate CDC policy is disregarded, as it should be, there is no evidence to support the district court's conclusion. If the boilerplate CDC policy is considered as evidence, there is a dispute of material fact concerning whether Klimek's medical condition prevented her from being vaccinated. Either way, summary judgment against Klimek is not sustainable.

Appellate Case: 25-1837    Page: 72    Date Filed: 06/25/2025 Entry ID: 5530609

As discussed in Part I(B)(4) below, generalized CDC guidance concerning the politically controversial and unstable[6] issue of contraindications for a new vaccine had no value upon which CentraCare could reasonably rely when confronted with the opinions of treating medical professionals based specifically on Klimek's individual health. Yet the district court found the generalized CDC guidance to be conclusive. App. 197-198; R. Doc. 100 at 26-27. This was error. The opinion or position of any person, even a government agency, is not determinative of facts in litigation where a party presents contrary evidence.

The essence of the ADA is individualized process, not blanket application of broad policies. "The definition of disability also requires that disabilities be evaluated 'with respect to an individual' and be determined based on whether an impairment substantially limits the 'major life activities of such individual.' § 12102(2). Thus, whether a person has a disability under the ADA is an individualized inquiry." *Sutton v. United Air Lines*, 527 U.S.

---

[6] Indeed, Dr. Math agreed that the CDC now recognizes more contraindications to the COVID-19 vaccine than it did in 2021. App. 93; R. Doc. 64-10 at 20:16-23.

Appellate Case: 25-1837     Page: 73     Date Filed: 06/25/2025 Entry ID: 5530609

471, 483 (1999);[7] *see Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000) ("the employer must conduct an individualized inquiry into the individual's actual medical condition, and the impact, if any, the condition might have on that individual's ability to perform the job in question"). The question whether *Klimek's* CRPS constituted an impairment that prevented *Klimek* from receiving a COVID-19 vaccination must be determined based upon individualized inquiry into *Klimek*'s health, not a broad-brush application of opinions by a federal agency that never examined her.

The only evidence in the record concerning *Klimek's* CRPS was the evidence that her medical providers advised her not to receive COVID-19 vaccination due to her CRPS. That evidence was extensive. A policy may violate the ADA on its face or in its application. A finding that the employer followed its policy does not mean the employer therefore did not violate the ADA. In fact the opposite may be the case, as it was here.

---

[7] The ADA Amendments Act of 2008 superseded *Sutton* on the issue of whether an impairment constitutes a disability under the ADA. *See* Pub. L. No. 110-325, 122 Stat. 3553 (2008). However, the language of 42 U.S.C. § 12102 quoted in the *Sutton* excerpt above remains part of § 12102(1), preserving *Sutton*'s conclusion that the ADA requires an individualized inquiry.

66

Appellate Case: 25-1837    Page: 74    Date Filed: 06/25/2025 Entry ID: 5530609

## Conclusion

The district court's order should be reversed. CentraCare's Motion for Summary Judgment should be denied. Klimek's Motion for Summary Judgment should be granted, establishing CentraCare's liability. This case should be remanded for trial solely on the issue of Klimek's damages.

Dated June 17, 2025

Parker Daniels Kibort LLC

/s/ *Andrew D. Parker*
Andrew D. Parker (MN Bar. 0195042)
Joseph A. Pull (MN Bar 0386968)
888 Colwell Building
123 North Third Street
Minneapolis, MN 55401
(612) 355-4100
parker@parkerdk.com
pull@parkerdk.com

*Counsel for Appellant Christine Klimek*

Appellate Case: 25-1837     Page: 75     Date Filed: 06/25/2025 Entry ID: 5530609

## Certificate of Compliance

1. This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

X   this document contains 12,892 words

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

X   this document has been prepared in a proportionally spaced typeface using Microsoft Word version 2504, in 14-point Book Antiqua font.

*/s/ Joseph A. Pull*

Attorney for Appellant Christine Klimek

Dated: June 17, 2025

## Eighth Circuit Rule 28A(h)(2) Certification

The brief and addendum in this filing have been scanned for viruses and both are virus-free.

*/s/ Joseph A. Pull*

68

Appellate Case: 25-1837   Page: 76   Date Filed: 06/25/2025 Entry ID: 5530609

## Certificate of Service

I hereby certify that on June 17, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ *Joseph A. Pull*

Appellate Case: 25-1837    Page: 77    Date Filed: 06/25/2025 Entry ID: 5530609