No. 25-1837

_____

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

**Christine Klimek,**

**Appellant,**

**vs.**

**CentraCare Health System,**

**Appellee.**

_____

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MINNESOTA

_____

## BRIEF OF APPELLEE CENTRACARE HEALTH SYSTEM

_____

Sara G. McGrane, #233213
Zachary A. Alter, #0399991
**Felhaber Larson**
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
Telephone: (612) 339-6321

*Counsel for Appellee CentraCare Health System*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

The COVID-19 pandemic presented unprecedented challenges for hospitals and employers nationwide. In response to the pandemic, CentraCare Health System ("CentraCare") implemented a vaccination policy requiring staff to receive a COVID-19 vaccine or to request and receive a medical or religious exemption.

Appellant Christine Klimek ("Klimek") believed her Reflex Sympathetic Dystrophy (RSD) diagnosis warranted a medical exemption. According to the CDC and other reputable public health guidance, RSD was not a contraindication with COVID vaccination. CentraCare relied on this guidance and, after allowing Klimek several opportunities to submit medical support for her exemption request, CentraCare denied Klimek's request. Klimek filed suit, alleging CentraCare, alleging failed to accommodate her alleged disability, in violation of the Americans with Disabilities Act (ADA) and Minnesota Human Rights Act (MHRA).

The United States District Court for the District of Minnesota, the Honorable Laura M. Provinzino, granted summary judgment to CentraCare, denied Klimek's motion for summary judgment, and dismissed the lawsuit with prejudice. The District Court correctly held Klimek's claims fail because her RSD was not, under any recognized public health guidance, medically contraindicated with receiving the COVID-19 vaccine, and CentraCare engaged in good faith with Klimek in all required interactive process. CentraCare requests 15 minutes for oral argument.

i

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Local Rule 26.1A, the undersigned counsel of record for Defendant-Appellee CentraCare Health system ("Appellee") hereby discloses that Appellee has no parent corporation and no publicly held corporation owns 10 percent or more of Appellee's stock.

ii

Appellate Case: 25-1837     Page: 3     Date Filed: 07/30/2025 Entry ID: 5543060

# TABLE OF CONTENTS

SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT ........... i

CORPORATE DISCLOSURE STATEMENT ......................................................... ii

TABLE OF CONTENTS ................................................................................... iii

TABLE OF AUTHORITIES ............................................................................... vi

STATEMENT OF THE ISSUES ............................................................................1

STATEMENT OF THE CASE ...............................................................................2

    I.     Klimek's Pre-COVID Work at CentraCare and 2010 Injury ...............2

    II.    CentraCare Grants Klimek an MMR Vaccine Exemption in 2016. ....................................................................................................3

    III.   COVID-19 Pandemic Severely Impacts CentraCare Staff, Patients, and Communities. ...............................................................5

    IV.   CentraCare Implements COVID Vaccination Policy. .........................6

    V.    CDC and Other Medical Guidance. ....................................................8

    VI.   Klimek's COVID-19 Vaccination Exemption Request. ......................9

    VII.  CentraCare's Physician Specialists Conduct Initial Review of Klimek's Exemption Request ...........................................................13

    VIII. CentraCare Allows Klimek to Submit Additional Information. .........14

    IX.   CentraCare Arranges Meeting Between Klimek and Dr. Morris to Further Engage in Interactive Process. ...........................................16

SUMMARY OF ARGUMENT ...........................................................................17

ARGUMENT ...................................................................................................19

    I.     Standard of Review. ..........................................................................19

    II.    Legal Framework Applicable to Klimek's Failure to Accommodate Claims. .....................................................................20

    III.   The District Court Correctly Held There is a Fact Dispute as to Whether Klimek Had a Protected Disability ....................................21

    IV.   The District Court Correctly Held Klimek Was Not a Qualified Individual .........................................................................................25

          A.    Compliance with CentraCare's Policy Was a Legitimate and Required Condition of Employment. ...............................26

iii

B.     Klimek's Remote Work Status Is Irrelevant to Whether She Was Qualified. ....................................................28

C.     Klimek Cannot Establish She Was Qualified by Questioning CentraCare's Business Decision to Create and Implement its Policy. .........................................30

V.     Klimek Cannot Show CentraCare Took Adverse Action Because of Her Disability. ....................................................34

VI.     Klimek Cannot Show Her Requested Accommodation—a Medical Exemption from Vaccination—Was Reasonable or Causally Related to Her Disability. ....................................35

A.     How *Hustvet* and other Courts Have Analyzed this Element in Cases Involving Medical Exemption Requests. ....................................................................36

B.     How Public Authorities Instructed Hospitals in 2021 to Design COVID-19 Vaccination Policies. ...............37

C.     How Courts in COVID-19 Medical Exemption Cases Evaluated whether a Condition Supports a Vaccination Exemption Request. ................................................38

D.     Klimek's Claim Fails Because She Has No Evidence Her Condition is Contraindicated with COVID-19 Vaccination. ...........................................................39

E.     Klimek's Challenge to CentraCare's Reliance on Public Health Authority Is Unavailing. .............................40

VII.     Klimek Cannot Establish CentraCare Failed to Accommodate her Condition. ....................................................44

A.     CentraCare Made a Good Faith Effort to Assist Klimek. .........45

1.     CentraCare Sets Up Objective and Thorough Review Process to Review and Consistently Evaluate Exemption Requests. ....................................46

2.     CentraCare Evaluated Klimek's Medical Exemption Request and Engaged in Good Faith with Her for Nearly Four Months to Evaluate the Reasonableness of Her Requested Accommodation. ...........................................................48

iv

|  | 3. | Klimek Requested an Exemption from Vaccination Based on Her RSD, not Permission to Work Remotely...................................................................51 |

B. Klimek Cannot Show She Could Have Been Reasonably Accommodated Absent CentraCare's Lack of Good Faith. ...................................................................................54

    1. Klimek's Request Would Relieve Her of Essential Functions.................................................................54

    2. Klimek's Meeting with Dr. Morris Ended All Required Interactive Process. .........................................55

CONCLUSION.....................................................................................58

CERTIFICATES OF COMPLIANCE....................................................59

EIGHTH CIRCUIT LOCAL RULE 28A(h) CERTIFICATION.............60

CERTIFICATE OF SERVICE ..............................................................61

Appellate Case: 25-1837    Page: 6    Date Filed: 07/30/2025 Entry ID: 5543060

# TABLE OF AUTHORITIES

## Cases

*Adams v. Mass Gen. Brigham Inc.*,
  2023 WL 6318821 (D. Mass. Sept. 28, 2023 ................................................32

*Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*,
  594 U.S. 758 (2021)....................................................................................42

*Aronson v. Olmsted Med. Ctr.*,
  668 F. Supp. 3d 843 (D. Minn. 2023) ........................................................34

*Biden v. Missouri*,
  595 U.S. 87 (2022)......................................................................................31

*Bragdon v. Abbott*,
  524 U.S. 624 (1998)....................................................................................42

*Brunckhorst v. City of Oak Park Heights*,
  914 F.3d 1177 (8th Cir. 2019) ....................................................................20

*Bryson v. Regis Corp.*,
  498 F.3d 561 (6th Cir. 2007) ......................................................................22

*Cf. Milam v. ASCAP*,
  2024 WL 3639611 (M.D. Tenn. Aug. 1, 2024)............................................48

*Cravens v. Blue Cross & Blue* Shield,
  214 F.3d 1011 (8th Cir. 2000) ....................................................................51

*Dovenmuehler v. St. Cloud Hosp.*,
  509 F.3d 435 (8th Cir. 2007) ......................................................................21

*Dropinski v. Douglas Cty.*,
  298 F.3d 704 (8th Cir. 2002) .............................................................. 29, 30

*Evans v. Coop. Response Ctr., Inc.*,
  996 F.3d 539 (8th Cir. 2021) ............................................... 1, 20, 55

*Faulkner v. Douglas Cty. Neb.*,
  906 F.3d 728 (8th Cir. 2018) .............................................. 45, 48, 55

*Greenberg v. Visiting Nurse Servs. et al.*,
  2024 WL 4252550 (S.D.N.Y. Sept. 19, 2024) ........................................ 1, 27

*Hanebrink v. Brown Shoe Co.*,
  110 F.3d 644 (8th Cir. 1997) ......................................................................51

Appellate Case: 25-1837   Page: 7   Date Filed: 07/30/2025 Entry ID: 5543060

*Harriss v. City of Carbondale*,
2024 WL 2292875 (S.D. Ill. May 21, 2024) ..................................................39

*Higgins v. Union Pac. R.R. Co.*,
931 F.3d 664 (8th Cir. 2019) ....................................................................25

*Higgins v. United States Steel Corp.*,
No. 23-CV-2730 (LMP/LIB), 2025 WL 1413847 (D. Minn. May 15, 2025)
..................................................................................................................25

*Hinojosa v. Jostens Inc.*,
128 F. App'x 364 (5th Cir. 2005 ..............................................................22

*Holaway v. Stratasys, Inc.*,
771 F.3d 1057 (8th Cir. 2014) ..................................................................19

*Hustvet v. Allina Health Sys.*,
910 F.3d 399 (8th Cir. 2018) ........................................................ passim

*Jacobs v. Mercy Health*,
719 F.Supp.3d 894 (E.D. Mo. 2024) .................................... 2, 38, 39

*Jean-Pierre v. Naples Cmty. Hosp., Inc.*,
817 Fed. App'x 822 (11th Cir. 2020) ......................................................33

*Johanning v. Summit Orthopedics, Ltd.*,
2021 WL 5872664 (Minn. Ct. App. Dec. 13, 2021) ....................... 1, 22, 23

*Kale v. Aeuo Simulation, Inc.*,
2023 WL 6255013 (D.S.D. Sept. 26, 2023), *aff'd on other grounds*, 139
F.4th 684 (8th Cir. 2025) ..........................................................................34

*Kirkberg v. Canadian Pac. Ry.*,
619 F.3d 898 (8th Cir. 2010) ....................................................................22

*Knutson v. Schwan's Home Serv., Inc.*,
711 F.3d 911 (8th Cir. 2013) ....................................................................29

*Kobus v. College of St. Scholastica, Inc.*,
608 F.3d 1034 (8th Cir. 2010) ..................................................................21

*Loper Bright Enters. v. Raimondo*,
603 U.S. 369 (2024)...................................................................................43

*McBee v. Team Indus., Inc.*,
925 N.W.2d 222 (Minn. 2019) ..................................................................45

*McCarthy v. Mass. Gen. Brigham Inc.*,
2024 WL 3416025 (D. Mass. July 15, 2024) ............................................39

vii

Appellate Case: 25-1837    Page: 8    Date Filed: 07/30/2025 Entry ID: 5543060

*McNeil v. Union Pac. R.R. Co.*,
936 F.3d 786 (8th Cir. 2019) ................................................................. passim

*Mobley v. St. Luke's Health Sys.*,
53 F.4th 452 (8th Cir. 2022) ........................................................ 44, 53, 54

*Mole v. Buckhorn Rubber Prods., Inc.*,
165 F.3d 1212 (8th Cir. 1999) ....................................................................21

*Moses v. Dassault Falcon Jet-Wilmington Corp*,
894 F.3d 911 (8th Cir. 2018) .............................................................. 20, 34

*Nahal v. Allina Health Sys.*,
842 Fed. App'x 9 (8th Cir. 2021) ...............................................................56

*Norman v. Union Pac. R.R. Co.*,
606 F.3d 455 (8th Cir. 2010) .....................................................................25

*Rinehart v. Weitzell*,
964 F.3d 684 (8th Cir. 2020) .....................................................................22

*Rodriguez v. Wellspan Philhaven*,
2025 WL 1710052 (M.D. Pa. June 18, 2025) ................................... 1, 27, 39

*Samuels v. Kansas City Missouri Sch. Dist.*,
437 F.3d 797 (8th Cir. 2006) ......................................................... 1, 21, 22

*Savel v. MetroHealth Sys.*,
2024 WL 4581542 (N.D. Ohio Oct. 25, 2024)............................................31

*Schaffhauser v. United Parcel Serv., Inc.*,
794 F.3d 899 (8th Cir. 2015) .....................................................................45

*Scruggs v. Pulaski Cty.*,
817 F.3d 1087 (8th Cir. 2016) ......................................................... 2, 45, 50

*Shane v. Bio-Techne Corp.*,
No. 22-CV-3039 (JWB/ECW), 2023 WL 3936638 (D. Minn. June 9, 2023)
................................................................................................................34

*Smith v. Toyota Motor Corp.*,
964 F.3d 725 (8th Cir. 2020) .....................................................................19

*Tarquinio v. Johns Hopkins Univ. Applied Physics Lab*,
141 F.4th 568 (4th Cir. 2025) ......................................................... 2, 56, 57

*Together Emps. v. Mass Gen. Bringham Inc.*,
573 F. Supp. 3d 412 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022)......47

Appellate Case: 25-1837    Page: 9    Date Filed: 07/30/2025 Entry ID: 5543060

*Torgerson v. City of Rochester*,
  643 F.3d 1031 (8th Cir. 2011) ...............................................................19

*United States v. Rees,*
  447 F.3d 1128 (8th Cir. 2006) ...............................................................33

*W.S. v. Ragsdale*,
  540 F. Supp. 3d 1215 (N.D. Ga. 2021).....................................................32

*Wood v. Crown Redi-Mix, Inc.*,
  339 F.3d 682 (8th Cir. 2003) ................................................................35

## Statutes

42 U.S.C. § 12102(1)(A).........................................................................22

## Regulations

29 C.F.R. § 1630.2 ......................................................................... passim
29 C.F.R. § 1630.2(j)(1)(ii)......................................................................23

ix

# STATEMENT OF THE ISSUES

1.  Whether the District Court Correctly Held There Was a Fact Dispute as to Whether Klimek Had a Protected Disability.

    **Apposite cases:**

    *Johanning v. Summit Orthopedics, Ltd.*, 2021 WL 5872664 (Minn. Ct. App. Dec. 13, 2021)

    *Samuels v. Kansas City Missouri Sch. Dist.*, 437 F.3d 797 (8th Cir. 2006)

2.  Whether the District Court Correctly Held Klimek Was Not a Qualified Individual.

    **Apposite cases:**

    *McNeil v. Union Pac. R.R. Co.*, 936 F.3d 786, 790 (8th Cir. 2019)

    *Rodriguez v. Wellspan Philhaven*, 2025 WL 1710052 (M.D. Pa. June 18, 2025)

    *Greenberg v. Visiting Nurse Servs. et al.*, 2024 WL 4252550 (S.D.N.Y. Sept. 19, 2024)

3.  Whether Klimek Established CentraCare Took Adverse Action Because of Her Disability.

    **Apposite cases:**

    *Evans v. Coop. Response Ctr., Inc.*, 996 F.3d 539, 547 (8th Cir. 2021)

1

Appellate Case: 25-1837    Page: 11    Date Filed: 07/30/2025 Entry ID: 5543060

**4.** Whether the District Court Correctly Held Klimek Cannot Establish her Requested Accommodation Related to Her Alleged Disability.

**Apposite cases:**

*Hustvet v. Allina Health Sys.*, 910 F.3d 399 (8th Cir. 2018)

*Jacobs v. Mercy Health*, 719 F. Supp. 3d 894 (E.D. Mo. 2024)

**5.** Whether the District Court Correctly Held CentraCare Made a Good Faith Effort to Assist Klimek in Seeking Accommodations.

**Apposite cases:**

*Scruggs v. Pulaski Cty.*, 817 F.3d 1087 (8th Cir. 2016)

*Tarquinio v. Johns Hopkins Univ. Applied Physics Lab*, 141 F.4th 568 (4th Cir. 2025)

**STATEMENT OF THE CASE**

**I.    Klimek's Pre-COVID Work at CentraCare and 2010 Injury.**

Klimek worked as a registered nurse (RN) at CentraCare. (CentraCare App. 7[1], R. Doc. 56-1, at 22:19-24:14; Klimek App. 71, R. Doc. 64-9, at 27:19-22.) Klimek injured her arm in 2010 and underwent surgery in 2011. (Klimek App. 72,

---

[1] Klimek's Appendix did not include all documents listed in Designation of Record. Therefore, CentraCare created a separate Appendix, which includes documents to which CentraCare cites herein which are not in Klimek's Appendix. CentraCare's Appendix is cited herein as "CentraCare App." and Klimek's Appendix is cited as "Klimek App."

2

R. Doc. 64-9, at 32:20-24; Klimek App. 74, R. Doc. 64-9, at 39:3-7.) She was then diagnosed with RSD, a condition also known as chronic regional pain syndrome (CRPS). (Klimek App. 72-73, R. Doc. 64-9, at 32:20-34:6.)

She received rehabilitative treatments, including 19 injections designed to help with her RSD symptoms. (Klimek App. 74-75, R. Doc. 64-9, at 40:6-41:1.) Her providers noted she had an "excellent response" to the injections. (CentraCare App. 16, R. Doc. 56-1, at 62:7-11.) By 2013 or 2014, she "was pretty independent" and able to manage pain with "prayer, massage, relaxation techniques, meditation, [and] walking." (Klimek App. 75, R. Doc. 64-9, at 41:1-7.)

At work, she received positive performance reviews and was able to perform her role successfully. (Klimek App. 74, R. Doc. 64-9, at 39:8-24.) She worked without limitations except that if she experienced "acute exacerbations," she occasionally had to "take a day or a couple days off of work." (Klimek App. 75, R. Doc. 64-9, at 41:12-42:5.) Klimek's RSD symptoms worsened if she got sick with a cold. (CentraCare App. 14, R. Doc. 56-1, at 52:24-53:5; CentraCare App. 15, R. Doc. 56-1, at 55:2-4; CentraCare App. 18, R. Doc. 56-1, at 70:3-6.)

## II.    CentraCare Grants Klimek an MMR Vaccine Exemption in 2016.

In August 2016, Klimek requested an exemption from CentraCare's policy requiring employees to receive the measles, mumps, and rubella (MMR) vaccine.

3

Appellate Case: 25-1837    Page: 13    Date Filed: 07/30/2025 Entry ID: 5543060

(Klimek App. 129, R. Doc. 66.) In 2016, Dr. Thomas Math led CentraCare's review of vaccination exemption requests. (Klimek App. 96, R. Doc. 64-10, at 32:3-11.)

In 2016, CentraCare only required a medical provider's statement for an employee to obtain an MMR exemption. (CentraCare App. 68, R. Doc. 56-5, at 28:19-23.) It was much easier in 2016 to receive an influenza or MMR vaccine exemption than a COVID vaccination exemption in 2021 because the CDC criteria became stricter with COVID and—put mildly—"influenza was not as much of a problem as COVID." (CentraCare App. 53, R. Doc. 56-3, at 32:3-11, 33:19-25; CentraCare App. 54, R. Doc. 56-3, at 34:1-2.)

In August 2016, Dr. Sam Elghor wrote a letter in support of Klimek's MMR vaccine exemption request, stating "a painful stimulus like a vaccine can flare up [Klimek's] RSD" and he "would advise she refrain from accepting the MMR vaccination to avoid possible complications." (Klimek App. 127, R. Doc. 65.) Dr. Elghor had not seen or treated Klimek since 2010—six years prior to his letter. (CentraCare App. 18, R. Doc. 56-1, at 70:12-71:9.) Dr. Math granted Klimek's MMR exemption in 2016, and CentraCare extended the exemption to "live vaccinations." (Klimek App. 129, R. Doc. 66; Klimek App. 98, R. Doc. 64-10, at 61:6-9; CentraCare App. 55, R. Doc. 56-3, at 41:13-16.) "Live-attenuated vaccines"—including the MMR vaccine—"contain living bacteria or viruses." (Klimek App. 77, R. Doc. 64-9, at 67:14-15); *see* CENTER FOR DISEASE CONTROL

4

Appellate Case: 25-1837    Page: 14    Date Filed: 07/30/2025 Entry ID: 5543060

AND PREVENTION ("CDC"), *Explaining How Vaccines Work*, (Aug. 10, 2024), https://www.cdc.gov/vaccines/hcp/conversations/understanding-vacc-work.html (last visited July 22, 2025.)

### III. COVID-19 Pandemic Severely Impacts CentraCare Staff, Patients, and Communities.

In November 2020, Klimek contracted COVID and experienced a severe reaction that resulted in a several week recovery. (CentraCare App. 18, R. Doc. 56-1, at 71:13-72:20; Klimek App. 79, R. Doc. 64-9, at 78:11-79:12.) In September 2021, which Klimek agreed was "the height of the COVID pandemic," Klimek noted "COVID patients coming in like crazy," the COVID "numbers are so high, and there were not enough CentraCare workers, beds available, or staff to care for patients." (CentraCare App. 21, R. Doc. 56-1, at 84:4-25.)

As of September 7, 2021, CentraCare's hospitals had 51 COVID patients, 18 of whom were in the ICU and 9 of whom were on ventilators, and there were only 7 available ICU beds statewide. (CentraCare App. 71, R. Doc. 56-7, at DEF0724.) COVID death totals peaked "the week ending September 11, 2021 (73,466)" and in 2021 alone, COVID caused or contributed 460,513 deaths. CDC, *Morbidity and Mortality Weekly Report (MMWR)*, (Apr. 29, 2022), https://www.cdc.gov/mmwr/volumes/71/wr/mm7117e1.htm#F1_down (last visited July 22, 2025).

Appellate Case: 25-1837    Page: 15    Date Filed: 07/30/2025 Entry ID: 5543060

## IV.  CentraCare Implements COVID Vaccination Policy.

Once COVID-19 vaccines became available, dozens of healthcare associations across the country issued a *Joint Statement in Support of COVID Vaccine Mandates for All Workers in Health and Long-Term Care*, stating "our health care organizations and societies advocate that all health care and long-term care employers require their workers to receive the COVID-19 vaccine" and confirmed "[e]xisting COVID-19 vaccine mandates have proven effective." (CentraCare App. 77, R. Doc. 56-8 ("Joint Statement").) Consistent with this Joint Statement, "[t]here was, at the time, significant evidence that vaccine mandates improve vaccination rates among healthcare employees." (CentraCare App. 145, R. Doc. 86-1.)

In September 2021, consistent with this guidance, CentraCare adopted a COVID Vaccination Policy (the "Policy") which required "[a]s a condition of employment" all staff across all locations to receive a COVID vaccination or obtain an exemption by December 2021, and those who did not meet this condition of employment were placed on a leave of absence for up to one year. (Klimek App. 21-23, R. Doc. 56-10, at PL-001260-PL001262.) CentraCare's purpose for adopting the Policy was to service the needs of its patients, protects its communities, and provide for the safety of its employees—in furtherance of its core belief that "health means everything." (Klimek App. 21-23, R. Doc. 56-10, at PL-001260.) CentraCare's "goal

6

Appellate Case: 25-1837    Page: 16    Date Filed: 07/30/2025 Entry ID: 5543060

was to decrease the loss of life and death and serious illness due to COVID-19 throughout our region." (CentraCare App. 61, R. Doc. 56-4, at 116:23-117:4.)

CentraCare informed staff: "Medical exemptions will be granted to people who can provide physician documentation for a diagnosis considered a contraindication for COVID-19 vaccination." (Klimek App. 19, R. Doc. 56-9, at PL-001240.) The Policy stated: "Requests for an Exemption will be decided on a case-by-case basis based only upon the documents submitted by the requesting person, including in the case of a Request for Medical Exemption, a note from a health care provider." (Klimek App. 23, R. Doc. 56-10, at PL-001262.) Klimek understood these requirements. (Klimek App. 81, R. Doc. 64-9, at 90:2-13.)

CentraCare's Policy and exemption process were much more detailed than its pre-COVID vaccination policies in light of the differing CDC criteria. (CentraCare App. 53, R. Doc. 56-3, at 33:10-25; CentraCare App. 54, R. Doc. 56-3, at 34:1-11.) The COVID pandemic's scale and mortality, as compared to pre-pandemic illnesses, required CentraCare to change its policies and decisions, in reliance on the CDC and Department of Health. (CentraCare App. 54, R. Doc. 56-3, at 35:7-15.)

During the COVID pandemic, certain CentraCare staff were working from home. *See* STATE OF MINNESOTA, *Emergency Executive Order 20-48*, at 3, available at https://mn.gov/governor/newsroom/executive-orders/?id=1055-429838 (April 30, 2020). In May 2021, Klimek moved internally to a new role as a clinical

Appellate Case: 25-1837    Page: 17    Date Filed: 07/30/2025 Entry ID: 5543060

documentation nurse. (Klimek App. 28, R. Doc. 56-12, at PL-003512.) However, CentraCare staff working remotely were expected to comply with the Policy because it applied to all workers and because some remote workers—especially those with nursing skillsets like Klimek—were asked to assist in-person at CentraCare during surges in the pandemic during staff shortages. (Klimek App. 98, R. Doc. 64-10, at 58:11-59:3; Klimek App. 118, R. Doc. 64-12, at 150:21-151:6, 153:9-21.)

> [CentraCare] called nurses back to work on the floor during that situation all the time. So just because [Klimek was] working at home today doesn't mean [she'll] be working at home two weeks from now. . . . There were a lot of people that ultimately became involved in direct patient [care] or had been involved for a long time because [CentraCare] had such a shortage of staff, and [Klimek was] a nurse.

(Klimek App. 98, R. Doc. 64-10, at 58:3-17; Klimek App. 118, R. Doc. 64-12, at 150:21-151:6, 153:9-21.)

## V. CDC and Other Medical Guidance.

The CDC issued guidance stating healthcare providers "may administer any currently FDA-authorized or approved COVID-19 vaccine to people with underlying medical conditions[,]" including "people with immunocompromising conditions [and] Autoimmune conditions." (CentraCare App. 87-89, R. Doc. 56-13, at DEF0178.) The CDC's guidance listed the limited contraindications to COVID-19 vaccination. (CentraCare App. 88, R. Doc. 56-13, at DEF0179.)

The Reflex Sympathetic Dystrophy Syndrome Association ("RSDSA") is an organization comprised of medical professionals from around the world whose

Appellate Case: 25-1837    Page: 18    Date Filed: 07/30/2025 Entry ID: 5543060

"mission is to provide support, education, and hope to all affected by the pain and disability of CRPS/RSD, while driving research to develop better treatments and a cure." (CentraCare App. 100, R. Doc. 56-14, at DEF1699.) Klimek followed the RSDSA and considered it reputable. (CentraCare App. 33, R. Doc. 56-1, at 215:9-25.) On December 10, 2020, the RSDSA issued guidance stating: "**We unanimously agree that there is no reason that people with CRPS patients should avoid the vaccines, and they will not recommend that their patients avoid them**." (CentraCare App. 107, R. Doc. 56-14, at DEF1706 (emphasis added).)

In 2021, the Pain Management Journal published a case study analyzing the effects of COVID vaccination on CRPS patients. (CentraCare App. 109, R. Doc. 56-15.) The case study concluded:

> **The mortality and morbidity of COVID-19 infection are serious, and vaccination is highly recommended in the general population, including patients diagnosed with CRPS**. However, the clinicians should be aware of the possibility that there may be a clinical worsening of CRPS after mRNA-based COVID-19 vaccination. In our case series, **clinical worsening was transient and effectively managed with adjustment of individualized therapy**.

(CentraCare App. 113, R. Doc 56-15, at DEF0287 (emphasis added).)

## VI.   Klimek's COVID-19 Vaccination Exemption Request.

Klimek had not received any vaccines since her injury and RSD diagnosis in 2010. (CentraCare App. 24, R. Doc. 56-1, at 96:7-17.) She believed her RSD diagnosis itself was a contraindication for vaccination. (Klimek App. 78, R. Doc.

9

Appellate Case: 25-1837     Page: 19     Date Filed: 07/30/2025 Entry ID: 5543060

64-9, at 74:20-76:18.) She believed she should be exempt from all vaccines because the "poke" of the needle could have caused a reaction. (Klimek App. 88, R. Doc. 64-9, at 167:3-6, 168:2-13.) However, in December 2020, she underwent a venous blood draw and laboratory test as a result of contracting COVID, with no documented side effects. (CentraCare App. 123-134, R. Doc. 57-1.) Then, on August 20, 2021, she underwent another venous blood draw, again with no documented side effects. (CentraCare App. 137, R. Doc. 57-2.)

**Four days later**, on August 24, Klimek emailed CentraCare, forwarded her August 2016 MMR exemption letter, and requested an exemption from the 2021 Policy because she believed her 2016 exemption applied to "all live or attenuated future vaccinations." (CentraCare App. 139-140, R. Doc. 57-3, at DEF0224-DEF0225.) CentraCare responded that for COVID vaccine medical exemption requests, "[a]ll employees will have to submit requests through this updated process. The COVID vaccine is not a live/attenuated vaccine." (CentraCare App. 139, R. Doc. 57-3, at DEF0024.) Unlike the MMR vaccine, COVID vaccines are not live attenuated. CDC, *COVID-19 Vaccine Basics*, (Sept. 3, 2024) https://www.cdc.gov/covid/vaccines/how-they-work.html (last visited July 25, 2025).

Klimek then completed a new exemption form:

10

> I am medically exempt from any/all live or attenuated vaccinations related to a Centrcare work-related injury resulting in a documented permanet disability and a rare condition Chronic Regional Pain Syndrome/Reflex Sympathetic Dystrophy. This exemption has been documented and filed in my chart since August 2016. My condition is lifelong and I manage the negative effects on a daily basis.

(Klimek App. 131, R. Doc. 67, at DEF0205.) On the **provider** portion of the form, Klimek wrote:

> My condition is permanent and progressive. Please see the previous Physician's documentation and "Permanent Medical Exemption" letter from Aug. 2016 Centra Care EHS Director. Thank You!

(Klimek App. 133, R. Doc. 67, at DEF0210; CentraCare App. 24, R. Doc. 56-1, at 93:21-25.)

On August 25, 2021, Klimek brought the exemption form to her nurse practitioner, Jennifer Chirhart. (CentraCare App. 24, R. Doc. 56-1, at 95:18-23.) Ms. Chirhart completed the form: "Patient has RSD as well as **documentation** that explains her **reaction to all vaccines**. It is not recommended that she get any vaccines due to her RSD." (Klimek App. 132, R. Doc. 67, at DEF0209 (emphasis added).) As to Ms. Chirhart's statement about prior reactions, Klimek admitted this was not true because she had not received any vaccines since her 2010 injury. (CentraCare App. 24, R. Doc. 56-1, at 96:7-17.) While Ms. Chirhart referenced "documentation" in her note, Klimek never submitted medical authority or

11

documentation to CentraCare which suggested her condition was contraindicated with receiving a COVID vaccine. (Klimek App. 82, R. Doc. 64-9, at 97:22-24.)

On September 17, CentraCare requested that Klimek's medical provider submit a separate medical statement, in addition to filling out the form. (CentraCare App. 116, R. Doc. 56-16, at DEF0242.) Klimek then emailed Ms. Chirhart and represented to her: (1) CentraCare already had a "previous letter from [Klimek's] Physician"; (2) CentraCare had already determined she had a "permanent medical exemption from all vaccines"; and (3) Klimek needed a letter from Ms. Chirhart by September 20 supporting her COVID exemption request or would lose her job. (CentraCare App. 118, R. Doc. 56-17, at PL-001431; Klimek App. 83, R. Doc. 64-9, at 101:11-21.) Ms. Chirhart drafted a letter:

> Christine is under my care and has reflex sympathetic dystrophy (RSD) and complex regional pain syndrome. Her condition is permanent and progressive. She has followed [up] with specialties who provided documentation explaining reactions and reasoning why she is to be exempt from receiving vaccines. It is not recommended she get any vaccines due to her RSD. Christine is to be exempt from receiving the Covid vaccine.

(Klimek App. 157, R. Doc. 77, at DEF0247.) Klimek was unsure what Ms. Chirhart meant by writing "specialties who provided documentation explaining reactions and reasoning why she is to be exempt from receiving vaccines." (CentraCare App. 27, R. Doc. 56-1, at 108:7-25.) Klimek speculated she may have medical records stating she should not get vaccines but admitted she had not been treated by any such

12

provider for at least several years. (CentraCare App. 18, R. Doc. 56-1, at 70:12-71:9; CentraCare App. 19, R. Doc. 56-1, at 74:20-76:18.) Even if such records exist, Klimek did not submit them to CentraCare. (CentraCare App. 29, R. Doc. 56-1, at 113:6-14.) Klimek's treatment records from 2021 reflected her belief that the COVID vaccine kills people. (CentraCare App. 22, R. Doc. 56-1, at 87:14-88:8.)

## VII. CentraCare's Physician Specialists Conduct Initial Review of Klimek's Exemption Request.

CentraCare assigned three physicians, Dr. Thomas Math, Dr. Jill Amsberry, and Dr. Lucio Minces, to review medical exemption requests. (Klimek App. 92, R. Doc. 64-10, at 15:5-16:4.) If the initial provider denied the exemption request, a second provider independently reviewed it. (Klimek App. 92, R. Doc. 64-10, at 15:5-16:4.) This second layer of review was intended to ensure accuracy and additional due process. (CentraCare App. 43, R. Doc. 56-2, at 64:23-65:2; CentraCare App. 60, R. Doc. 56-4, at 91:20-92:2.)

Dr. Amsberry is a pediatrician whose vaccination experience included service on the Minnesota Department of Health's COVID-19 Vaccine Allocation Advisory Committee. (CentraCare App. 38, R. Doc. 56-2, at 33:5-10.) Dr. Math is a CentraCare physician board-certified in infectious disease and internal medicine. (CentraCare App. 51, R. Doc. 56-3, at 10:8-17, 11:1-7.)

Dr. Math first reviewed Klimek's exemption request and denied her request because, based on CDC and other guidance and on his clinical judgment, she did not

13

identify a condition that was contraindicated with receiving a COVID vaccine. (Klimek App. 154-156, R. Doc. 77, at DEF0244-DEF0246; Klimek App. 92, R. Doc. 64-10, at 16:8-12; CentraCare App. 185, R. Doc. 55 ℙ 3.) Next, Dr. Amsberry independently reviewed Klimek's request. (Klimek App. 104, R. Doc. 64-11, at 45:1-6; CentraCare App. 40, R. Doc. 56-2, at 45:1-6; CentraCare App. 183, R. Doc. 54 ℙ 3.) When reviewing requests, she applied similar criteria, and, if appropriate, conducted a literature review of the condition. (CentraCare App. 47, R. Doc. 56-2, at 96:19-97:22.) This literature review included reviewing expert guidance regarding certain conditions. (CentraCare App. 48, R. Doc. 56-2, at 104:11-16.) Dr. Amsberry denied Klimek's request because Klimek did not provide information showing her RSD was contraindicated with COVID vaccination. (Klimek App. 109, R. Doc. 64-11, at 94:13-19.) On October 12, 2021, CentraCare sent Klimek a letter informing her of this denial. (Klimek App. 53, R. Doc. 64-5, at PL-001641.)

**VIII. CentraCare Allows Klimek to Submit Additional Information.**

On October 26, CentraCare informed Klimek: "[o]ut of a fairness for the process, the right to supplement submitted documents will be granted to all employees who were denied exemptions, medical and religious, until midnight October 29th. The denied exemption requests will be reconsidered based on the additional submissions." (CentraCare App. 121, R. Doc. 56-18, at PL-001642.) On November 3, five days after the deadline, Klimek submitted a letter with additional

Appellate Case: 25-1837    Page: 24    Date Filed: 07/30/2025 Entry ID: 5543060

information about her reasons for seeking exemption. (Klimek App. 138-141, R. Doc. 70, at DEF0404-DEF0407.) She explained her 2010 injury, surgery, and rehabilitation, and requested, based on these prior incidents, that CentraCare grant her a medical exemption from COVID vaccination. (Klimek App. 84-85, R. Doc. 64-9, at 112:13-114:5.)

She did not, however, submit any medical authority or records to CentraCare, (Klimek App. 87, R. Doc. 64-9, at 122:8-14), because she believed it was CentraCare's—not her own—responsibility "to prove that [she], in fact, was safe to receive" the vaccine, explaining: "I had the [RSD] diagnosis. What else did I need to prove?" (Klimek App. 86, R. Doc. 64-9, at 119:7-10.) She testified: "if [CentraCare] would have looked it up themselves on any web-supported evidenced-based practice site, they would have seen that I, in fact, was contraindicated for COVID and any vaccination." (Klimek App. 86, R. Doc. 64-9, at 118:9-25.) She never identified or submitted any such authority to CentraCare. (Klimek App. 87, R. Doc. 64-9, at 122:8-14.)

Despite being untimely, Dr. Math and Dr. Amsberry reviewed the additional information she submitted; they again independently denied her exemption request. (CentraCare App. 183-84, R. Doc. 54 ₱ 4; CentraCare App. 185-86, R. Doc. 55 ₱ 4; Klimek App. 108, R. Doc. 64-11, at 91:21-92:4; Klimek App. 158, R. Doc. 77, at

15

DEF0248.) On November 16, CentraCare sent Klimek a letter about this denial. (Klimek App. 55, R. Doc. 64-6, at PL-001014.)

## IX. CentraCare Arranges Meeting Between Klimek and Dr. Morris to Further Engage in Interactive Process.

Next, CentraCare arranged a December 2021 meeting between Klimek and Dr. Morris to discuss her exemption request. (Klimek App. 85, R. Doc. 64-9, at 113:24-114:8; CentraCare App. 63, R. Doc. 56-4, at 129:1-11.) Dr. Morris was the incident commander for CentraCare's COVID-19 response. (CentraCare App. 59, R. Doc. 56-4, at 29:5-7.) Prior to the meeting, Dr. Morris had treated RSD patients and reviewed RSD literature and research. (CentraCare App. 62, R. Doc. 56-4, at 120:10-20.) Klimek recorded the meeting, though she did not tell Dr. Morris she was doing so. (Klimek App. 85, R. Doc. 64-9, at 114:9-18.)

Dr. Morris discussed with Klimek the COVID vaccine contraindications and CentraCare's process. (Klimek App. 85, R. Doc. 64-9, at 115:15-116:5.) He explained that immunological societies are recommending COVID vaccination to individuals with autoimmune conditions, and specifically that "the RSD Society . . . [advocated] for vaccinations for many of their patients." (Klimek App. 60, R. Doc. 64-7, at PL-001188.) Dr. Morris then offered to meet with Klimek's care team and offered to extend her employment for an additional month beyond the December 2021 deadline, which Klimek declined. (CentraCare App. 29, R. Doc 56-1, at 116:16-18; CentraCare App. 30, R. Doc. 56-1, at 117:1-7.)

16

## SUMMARY OF ARGUMENT

CentraCare, consistent with hospital systems and employers nationwide, created a Vaccination Policy at the peak of the COVID-19 pandemic. The Policy required all employees, as a condition of employment, to receive a COVID-19 vaccination or request and receive a religious or medical exemption from vaccination. Klimek believed her 2010 RSD diagnosis warranted a medical exemption. She was therefore required under CentraCare's Policy to submit documentation sufficient to establish that her RSD was medically contraindicated with receiving the vaccine.

CentraCare engaged highly qualified physicians to review Klimek's exemption request. CentraCare sought to afford employees a fair, consistent, and objective review process, so its reviewing physicians relied on CDC and other authoritative public health guidance to determine whether an employee's medical exemption request was causally connected to his or her disability. See *Hustvet v. Allina Health Sys.*, 910 F.3d 399, 410-11 (8th Cir. 2018) (holding requested accommodation must be causally related to the disability, and affirming summary judgment on this basis where employee's medical basis for exemption was not a recognized contraindication for vaccination).

Klimek was unable to establish her RSD was contraindicated with receiving a COVID-19 vaccine. First, she had not received any vaccinations since 2010, so

17

Appellate Case: 25-1837    Page: 27    Date Filed: 07/30/2025 Entry ID: 5543060

she was unable to show any adverse vaccine reactions. Second, public health guidance—including guidance from the RSDSA—recommended patients with RSD receive the vaccine, not an exemption. The CDC and relevant medical studies likewise counseled against Klimek's requested exemption. Third, Klimek did not submit to CentraCare any medical documentation that established her RSD was contraindicated with vaccination. After nearly four months of communications with Klimek and numerous independent reviews of her submitted materials, Klimek declined CentraCare's offer to speak with her medical care team to discuss her condition and vaccination. CentraCare therefore ultimately denied Klimek's exemption request.

Unable to show her RSD was contraindicated with vaccination, Klimek shifts the focus away from her RSD. She alleges CentraCare was more lenient to employees requesting religious exemptions than those requesting medical exemptions. She alleges COVID was controversial and novel. She alleges she was working remotely at the time of her request, so CentraCare should have allowed her to continue working remotely, irrespective of her medical condition. But none of these arguments discount CentraCare's lawfully implemented Policy or the fact Klimek did not establish entitlement to an exemption under the Policy. Tellingly, Klimek does not cite a single factually analogous case supporting her arguments.

18

The District Court's Order should be affirmed, as it correctly held: (a) there is a genuine dispute regarding whether Klimek had a protected disability in fall 2021; (b) Klimek was not qualified, with or without reasonable accommodation, because she did not comply with CentraCare's Policy; (c) Klimek's requested exemption was not reasonable or causally related to her RSD; and (d) CentraCare satisfied its interactive process obligations.

## ARGUMENT

### I.  Standard of Review.

This Court "review[s] a district court's decision to grant summary judgment *de novo* and will affirm if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Smith v. Toyota Motor Corp.*, 964 F.3d 725, 728 (8th Cir. 2020). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (citation omitted). To reverse the district court's grant of summary judgment, Klimek must "substantiate [her] allegations by sufficient probative evidence [that] would permit a finding in [her] favor on more than mere speculation, conjecture, or fantasy." *Holaway v. Stratasys, Inc.*, 771 F.3d 1057, 1059 (8th Cir. 2014) (citation omitted).

19

Appellate Case: 25-1837     Page: 29     Date Filed: 07/30/2025 Entry ID: 5543060

## II. Legal Framework Applicable to Klimek's Failure to Accommodate Claims.

"To prevail on [a] failure-to-accommodate claim under the ADA, [Klimek] must establish both a prima facie case of discrimination based on disability and a failure to accommodate it. To establish a prima facie case of discrimination based on disability, [Klimek] must show that [s]he (1) is disabled within the meaning of the ADA; (2) is a qualified individual under the ADA; and (3) has suffered an adverse employment decision because of the disability." *Moses v. Dassault Falcon Jet-Wilmington Corp*, 894 F.3d 911, 923 (8th Cir. 2018) (citation and internal quotations omitted); *Evans v. Coop. Response Ctr., Inc.*, 996 F.3d 539, 547 (8th Cir. 2021) (holding "failure-to-accommodate claim necessarily fails" absent prima facie case).

Klimek "must also establish a failure to accommodate [her] disability." *Hustvet*, 910 F.3d at 410. To do so, she must show she requested a reasonable accommodation which related to her alleged disability and that CentraCare failed to engage in good faith in the interactive process. *Id.*

"Because [c]laims arising under the MHRA are analyzed using the same standard applied to ADA claims, [courts] review the claims simultaneously." *Brunckhorst v. City of Oak Park Heights*, 914 F.3d 1177, 1182 (8th Cir. 2019) (internal quotations omitted); *Kobus v. College of St. Scholastica, Inc.*, 608 F.3d

20

Appellate Case: 25-1837    Page: 30    Date Filed: 07/30/2025 Entry ID: 5543060

1034, 1038 (8th Cir. 2010) (recognizing claims arising under the ADA and MHRA are analyzed under the same standard).

**III.   The District Court Correctly Held There is a Fact Dispute as to Whether Klimek Had a Protected Disability.**

Klimek argues the District Court erred by failing to conclude as a matter of law that Klimek has an ADA- and MHRA-protected disability. The District Court properly denied Klimek summary judgment on this issue.

Klimek bears the burden to prove she is disabled. *Dovenmuehler v. St. Cloud Hosp.*, 509 F.3d 435, 439 (8th Cir. 2007). "To establish a prima facie case of disability discrimination under the ADA, [Klimek] must show that at the time in question she was disabled." *Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1216 (8th Cir. 1999); *see also Samuels v. Kansas City Missouri Sch. Dist.*, 437 F.3d 797, 802 (8th Cir. 2006) ("[T]he determination of whether an individual is entitled to protection under the ADA should be made as of the time of the employment decision[.]").

A "disability" under the ADA is a "physical or mental impairment that substantially[2] limits one or more major life activities of such individual[.]" 42 U.S.C.

---

[2] While the ADA requires proof that an impairment has a "substantial" limitation on a major life activity (whereas the MHRA uses the term "material"), after Congress amended the ADA by lowering the "substantially" standard in 2008,
*(cont'd)*

21

Appellate Case: 25-1837     Page: 31     Date Filed: 07/30/2025 Entry ID: 5543060

§ 12102(1)(A). To meet this showing, a limitation "must substantially limit the employee's plaintiff's ability to perform a major life activity as compared to most people in the general population," which "is a fact-specific inquiry." *Hustvet v. Allina Health Sys.*, 283 F. Supp. 3d 734, 739 (D. Minn. 2017), *aff'd*, 910 F.3d 399 (8th Cir. 2018); *Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020) ("Whether a disability 'substantially limits' an activity or function is a fact-specific inquiry."). This determination "should be made as of the time of the employment decision." *Samuels*, 427 F.3d at 802.

First, CentraCare does not dispute Klimek was diagnosed with RSD in 2010. However, a diagnosed condition is not a *per se* disability. *See, e.g.*, *Samuels*, 437 F.3d at 801 ("Evidence of a medical diagnosis of an impairment is insufficient."); *Kirkberg v. Canadian Pac. Ry.*, 619 F.3d 898, 903 (8th Cir. 2010) (same); *Johanning v. Summit Orthopedics, Ltd.*, 2021 WL 5872664, at *6 (Minn. Ct. App. Dec. 13, 2021) (holding under MHRA "evidence of a diagnosis is not sufficient by itself to establish a qualifying disability"); *see also Hinojosa v. Jostens Inc.*, 128 Fed. App'x 364, 367 (5th Cir. 2005) (RSD diagnosis alone insufficient to establish disability) *Bryson v. Regis Corp.*, 498 F.3d 561, 575-76 (6th Cir. 2007) (same). Thus, the fact

---

the two "standards now appear to align" and can be analyzed together. *Hustvet*, 910 F.3d at 410.

Appellate Case: 25-1837    Page: 32    Date Filed: 07/30/2025 Entry ID: 5543060

she was diagnosed with RSD in 2010, together with medical documentation from around that time, does not render her disabled in 2021.

Second, Klimek incorrectly claims that she need only show her "impairment causes a nontrivial reduction" in her ability to perform a major life activity. (Appellant Br. 24.) She cites no authority for this proposition. EEOC regulations specify that "not every impairment will constitute a disability within the meaning of [the ADA and its regulations]." 29 C.F.R. § 1630.2(j)(1)(ii). The limitation must be substantial[3], not merely "non-trivial" as Klimek suggests. *See Hustvet*, 910 F.3d at 411 (holding insufficient record evidence to show that sensitivities substantially limited major life activity).

Third, a fact issue exists as to whether Klimek's RSD substantially or materially limited a major life activity in fall 2021. While Klimek focuses her argument on her limitations post-injury in 2010 and 2011, she conceded that by 2014, she "was pretty independent" and able to manage any pain at home with "prayer, massage, relaxation techniques, meditation, [and] walking" several miles per day. (Klimek App. 75, R. Doc. 64-9, at 41:1-7.) During summary judgment

---

[3] Under the MHRA, Klimek must show that a major life activity—*i.e.*, "activities that are of central importance to daily life"—is "greatly impeded." *Johanning*, 2021 WL 5872664, at *4.

Appellate Case: 25-1837    Page: 33    Date Filed: 07/30/2025 Entry ID: 5543060

briefing, Klimek signed a declaration describing for the first time additional limitations she alleged suffered, including pain following bee stings or bug bites, nausea and vertigo when having a reaction, and an adverse action to sleep and appetite. (Klimek App. 37, R. Doc. 63 ¶ 8.) These generalized statements do not have medical record support and do not describe the timeframe, frequency, or extent of the limitations. The same goes for a second declaration she signed in *opposition* to CentraCare's motion for summary judgment (not in support of her motion), which contains generalized statements without a defined time period about hardships she has experienced following her 2010 injury. (Klimek App. 168-170, R. Doc. 89 ¶¶ 3-11.) She then downplays the existence of conflicting testimony, admitting she received venous punctures in 2020 and 2021, but alleging these procedures caused her "tremendous problems." (Klimek App. 170, R. Doc. 89 ¶¶ 10-11.) No "problems" have been explained or identified in the record. Klimek's post-discovery declarations, when evaluated in light of her conflicting testimony about her lack of limitations after 2014 and the lack of record evidence of such limitations, do not conclusively establish she was disabled at the time of her accommodation request in 2021. As the District Court extensively and correctly held, deciding this issue would require making credibility determinations and, therefore, a genuine dispute exists.

24

Appellate Case: 25-1837    Page: 34    Date Filed: 07/30/2025 Entry ID: 5543060

## IV. The District Court Correctly Held Klimek Was Not a Qualified Individual.

The second element of a prima facie case of disability discrimination requires Klimek to show she was qualified for the position, with or without reasonable accommodation. *Norman v. Union Pac. R.R. Co.*, 606 F.3d 455, 459 (8th Cir. 2010). "An individual satisfies this requirement if she has the requisite skill, experience, education, and other job-related requirements, and can perform essential job functions, with or without reasonable accommodation." *Id.* In assessing which job requirements or functions are essential, "the employer's judgment in this regard is considered highly probative." *Higgins v. Union Pac. R.R. Co.*, 931 F.3d 664, 670 (8th Cir. 2019) (citation omitted).

Essential job functions can include compliance with policies the employer deems essential, even if the job description does not specifically state compliance is essential. See *McNeil v. Union Pac. R.R. Co.*, 936 F.3d 786, 790 (8th Cir. 2019) (overtime availability was essential job function because employer's scheduling and attendance guidelines indicated employees were required to work overtime); *Higgins v. United States Steel Corp.*, No. 23-CV-2730 (LMP/LIB), 2025 WL 1413847, at *8 (D. Minn. May 15, 2025) (holding compliance with attendance policy was an essential job function).

Appellate Case: 25-1837     Page: 35     Date Filed: 07/30/2025 Entry ID: 5543060

### A. Compliance with CentraCare's Policy Was a Legitimate and Required Condition of Employment.

Klimek argues she was a qualified individual, irrespective of her compliance with CentraCare's Policy, because vaccination was not a "function" listed on her job description. (Appellant Br. 29-31.)

First, Klimek's argument ignores the timing of events. The job description is dated April 24, 2020 (one year before she moved to this role), and CentraCare's Policy was implemented in September 2021. (*Compare* Klimek App. 44, R. Doc. 64-2, *with* Klimek App. 21, R. Doc. 56-10.) CentraCare's September 2021 Policy created a condition of employment, or essential job requirement, that supplemented other essential duties listed in her job description from 18 months prior. It is this September 2021 Policy upon which Klimek's job qualification must be judged. *Samuels*, 437 F.3d at 802 (holding ADA claim must be judged at time of employment decision) (citation omitted). Klimek cannot show she was qualified based on an evaluation of her job description which predated the COVID-19 pandemic and CentraCare's Policy.

Second, when CentraCare implemented the Policy in September 2021, CentraCare made clear that the Policy applied to Klimek and required compliance as a condition of employment. The Policy states: "As a condition of employment, all employees of CentraCare [and other workers] shall be required to receive a full COVID vaccination, or obtain an exemption, according to the terms of this Policy."

26

(Klimek App. 22, R. Doc. 56-10, at PL-001261.) The Policy then states an employee's failure to satisfy this condition of employment will result in a leave of absence. (Klimek App. 22, R. Doc. 56-10, at PL-001261.) Compliance with this Policy, like the overtime policy in *McNeil*, was a clear condition of employment and essential function of Klimek's employment. *McNeil*, 936 F.3d at 790.

Third, Klimek cites no applicable case law supporting her argument that policy compliance cannot constitute an essential job function. Instead, numerous courts have considered Klimek's argument and held compliance with an employer's COVID-19 vaccination policy can and does constitute a legitimate condition of employment. *See, e.g.*, *Rodriguez v. Wellspan Philhaven*, 2025 WL 1710052, at *5 (M.D. Pa. June 18, 2025) ("To be qualified to perform the essential duties of her job, Rodriguez would have had to have been vaccinated for COVID-19 or qualify under a recognized exemption under the vaccine mandate."); *Greenberg v. Visiting Nurse Servs. et al.*, 2024 WL 4252550, at *11 n.16 (S.D.N.Y. Sept. 19, 2024) ("The law is clear that employers have broad discretion to determine [] necessary job qualifications . . . . And in cases involving the COVID-19 Vaccine Mandate, courts regularly conclude that vaccination is a proper condition of employment in the healthcare field.") (compiling cases) (internal quotations omitted).

Here, CentraCare created a legitimate condition of employment by requiring all staff to receive a COVID-19 vaccination or obtain an exemption. Specifically, at

27

the time CentraCare implemented its policy, it was treating 51 COVID patients, 18 of whom were in the ICU; there were only seven ICU beds available statewide; and the number of deaths were peaking. (CentraCare App. 71, R. Doc. 56-7); *see* CDC, *Morbidity and Mortality Weekly Report (MMWR)*, (April 29, 2022), https://www.cdc.gov/mmwr/volumes/71/wr/mm7117e1.htm#F1_down (last visited July 22, 2025). CentraCare's Policy aligned with, and was supported by, the Joint Statement. (CentraCare App. 77, R. Doc. 56-8.) Klimek was required to comply with this condition of employment. She did not do so, and for the reasons explained below in Section VI, her requested accommodation was not reasonable. Accordingly, she was not a qualified individual under the ADA or MHRA.

## B. Klimek's Remote Work Status Is Irrelevant to Whether She Was Qualified.

Klimek argues that the District Court erred in holding she was not qualified because (1) she worked remotely after spring 2021 and (2) CentraCare's decision to call on staff working remotely to assist with in-person tasks during staff shortages (which Klimek does not rebut) was "speculative." (Appellant Br. 29-31.) Klimek's argument mischaracterizes the relevant issue and applicable law. The relevant question is whether Klimek, as an employed nurse subject to CentraCare's Policy, satisfied CentraCare's legitimate condition of employment by receiving a vaccination or obtaining a medical or religious exemption. Klimek's job

28

qualification under the ADA and MHRA does not turn on whether or how frequently she was working from home. The Policy applied to all staff.

First, even if Klimek's remote status was marginally relevant to whether she was required to comply with CentraCare's Policy (it is not), the fact she "never performed" or "almost never ha[d] to perform" in-person work after her job change in mid-2021 is not controlling. *Dropinski v. Douglas Cty.*, 298 F.3d 704, 708 (8th Cir. 2002). Rather, her "specific personal experience is of no consequence in the essential functions equation." *Knutson v. Schwan's Home Serv., Inc.*, 711 F.3d 911, 915 (8th Cir. 2013) (holding Department of Transportation qualification was an essential function of manager position, even though employee rarely performed tasks requiring this qualification, and even though he was permitted to work for nine months without doing so). Therefore, the fact Klimek worked remotely from spring 2021 through her leave in December 2021 does not exempt her from the Policy or establish she was qualified for her position.

Second, Klimek challenges as "speculative" the District Court's reliance on CentraCare's undisputed evidence that it transitioned some then-remote employees (including nurses like Klimek) to in-person roles depending on staffing shortages and COVID-19 surges. The undisputed evidence showed CentraCare "called [remote] nurses back to work on the floor during" the pandemic. (Klimek App. 98, R. Doc. 64-10, at 58:3-17; Klimek App. 118, R. Doc. 64-12, at 150:21-151:6, 153:9-

29

21.) This explains and supports CentraCare's decision to require all employees to comply with the Policy; the fact Klimek was not asked to work in-person during the first few months of her new 2021 role does not show CentraCare's evidence is "speculative." The fact a function (here, in-person work) was rarely performed, or that there was only "the potential" that the function be performed in certain circumstances, does not make the function non-essential or optional. *See Dropinski*, 298 F.3d at 708 (holding employer's assessment "that the potential for these functions exist[ed]" supported finding that the functions were essential, even if not actually performed). Klimek's failure to comply with CentraCare's Policy rendered her unqualified for her position.

### C. Klimek Cannot Establish She Was Qualified by Questioning CentraCare's Business Decision to Create and Implement its Policy.

Next, Klimek challenges various aspects of CentraCare's business decision to implement and enforce the Policy. None of Klimek's arguments relate to—much less support—her argument that she was qualified under the ADA or MHRA.

**Religious Exemptions.** The District Court correctly held that CentraCare's evaluation of 1,000-plus religious exemption requests was irrelevant to whether Klimek was qualified under the ADA. Klimek argues the relevant point is that CentraCare's willingness to permit unvaccinated employees who received religious exemptions to interact with patients shows vaccination was not an essential job

30

Appellate Case: 25-1837    Page: 40    Date Filed: 07/30/2025 Entry ID: 5543060

function. (Appellant Br. 33 n.2.) This is not true. First, CentraCare granted religious exemptions because the law required it to do so, not because it believed vaccination was only essential for those (like Klimek) requesting medical exemptions, but not those requesting religious exemptions. *See Biden v. Missouri*, 595 U.S. 87, 91 (2022) (holding CMS rule directing healthcare facilities to require vaccination also required facilities to offer religious and medical exemptions) (citing Medicare and Medicaid Programs; Omnibus COVID-19 Health Care Staff Vaccination, 86 Fed. Reg. 61,555, 61,569–71 (Nov. 5, 2021) ("CMS Rule")).

Moreover, Klimek ignores the fundamental differences between Title VII's treatment of religious accommodation requests (not at issue here) and the ADA's framework for medical accommodation requests. *See Savel v. MetroHealth Sys.*, 2024 WL 4581542, at *13 (N.D. Ohio Oct. 25, 2024) (describing religious and medical vaccination exemptions as "fundamentally different"). CentraCare's compliance with Title VII by granting religious exemption requests does not undermine CentraCare's position that compliance with its Policy was a legitimate condition of employment or support Klimek's medical exemption request.

**CentraCare's Justifications for Implementing the Policy.** Klimek argues CentraCare implemented the Policy based on the improper goal of protecting community health, and then arbitrarily required staff to comply with the Policy just because CentraCare "said so." CentraCare implemented the Policy based heavily on

Appellate Case: 25-1837     Page: 41     Date Filed: 07/30/2025 Entry ID: 5543060

public health guidance and statistics from controlling sources, including the CDC, MDH, and OSHA. (Klimek App. 21, R. Doc. 56-10, at PL-001260.) Additionally, as the District Court noted, CentraCare "heeded the guidance from more than fifty healthcare associations and industry groups to require their employees to receive a COVID-19 vaccine." (Klimek App. 192; R. Doc. 100, at 21; Addendum 21.) Klimek likewise ignores—and fails to rebut—the glaring COVID-19 crisis in CentraCare's hospitals, which further motivated its decision to adopt the Policy. (Klimek App. 21, R. Doc. 56-10.).

This business judgment—not CentraCare's "say so"—is what courts must afford substantial deference in evaluating whether compliance with the Policy was a legitimate condition of employment. *Adams v. Mass Gen. Brigham Inc.*, 2023 WL 6318821, at *1 (D. Mass. Sept. 28, 2023) ("[S]ubstantial deference must be given to the judgments of a hospital organization struggling to cope with a worldwide pandemic. And it is emphatically not the role of the federal courts simply to second-guess those judgments, or to substitute its own views for those of trained medical personnel."); *W.S. v. Ragsdale*, 540 F. Supp. 3d 1215, 1219 (N.D. Ga. 2021) (noting "Defendants have a right to rely on the recommendations given by public health authorities . . . when deciding how to combat COVID-19, which has caused the worst public health crisis in a century"); *Jean-Pierre v. Naples Cmty. Hosp., Inc.*, 817 Fed.

32

Appellate Case: 25-1837     Page: 42     Date Filed: 07/30/2025 Entry ID: 5543060

App'x 822, 828 (11th Cir. 2020) ("Where, as here, the employer's business involves the protection of lives, courts are reluctant to restructure its employment practices.").

Klimek cannot evade compliance with CentraCare's Policy by disagreeing with CentraCare's aim to protect the communities it served and the staff it employed. Klimek was required to comply with the Policy as a condition of working for CentraCare, and her inability to do so left her unqualified under the ADA.

**Medical Inquiry.** Klimek next argues for the first time that CentraCare's Policy was a "medical examination" for which CentraCare lacked a business necessity. First, this argument fails because Klimek did not raise it before the District Court. *United States v. Rees*, 447 F.3d 1128, 1130 (8th Cir. 2006) (holding party cannot raise new arguments on appeal).

Even if she had raised this argument below, she cites no law suggesting CentraCare's Policy constituted a disability-related inquiry such that the business necessity defense would apply. Nor did CentraCare raise any business necessity defense at summary judgment. In any event, the EEOC issued guidance foreclosing Klimek's argument. COVID-19 Guidance § K.9, U.S. Equal Emp. Opportunity Comm'n, *What You Should Know About COVID-19 and the ADA, the Rehabilitation Act, and Other EEO Laws*, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws (last visited July 9, 2025) ("[R]equesting documentation or other confirmation of vaccination is not a

33

disability-related inquiry under the ADA, and the ADA's rules about making such inquiries do not apply[.]"); *Aronson v. Olmsted Med. Ctr.*, 668 F. Supp. 3d 843, 854 (D. Minn. 2023) (holding vaccination policy is not a "medical examination").

## V. Klimek Cannot Show CentraCare Took Adverse Action Because of Her Disability.

The third element of Klimek's *prima facie* case requires that she establish she suffered an adverse action because of her disability. *Moses*, 894 F.3d at 924. Klimek does not address this element in her briefing. She instead argues "[i]t is undisputed that Klimek suffered an adverse employment decision because she did not receive a COVID-19 vaccination." (Appellant Br. 20).

However, Klimek must do more than show she was terminated based on her vaccination status, as an employer's decision based on **vaccination status** does not establish the employer took action based on **disability**. *See, e.g.*, *Shane v. Bio-Techne Corp.*, No. 22-CV-3039 (JWB/ECW), 2023 WL 3936638, at *8 (D. Minn. June 9, 2023) (holding plaintiff cannot claim "discrimination under either the ADA or the MHRA based on his vaccination choice"); *Kale v. Aeuo Simulation, Inc.*, 2023 WL 6255013, at *3 (D.S.D. Sept. 26, 2023) (compiling cases holding "unvaccinated status is not a disability"), *aff'd on other grounds*, 139 F.4th 684 (8th Cir. 2025).

Here, there is no genuine dispute CentraCare's denial of Klimek's requested exemption, and its subsequent decision to place her on leave, was not caused by her alleged disability. The fact Dr. Math decided in 2016 to grant Klimek an MMR

34

vaccine exemption based on her RSD further supports this conclusion. The only differences between this 2016 decision—with which Klimek agreed—and CentraCare's 2021 exemption decision, were the COVID-19 pandemic, public health guidance regarding COVID-19, and CentraCare's decision to implement the Policy. Klimek's RSD diagnosis stayed the same. Accordingly, she cannot show CentraCare took adverse action based on her alleged disability.

## VI. Klimek Cannot Show Her Requested Accommodation—a Medical Exemption from Vaccination—Was Reasonable or Causally Related to Her Disability.

On a failure to accommodate claim, the requested accommodation "must relate to the individual's disability." *Hustvet*, 910 F.3d at 410 (citing *Wood v. Crown Redi-Mix, Inc.*, 339 F.3d 682, 687 (8th Cir. 2003)) (other citations omitted).

Klimek cannot satisfy this well-established requirement. In fact, while the crux of Klimek's argument is that the ADA requires a context-specific and individualized approach to evaluating an employee's accommodation request, Klimek **does not favorably cite a single case in her brief** which involves comparable facts or context: COVID-19 or employee vaccination exemption requests. CentraCare agrees context is critical in this case, as COVID-19 imposed unique challenges unlike any case upon which Klimek relies. As further explained in this section, cases involving comparable facts, context, and law strongly support the District Court's thorough and correct holding.

35

Appellate Case: 25-1837    Page: 45    Date Filed: 07/30/2025 Entry ID: 5543060

**A. How *Hustvet* and other Courts Have Analyzed this Element in Cases Involving Medical Exemption Requests.**

In *Hustvet*, the plaintiff requested an exemption from Allina's immunization policy because she suffered from vaccine sensitivities and allergies. *Hustvet*, 214 F.3d at 405. She was terminated because she refused to comply with Allina's policy. *Id.* The district court granted Allina summary judgment on the failure to accommodate claim, and the Eighth Circuit affirmed, explaining:

> When the accommodation requested is unrelated to the limitation, we do not believe an ADA action may lie. Put another way, there must be a causal connection between the major life activity that is limited, and the accommodation sought. . . . [T]he accommodation she sought did not sufficiently relate to her purported disability. As the district court explained, while the live virus in the MMR vaccine presents a very small, but possible risk, of having a seizure, the CDC does not consider past seizures to be a contraindication or even a precaution for the vaccine. We are unconvinced the accommodation sought related to her purported disability in a meaningful way. For all of these reasons, we affirm the district court's grant of summary judgment on Hustvet's failure-to-accommodate claims under the ADA and MHRA.

*Id.* at 411 (citations and internal quotations omitted). While *Hustvet* pre-dated the pandemic, its import in COVID-19 medical exemption cases is two-fold. First, *Hustvet* affirms the longstanding rule that failure-to-accommodate plaintiffs must show their requested accommodation relates to the at-issue disability. Second, *Hustvet* makes clear that, in assessing this requirement, employers (and courts) may look to authoritative public health sources in considering whether the disability is sufficiently related to the requested accommodation or exemption.

Appellate Case: 25-1837    Page: 46    Date Filed: 07/30/2025 Entry ID: 5543060

Klimek does not challenge either of these holdings. Instead, Klimek argues *Hustvet* is inapposite because (a) the plaintiff in *Hustvet* was not working remotely when she requested an exemption and (b) the Eighth Circuit held the plaintiff was not disabled. But these arguments do nothing to discount the central holding in *Hustvet* that controls in this case: whether Klimek can show her RSD was, according to recognized public health authorities, contraindicated with COVID-19 vaccination and, in turn, a valid basis for a medical exemption.

**B.      How Public Authorities Instructed Hospitals in 2021 to Design COVID-19 Vaccination Policies.**

After COVID-19 vaccines became available, the Department of Health and Human Services (HHS) and Centers for Medicare & Medicaid Services (CMS) required covered facilities, like CentraCare, to implement a vaccination policy and a process by which staff could request medical (and religious) exemptions from vaccination. *See* CMS Rule. In designing this exemption process, the CMS Rule directed employers to "refer to the CDC informational document, Summary Document for Interim Clinical Considerations for Use of COVID-19 Vaccines" to identify the "recognized medical conditions [which] may provide grounds for exemption." *Id.*

The CMS Rule then outlined the documentation which employees must submit in support of medical exemption requests, including, in relevant part:

37

- "documentation confirming recognized clinical contraindications to COVID-19 vaccines"; and

- the "documentation must contain . . . the recognized clinical reasons for the contraindications; and a statement by the authenticating practitioner recommending that the staff member be exempted from the facility's COVID-19 vaccination requirements based on the recognized clinical contraindications."

*Id.* The CMS rule, consistent with *Hustvet*, makes clear employers can and should analyze medical exemption requests by considering whether the disability presents a contraindication for receiving a COVID-19 vaccine.

### C.    How Courts in COVID-19 Medical Exemption Cases Evaluated whether a Condition Supports a Vaccination Exemption Request.

Courts following the onset of the COVID-19 pandemic have repeatedly followed *Hustvet* and evaluated the "relatedness" element by considering whether the at-issue disabilities are recognized contraindications for COVID-19 vaccination. "[I]n vaccine exemption cases, courts look to whether the Center for Disease Control (CDC) has recognized the alleged disability as a contraindication of the relevant vaccine when determining whether the requested accommodation is reasonable." *Jacobs v. Mercy Health*, 719 F. Supp. 3d 894, 910 (E.D. Mo. 2024). This is because "where the claimed disability is not a contraindication for the vaccine, the requested accommodation does not sufficiently relate to the claimed disability." *Id.* (citation omitted). In *Jacobs*, the plaintiff (who previously received an influenza vaccine exemption) submitted a medical exemption request to her employer's nearly

38

Appellate Case: 25-1837    Page: 48    Date Filed: 07/30/2025 Entry ID: 5543060

identical COVID vaccination policy based on his Guillain-Barre Syndrome, and the employer denied the request "because the Centers for Disease Control ('CDC') does not recognize GBS as a contraindication to receiving the COVID-19 vaccine." *Id.* at 901. The court granted the employer-hospital summary judgment because "the CDC does not recognize GBS as a contraindication of the COVID-19 vaccine, thus Plaintiff's requested accommodation (vaccine exemption) is not sufficiently related to her purported disability of GBS." *Id.* at 912.

Other courts have followed this same analysis and dismissed claims absent proof that the claimed disability for which an exemption was requested was contraindicated with vaccination. *See, e.g.*, *Rodriguez v. Wellspan Philhaven*, 2025 WL 1710052, at \*5 (M.D. Pa. June 18, 2025); *McCarthy v. Mass. Gen. Brigham Inc.*, 2024 WL 3416025, at \*4 (D. Mass. July 15, 2024); *Harriss v. City of Carbondale*, 2024 WL 2292875, at \*3 (S.D. Ill. May 21, 2024). These cases are all consistent with *Hustvet* and support CentraCare's decision to deny Klimek's requested exemption for the same reasons.

### D. Klimek's Claim Fails Because She Has No Evidence Her Condition is Contraindicated with COVID-19 Vaccination.

Here, as in *Hustvet*, *Jacobs*, and other comparable cases, there is no CDC (or other) guidance suggesting that RSD is a contraindication to COVID vaccination. Rather, the RSDSA, which agreed was "reputable," recommended RSD patients like Klimek receive the COVID vaccine. (CentraCare App. 107, R. Doc. 56-14, at

39

DEF1706.) Moreover, the only record evidence of any medical case study analyzing whether COVID vaccines impact RSD concluded: "The mortality and morbidity of COVID-19 infection are serious, and vaccination is highly recommended in the general population, including patients diagnosed with CRPS." (CentraCare App. 113, R. Doc. 56-15, at DEF0287.)

In contrast to this scientific and authoritative evidence, Klimek did not submit to CentraCare any medical evidence (aside from a vague nurse's note) explaining adverse outcomes she may suffer due to her RSD if she were to receive a COVID vaccine. Indeed, she had not received any vaccinations since her 2010 RSD diagnosis, so any adverse "reaction" was purely speculative. Klimek's request to be medically exempt from receiving the COVID vaccine was not reasonable or related to her condition because there was no CDC or other authoritative public health guidance suggesting RSD was contraindicated with COVID vaccination. This is fatal to her claim.

### E. Klimek's Challenge to CentraCare's Reliance on Public Health Authority Is Unavailing.

Klimek makes four arguments to support her position that CentraCare and this Court should disregard CDC guidance in deciding her claim.

First, she argues the ADA requires employers to "conduct a particularized evaluation of an employee's health condition, not rely on generic principles without regard to the employee." (Appellant Br. 43.) CentraCare did, over the course of

40

nearly four months of communications with Klimek, conduct a particularized evaluation as to whether her condition was a medically supported contraindication with COVID vaccination. Dr. Math and Dr. Amsberry reviewed the documentation Klimek submitted, and evaluated whether that documentation provided any basis to conclude her RSD prevented her from safely receiving the vaccine. Dr. Morris specifically discussed with Klimek the fact that the RSDSA **recommended** RSD patients like Klimek to become vaccinated. (Klimek App. 60, R. Doc. 64-7, at PL-001188.) CentraCare did not rely on "generic principles"; it relied on authoritative and evidence-based guidance.

Second, Klimek argues that the "absence" of CDC guidance stating RSD is contraindicated with COVID vaccination "may simply indicate that the CDC lacks sufficient information to include the counterindication." (Appellant Br. 43.) This argument may make some sense if the CDC affirmatively stated it had no information as to the safety of vaccination for RSD patients, or had no information as to the safety of vaccination except for a few conditions. But the CDC's guidance instead stated that healthcare professionals "may administer any currently FDA-authorized or approved COVID-19 vaccine to people with underlying medical conditions," identified specific contraindications for vaccination, and identified specific instructions for vaccinating patients with other underlying conditions. (CentraCare App. 87-88, R. Doc. 56-13, at DEF0178-0179.) Moreover, Klimek

41

ignores the RSDSA guidance and the medical study regarding the effects of vaccination on individuals with RSD—which "highly recommended" vaccination for these individuals.

Third, Klimek admits CentraCare correctly gave CDC guidance "special weight and authority," but argues CentraCare improperly deemed this guidance "conclusive." (Appellant Br. 44.) She cites *Bragdon v. Abbott*, a 1998 case in which the Supreme Court evaluated contrasting evidence regarding the "threat" to a dentist treating an HIV-positive patient. 524 U.S. 624, 625 (1998). Klimek's reliance on *Bragdon* fails because *Bragdon* concerned the extent of a "direct threat," *id.* at 649, whereas here the relevant question is whether CentraCare's exemption process and decision reasonably relied on CDC's guidance as to vaccine contraindications. Additionally, *Bragdon* made clear that employees seeking to "refute" CDC guidance must provide a "credible scientific basis" for deviating from CDC guidance. *Id.* at 650. Klimek has not done so here, as her sole "evidence" submitted to CentraCare in support of her exemption request was a letter from her nurse which referred to unidentified "documentation" and then simply recommended Klimek not receive the vaccine. (Klimek App. 157, R. Doc. 77, at DEF0247.)

Fourth, Klimek argues CDC guidance is not authoritative if it is novel or politically controversial. (Appellant Br. 44-45 (citing *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 759-60 (2021); *Loper Bright Enters. v.*

42

Appellate Case: 25-1837     Page: 52     Date Filed: 07/30/2025 Entry ID: 5543060

*Raimondo*, 603 U.S. 369 (2024)).) While she did not make this argument at summary judgment, and it should therefore be deemed waived, it is unfounded. These cases concern administrative and CDC's overreach, not an employer's reliance on administrative expertise and evidence-based guidance. Nor do these cases stand for the proposition that federal guidance should be discarded in the face of novelty or political controversy. Klimek's attempt, nearly four years after leaving CentraCare, to show she should have been granted an exemption because COVID was controversial, or because she disagreed with the CDC, is an attempt to distract from her inability to establish a claim under controlling law.

In summary, CentraCare's COVID-19 exemption review process was designed to ensure objectivity and consistency in evaluating a large volume of medical exemption requests from employees suffering from a wide array of conditions. Understanding its obligation to grant medical exemptions to those whose disabilities caused limitations which were contraindicated with COVID vaccination, CentraCare created objectivity in the process by relying on public health guidance to understand which disabilities met this standard. Doing otherwise would have forced CentraCare to either grant all exceptions or risk being accused of inconsistent or inequal treatment. Under this objective and lawful process, Klimek was unable to show she suffered limitations from RSD such that COVID vaccination was contraindicated with her condition, as she had not received any vaccines since being

Appellate Case: 25-1837     Page: 53     Date Filed: 07/30/2025 Entry ID: 5543060

diagnosed with RSD, and public health authority specifically recommended individuals with RSD receive the vaccine—not an exemption. In turn, an exemption from COVID vaccination was neither reasonable nor causally related to her RSD. The District Court correctly granted CentraCare summary judgment on this basis. *Hustvet*, 910 F.3d at 410.

## VII. Klimek Cannot Establish CentraCare Failed to Accommodate her Condition.

Even if Klimek could establish her *prima facie* case of disability discrimination, she "must also establish a failure to accommodate [her] disability." *Id*. "[F]or a failure-to-accommodate claim to survive summary judgment, an employee must do more than establish a prima facie case—[s]he must also show that h[er] employer failed to engage in the interactive process in good faith." *Mobley v. St. Luke's Health Sys.*, 53 F.4th 452, 457 (8th Cir. 2022).

> To show an employer breached its duty to engage in the interactive process, an employee must show 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

*McNeil*, 936 F.3d at 791 (citation omitted). Klimek cannot satisfy elements three or four.

Appellate Case: 25-1837    Page: 54    Date Filed: 07/30/2025 Entry ID: 5543060

### A. CentraCare Made a Good Faith Effort to Assist Klimek.

"With regard to the interactive process for a request for accommodation, an employer must converse or interact with the individual about the availability of a reasonable accommodation" and make good faith efforts during the process. *Faulkner v. Douglas Cty. Neb.*, 906 F.3d 728, 733 (8th Cir. 2018) (citation omitted); *McBee v. Team Indus., Inc.*, 925 N.W.2d 222, 228 (Minn. 2019) (same). "This interactive, accommodation-seeking process must be initiated by the disabled employee, who must alert [her] employer to the need for an accommodation and provide relevant details of [her] disability." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 906 (8th Cir. 2015). While engaging in this interactive process, CentraCare "is not required to provide the specific accommodation requested or preferred by an employee. Rather, an employer only has to provide an accommodation that is reasonable." *Scruggs v. Pulaski Cty.*, 817 F.3d 1087, 1093 (8th Cir. 2016) (citation omitted).[4]

---

[4] Under the MHRA (unlike the ADA), in late 2021 when Klimek requested and was denied an exemption, **no** interactive process was required, but an employer was required to act in good faith. *McBee*, 925 N.W.2d at 229 (holding interactive process is not a statutory requirement).

45

Appellate Case: 25-1837     Page: 55     Date Filed: 07/30/2025 Entry ID: 5543060

**1. CentraCare Sets Up Objective and Thorough Review Process to Review and Consistently Evaluate Exemption Requests.**

The goal of the interactive process is to "identify the precise limitations resulting from the disability and potential **reasonable** accommodations that could overcome those limitations." 29 C.F.R. § 1630.2 (emphasis added). CentraCare, faced with an unprecedented pandemic, as well as fast-evolving public health and legal guidance regarding how employers can and should respond to the pandemic, developed an objective and uniform process tailored to achieve this goal.

First, CentraCare set up a lawful exemption review process designed to evaluate the large volume of exemption requests and, to the greatest extent possible, meaningfully, objectively, and efficiently engage with each such requesting employee. CentraCare informed employees, and Klimek understood, medical exemption requests would be evaluated on a case-by-case basis, using the available CDC guidance as an evaluation framework. (Klimek App. 23, R. Doc. 56-10, at PL-001262.) Around the time CentraCare adopted this Policy, one court deemed reasonable a nearly identical process, explaining:

> Plaintiffs contend that [hospital's] process was not interactive because it rubber-stamped the CDC's guidance and discouraged network physicians from writing medical exemption requests. However, plaintiffs do not point to any law that would prohibit employers from considering medical guidance during an interactive process. Indeed, the EEOC's guidelines advise that employers may rely on CDC recommendations.

46

Appellate Case: 25-1837   Page: 56   Date Filed: 07/30/2025 Entry ID: 5543060

*Together Emps. v. Mass Gen. Bringham Inc.*, 573 F. Supp. 3d 412, 447 n.15 (D. Mass. 2021), *aff'd*, 32 F.4th 82 (1st Cir. 2022).

Second, CentraCare tasked Drs. Math and Amsberry, highly-qualified specialists, to evaluate medical exemption requests. Drs. Math and Amsberry (as well as Dr. Morris) reviewed the information and documentation submitted by each requesting employee and used their clinical judgment, the CDC guidance, and (as needed) conducted literature reviews to determine whether the exemption request identified a contraindicated condition. (CentraCare App. 47, R. Doc. 56-2, at 96:19-97:22; CentraCare App. 62, R. Doc. 56-4, at 120:10-20.)

Third, as to CentraCare employees like Klimek whose initial exemption requests were denied, CentraCare allowed them to request reconsideration and submit additional information or documentation which they believed supported their exemption requests. CentraCare's medical providers then re-evaluated the exemption requests in light of the additional information submitted.

Fourth, CentraCare allowed employees, like Klimek, to set up one-on-one meetings with Dr. Morris to further engage in interactive dialogue regarding the accommodation request.

Appellate Case: 25-1837    Page: 57    Date Filed: 07/30/2025 Entry ID: 5543060

**2.** **CentraCare Evaluated Klimek's Medical Exemption Request and Engaged in Good Faith with Her for Nearly Four Months to Evaluate the Reasonableness of Her Requested Accommodation.**

Next, CentraCare applied this same individualized process to evaluate Klimek's requested medical exemption. Klimek requested a medical exemption in August 2021. This began a nearly four-month interactive process with CentraCare, which included Klimek's initial request, CentraCare's communications explaining the process and additional information that was required, CentraCare's initial denial decision, CentraCare's invitation to submit additional information for reconsideration, Klimek's additional letter (but with no medical documentation), CentraCare's second denial, CentraCare's invitation to meet one-on-one with Dr. Morris, and Klimek's meeting with Dr. Morris during which he offered to meet with her care team and extend the decision deadline.

This extensive interactive process satisfied CentraCare's burden to converse or interact in good faith with Klimek about a reasonable accommodation for her condition. *Faulkner*, 906 F.3d at 734; *Cf. Milam v. ASCAP*, 2024 WL 3639611, at *19 (M.D. Tenn. Aug. 1, 2024) (holding employer satisfied interactive process obligation by "respond[ing] to [employee's] request for an accommodation by proposing a reasonable accommodation: that [employee] provide medical documentation to support his request for an exemption from the COVID-19 Vaccine Policy" which employee did not fully submit).

48

Appellate Case: 25-1837     Page: 58     Date Filed: 07/30/2025 Entry ID: 5543060

Klimek argues CentraCare's engagement in this extensive interactive process lacked "good faith" because CentraCare never genuinely considered her request and its procedure was "merely performative." (Appellant Br. 48-52.) Klimek's argument overlooks the purpose of the ADA's interactive process requirement, her own failure to support the reasonableness of her request, and the public health guidance undermining the reasonableness of her requested accommodation. Again, CentraCare and Klimek were required to work together to "identify the precise limitations resulting from [Klimek's] disability and potential **reasonable** accommodations that could overcome those limitations." 29 C.F.R. § 1630.2. CentraCare did so.

CentraCare requested during the interactive process, on numerous occasions, that Klimek submit documents explaining her disability-related limitations and identifying how those limitations related to her request: a medical exemption from CentraCare's Policy. During this process, Klimek did not provide CentraCare any medical records describing her RSD limitations or why her RSD required a medical exemption from COVID-19 vaccination. Instead, she submitted a short generic letter from her nurse recommending Klimek receive an exemption because of her RSD. Absent documentation supporting how her RSD imposed limitations related to COVID-19 vaccination, CentraCare turned to public health authorities to assess whether there was any basis for concluding that granting Klimek's requested

49

Appellate Case: 25-1837     Page: 59     Date Filed: 07/30/2025 Entry ID: 5543060

exemption was necessary to overcome her alleged disability (RSD). Public health authorities, including the RSDSA and Pain Management Journal, unequivocally recommended Klimek **receive** a vaccine. (CentraCare App. 113, R. Doc 56-15, at DEF0287; CentraCare App. 107, R. Doc. 56-14, at DEF1706.) Consistent with this guidance, the CDC did not identify RSD in its guidance as a contraindication or precaution to vaccination. (CentraCare App. 87-89, R. Doc. 56-13, at DEF0178-DEF0180.)

Based on this evidence, the District Court correctly held that CentraCare's review process—and its four-month interactive process specific to Klimek—satisfied its obligation to engage in a good faith dialogue with Klimek to identify whether a reasonable accommodation was available to assist with Klimek's RSD-imposed limitations. 29 C.F.R. § 1630.2. No such accommodation was reasonable given Klimek failed to provide any substantive medical evidence supporting her request. The fact Klimek's requested accommodation was not reasonable does not mean CentraCare acted in bad faith. *Scruggs*, 817 F.3d at 1093 (holding employee is not entitled to specific preferred accommodation if such accommodation is not reasonable).[5]

---

[5] Klimek argues the District Court misapplied the summary judgment standard by finding CentraCare demonstrated good faith, citing *Cravens v. Blue Cross & Blue*
*(cont'd)*

50

Appellate Case: 25-1837     Page: 60     Date Filed: 07/30/2025 Entry ID: 5543060

### 3. Klimek Requested an Exemption from Vaccination Based on Her RSD, not Permission to Work Remotely.

Unable to show her requested medical exemption was reasonable and related to her RSD, Klimek challenges whether CentraCare acted in good faith by arguing remote workers should have been exempt[6] and that CentraCare violated the law by failing to allow her to work remotely. But as the District Court correctly held, Klimek requested a medical exemption from vaccination, not an accommodation to work remotely. (Klimek App. 194-195; R. Doc. 100, at 23-24; Addendum 23-24.) Klimek attempts to reframe her initial accommodation request in an effort to show CentraCare should have granted her an accommodation to work remotely. But Klimek concedes in her brief that remote work was a reasonable accommodation only if Klimek **also** received a medical exemption based on her RSD. She alleges: "The accommodation that CentraCare was obligated to provide Klimek was the

*Shield*, a case she describes as "closely parallel." However, in *Cravens*, the employee requested an internal job transfer, requested assistance in finding available jobs, and told HR about an open role, in response to which the employer refused to help her, and did not respond to her "repeated phone messages and attempted visits." 214 F.3d 1011, 1021-22 (8th Cir. 2000). *Cravens* is inapposite.

[6] CentraCare's decision to apply its Policy to all workers is purely a business judgment entitled to substantial deference. *See Hanebrink v. Brown Shoe Co.*, 110 F.3d 644, 646 (8th Cir. 1997) ("[W]e emphasize that employers are free to make their own business decisions, even inefficient ones, so long as they do not discriminate unlawfully.").

51

combination of both [a] letting her continue to work from home, **and [b] excepting her from the COVID-19 Policy due to her medical condition**.” (Appellant Br. 62 (emphasis added).) The ADA and MHRA require CentraCare to reasonably accommodate protected disabilities, not remote workers. Klimek's remote work argument fails for three reasons.

First, Klimek requested a medical exemption based on her RSD. She stated the basis for her request was her RSD. (Klimek App. 131, R. Doc. 67, at DEF0205.) She submitted a nurse's note requesting to be exempt from CentraCare's Policy because her RSD may be affected by vaccines. (Klimek App. 157, R. Doc. 77, at DEF0247.) When her request was denied, she requested reconsideration, asserting her RSD makes her "medically exempt from any/all live or attenuated vaccines." (Klimek App. 138-141, R. Doc. 70, at DEF0404-0407.) She then met with Dr. Morris, again explaining her RSD warranted a medical exemption. (Klimek App. 63-64, R. Doc. 64-7, at PL-001191-PL0001192.) Klimek cannot show CentraCare lacked good faith in denying her medical exemption request by now arguing CentraCare should have granted her exemption because she was able to work remotely.

Second, CentraCare was not required to propose or agree to remote work as an accommodation for Klimek's condition because remote work was not an accommodation causally related to Klimek's RSD limitations. *See Hustvet*, 910 F.3d

52

Appellate Case: 25-1837     Page: 62     Date Filed: 07/30/2025 Entry ID: 5543060

at 410 (holding accommodation must be causally related to major life activity limited by condition). Klimek's RSD did not relate to her ability to work in-person, as confirmed by her decade-plus in-person role at CentraCare while suffering from the same RSD condition. Indeed, if all employees seeking exemptions needed to show was the ability to work remotely, CentraCare would be required to grant exemptions to any remote employee, regardless of disability or religious preference. CentraCare instead followed the law by granting medical exemptions to those who, based on disability, were entitled to accommodations under the ADA, rather than focusing medical accommodation decisions on whether or where an employee worked remotely. In doing so, CentraCare focused the interactive process on identifying Klimek's actual RSD-caused limitations (which Klimek alleged were vaccine side-effects) to determine whether her requested medical exemption could overcome those limitations. 29 C.F.R. § 1630.2. Klimek's condition did not have any recognized or demonstrated limitations on receiving a COVID-19 vaccine, so her request was denied—regardless of her then-remote work status.

Third, Klimek cites *Mobley*, arguing remote work can in some circumstances be a reasonable accommodation and that permitting employees to work remotely may show that in-person work is not an essential job function. *Mobley*, 53 F.4th at 456. But in *Mobley*, the employee requested the ability to work remotely whenever he experienced occasional flare-ups of his condition; he did not request any

53

Appellate Case: 25-1837     Page: 63     Date Filed: 07/30/2025 Entry ID: 5543060

exemption to a workplace policy, much less a medical exemption from a vaccination policy. Moreover, the *Mobley* Court **affirmed** summary judgment to the employer because the employer engaged in good faith in the interactive process despite denying the remote work accommodation. *Id.* at 457. The same result should follow here.

In summary, Klimek admits her requested accommodation necessarily included an exemption from CentraCare's Policy. This exemption is the accommodation that she cannot prove was reasonable. She now argues that she **also** wanted to work from home, or continue to work from home, and she cites law suggesting remote work can be a reasonable accommodation. But remote work is a possible accommodation for someone whose medical condition required that they work remotely (as in *Mobley*). However, remote work is **not** a reasonable accommodation for an employee, like Klimek, who requested to be medically exempt from a vaccination policy. Klimek's claim fails because she cannot show CentraCare failed to engage in interactive process to determine whether it was reasonable to grant her request to be exempt from the Policy.

**B. Klimek Cannot Show She Could Have Been Reasonably Accommodated Absent CentraCare's Lack of Good Faith.**

**1. Klimek's Request Would Relieve Her of Essential Functions.**

The last element Klimek must establish is that she could have been reasonably accommodated absent CentraCare's lack of good faith. *McNeil*, 936 F.3d at 791. She

54

Appellate Case: 25-1837    Page: 64    Date Filed: 07/30/2025 Entry ID: 5543060

cannot satisfy this element if her requested exemption "would relieve her" of essential job functions, rather than allow her to perform such functions. *Faulkner*, 906 F.3d at 734.

Here, as explained above in Section IV, compliance with CentraCare's Policy was a legitimate condition of employment. CentraCare's inability to accommodate Klimek's request was not due to any bad faith conduct. It was because Klimek did not provide CentraCare with information or documentation sufficient to show her RSD was a recognized contraindication to vaccination. Klimek's assignment of "bad faith" focuses on CentraCare's failure to permit her to work remotely. But even if CentraCare had permitted Klimek to continue to work remotely, she would nonetheless have been unable to comply with its Policy. *Evans v. Coop. Response Ctr., Inc.*, 996 F.3d 539, 547 (8th Cir. 2021) ("If an accommodation would leave the employee unable to perform an essential job function . . . her accommodation claim fails.").

### 2. Klimek's Meeting with Dr. Morris Ended All Required Interactive Process.

Last, Klimek's failure to accommodate claims fail because the reason the interactive process ended was because Klimek refused to allow Dr. Morris to speak with her care team, and confirmed that there was no circumstance under which she would receive a COVID vaccine. *Nahal v. Allina Health Sys.*, 842 Fed. App'x 9, 10

55

Appellate Case: 25-1837     Page: 65     Date Filed: 07/30/2025 Entry ID: 5543060

(8th Cir. 2021) (holding failure to accommodate claim fails if employee causes breakdown in interactive process).

During Klimek's meeting with Dr. Morris, he offered to discuss her request with her care team and delay her leave-of-absence date while such discussions took place. (CentraCare App. 29, R. Doc 56-1, at 116:16-18; CentraCare App. 30, R. Doc. 56-1, at 117:1-7; Klimek App. 63-64, R. Doc. 64-7, at PL001191-PL001192.) By declining Dr. Morris's offer, Klimek—not CentraCare—ended the interactive process.

A recent Fourth Circuit decision, *Tarquinio v. Johns Hopkins Univ. Applied Physics Lab*, is instructive. There, the employer implemented a COVID-19 vaccination policy comparable to CentraCare's Policy. 2024 WL 1604493, at *1 (D. Md. Apr. 11, 2024), *aff'd*, 141 F.4th 568 (4th Cir. June 25, 2025). The plaintiff-appellant (Tarquinio) suffered from lyme disease-induced immune dysregulation and requested a medical exemption from vaccination. *Taraquinio*, 141 F.4th at 570. She submitted medical documentation completed by herself and her provider explaining her basis for seeking an exemption, including that a vaccine may cause her body to "go crazy due to immune chaos, and most likely [suffer] a bad outcome." *Id.* at 571. In response to her employer's request for additional information, Tarquinio submitted two scientific papers provided by her doctor. *Id.* Her employer initially denied her request because the information she submitted did not identify

56

information sufficient to show her condition was medically contraindicated with COVID vaccination. *Id.* at 572. Tarquinio then declined to let her employer communicate with her doctor because she believed (like Klimek) her employer "already knew everything it needed to, [and] must have wanted to contact her doctors to second-guess their medical judgment." *Id.* The employer then formally denied her requested exemption because there was insufficient documentation to show a medical contraindication, and the employee refused to allow her employer to communicate with her doctor. *Id.*

The Fourth Circuit affirmed summary judgment for the employer, holding Tarquino did not provide her employer with information sufficient for it to confirm whether her condition was contraindicated with COVID vaccination such that a medical exemption under the vaccination policy was warranted. *Id.* at 574-575. The court explained that the interactive process "gives the employer a chance to confirm that it has a duty to accommodate to begin with," including in that case by requesting evidence showing "why her condition required the accommodations that she asked for [exemption]. *Id.* at 574-576 (citing 29 C.F.R. § 1630.2(o)(3)).

Here, as in *Tarquino*, CentraCare implemented a vaccination policy, allowed medical exemptions, requested documentation explaining how and why Klimek's RSD warranted a medical exemption, requested additional information from Klimek numerous times, reviewed the information each time, denied Klimek's exemption,

57

Appellate Case: 25-1837     Page: 67     Date Filed: 07/30/2025 Entry ID: 5543060

met with her personally to offer to meet with her care team, and after Klimek refused this offer, ultimately denied her exemption request. Klimek argues CentraCare should have ignored Klimek's failure to provide sufficient medical documentation and, instead, granted her request because she was working remotely and could continue to do so. This is simply not required under the ADA or the MHRA. CentraCare properly focused the interactive process on Klimek's disability and related limitations, rather than her ability to work remotely. The District Court's Order should be affirmed because it correctly held Klimek failed to show CentraCare failed to engage in good faith in the ADA's interactive process.

## CONCLUSION

For the foregoing reasons, Appellee CentraCare Health System respectfully requests this Court affirm the District Court's March 25, 2025, Order in its entirety.

Dated: July 30, 2025

**FELHABER LARSON**

By: _/s/ Zachary A. Alter_
     Sara G. McGrane, #233213
     Zachary A. Alter, #0399991
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
(612) 339-6321
smcgrane@felhaber.com
zalter@felhaber.com

**ATTORNEYS FOR APPELLEE**
**CENTRACARE HEALTH SYSTEM**

58

# CERTIFICATES OF COMPLIANCE

1.      This brief complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because this brief contains 12,913 words, excluding the parts of the brief exempt by Fed. R. App. P. 32(f).

2.      The undersigned certifies that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Office 365 Word in 14-point Times New Roman type.

Dated:  July 30, 2025        **FELHABER LARSON**

By: /s/ *Zachary A. Alter*
     Sara G. McGrane, #233213
     Zachary A. Alter, #0399991
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
(612) 339-6321
smcgrane@felhaber.com
zalter@felhaber.com

**ATTORNEYS FOR APPELLEE
CENTRACARE HEALTH SYSTEM**

59

Appellate Case: 25-1837    Page: 69    Date Filed: 07/30/2025 Entry ID: 5543060

# EIGHTH CIRCUIT LOCAL RULE 28A(h) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to 8th Cir. R. 28A(h), a version of Appellee's CentraCare Health System's Brief in non-scanned PDF format. I hereby certify that the file has been scanned for viruses and that it is virus-free.

Dated:  July 30, 2025

**FELHABER LARSON**

By:  */s/ Zachary A. Alter*
     Sara G. McGrane, #233213
     Zachary A. Alter, #0399991
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
(612) 339-6321
smcgrane@felhaber.com
zalter@felhaber.com

**ATTORNEYS FOR APPELLEE
CENTRACARE HEALTH SYSTEM**

60

# CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.

Dated:  July 30, 2025

**FELHABER LARSON**

By:  _/s/ Zachary A. Alter_
     Sara G. McGrane, #233213
     Zachary A. Alter, #0399991
220 South Sixth Street, Suite 2200
Minneapolis, Minnesota 55402
(612) 339-6321
smcgrane@felhaber.com
zalter@felhaber.com

**ATTORNEYS FOR APPELLEE**
**CENTRACARE HEALTH SYSTEM**

61

Appellate Case: 25-1837   Page: 71   Date Filed: 07/30/2025 Entry ID: 5543060