# NO. 25-1837

## In the United States Court of Appeals for the Eighth Circuit

CHRISTINE KLIMEK,

APPELLANT,

v.

CENTRACARE HEALTH SYSTEM,

APPELLEE.

*Appeal from the
United States District Court
for the District of Minnesota*

**REPLY BRIEF OF APPELLANT CHRISTINE KLIMEK**

ANDREW D. PARKER

PARKER DANIELS KIBORT LLC
888 COLWELL BUILDING
123 NORTH THIRD STREET
MINNEAPOLIS, MN 55401
(612) 355-4100

*Counsel for Appellant*

Appellate Case: 25-1837    Page: 1    Date Filed: 08/20/2025 Entry ID: 5549885

# Table of Contents

Table of Contents ..................................................................................................i

Table of Authorities ........................................................................................ iii

Argument ............................................................................................................3

    I.    KLIMEK'S DISABILITY PRECLUDED CENTRACARE FROM REQUIRING VACCINATION AS A "CONDITION OF EMPLOYMENT" FOR HER.....................................................................3

        A.    CentraCare Failed to Meet Its Burden to Show Vaccination Was an Essential Job Function for Klimek ................................3

        B.    "Broader Community" Health Does Not Establish an Essential Job Function...............................................................11

    II.    THE OPPOSITION CONFIRMS CENTRACARE VIOLATED TWO ADA PROVISIONS.......................................................................13

        A.    CentraCare Failed to Reasonably Modify Its Policy .............13

        B.    CentraCare Terminated Klimek Without Performing an Individualized Assessment of Her Disability or Capabilities..........................................................................16

            1.    CentraCare failed to perform an individualized assessment of Klimek's medical limitations ................17

            2.    CentraCare failed to perform an individualized assessment of Klimek's capability to perform her job duties .........................................................................20

            3.    CentraCare's arguments concerning its "process" are diversionary ..............................................................21

        C.    The ADA Applies to "Business Decisions" .............................21

    III.    CENTRACARE'S ARGUMENTS CONCERNING THE ELEMENTS OF KLIMEK'S CLAIMS ARE MERITLESS .................23

Appellate Case: 25-1837    Page: 2    Date Filed: 08/20/2025 Entry ID: 5549885

A. Vaccination Would Have Harmed Klimek ..............................23

B. Klimek Was Disabled ..................................................................26

C. CentraCare Terminated Klimek on the Basis of Her Disability..................................................................................29

D. Klimek's Requested Accommodation Was Reasonable and Related to Her Disability...........................................................30

    1. *Hustvet* is inapposite......................................................31

    2. The "CMS Rule" support Klimek....................................32

    3. Hearsay generalized medical statements do not support summary judgment ...........................................33

    4. Continuing to work from home was part of Klimek's request to CentraCare....................................................34

Conclusion.................................................................................................35

Certificate of Compliance .......................................................................36

Eighth Circuit Rule 28A(h)(2) Certification .........................................36

Certificate of Service ...............................................................................36

Appellate Case: 25-1837    Page: 3    Date Filed: 08/20/2025 Entry ID: 5549885

# Table of Authorities

**Cases**

*Adams v. Mass Gen. Brigham Inc.*, No. 21-11686-FDS, 2023 U.S. Dist. LEXIS 174606, *2, *26-28 (D. Mass. Sept. 28, 2023) ...................................... 12, 19

*Bell v. Baptist Health*, 60 F.4th 1198 (8th Cir. 2023) .............................................33

*Canny v. Dr Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894 (8th Cir. 2006)................................................................7, 17

*EEOC v. Convergys Customer Mgmt. Grp.*, 491 F.3d 790 (8th Cir. 2007) .. 15, 16

*EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561 (8th Cir. 2007)........................9, 11

*Ehlers v. Univ. of Minn.*, 34 F.4th 655 (8th Cir. 2022) .........................................17

*Garrison v. Dolgencorp, LLC*, 939 F.3d 937 (8th Cir. 2019)................................14

*Greenberg v. Visiting Nurse Servs. in Westchester, Inc.*, No. 23-CV-4252, 2024 U.S. Dist. LEXIS 170818 (S.D.N.Y. Sep. 19, 2024)......................................5, 8

*Hanebrink v. Brown Shoe Co.*, 110 F.3d 644 (8th Cir. 1997) ...............................22

*Harrell v. Donahue*, 638 F.3d 975 (8th Cir. 2011)..................................................5

*Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030 (8th Cir. 2020) .................... 5, 8, 20

*Holiday v. City of Chattanooga*, 206 F.3d 637 (8th Cir. 2000)....................... 16, 20

*Jacobs v. Mercy Health*, 719 F. Supp. 3d 894 (E.D. Mo. 2024)...........................19

*Jean-Pierre v. Naples Cmty. Hosp., Inc.*, 817 Fed. App'x 822 (11th Cir. 2020)..................................................5, 12

*Kammueller v. Loomis, Loomis, Fargo & Co.*, 383 F.3d 779, 786 (8th Cir. 2004).....................................................4, 6, 7

Appellate Case: 25-1837    Page: 4    Date Filed: 08/20/2025 Entry ID: 5549885

*Kowitz v. Trinity Health*, 839 F.3d 742 (8th Cir. 2016)........................................15

*McNeil v. Union Pac. R.R. Co.*, 936 F.3d 786 (8th Cir. 2019).........................3, 11

*Rodriguez Garza v. Philhaven*, No. 1:23-CV-00698, 2025 U.S. Dist. LEXIS
    115925 (M.D. Pa. June 18, 2025) ...................................................................8

*Sutton v. United Air Lines*, 527 U.S. 471 (1999)...................................................16

*Tarquinio v. Johns Hopkins Univ. Applied Physics Lab.*,
    141 F.4th 568 (4th Cir. 2025) ....................................................... 24, 25, 26

*Thomas v. Corwin*, 483 F.3d 516 (8th Cir. 2007) ..................................................13

*Turner v. Hershey Chocolate USA*, 440 F.3d 604 (3rd Cir. 2006).........................10

*W.S. v. Ragsdale*, 540 F. Supp. 3d 1215 (N.D. Ga. 2021)...................................12

## Statutes

42 U.S.C. § 12111.............................................................................................. passim

42 U.S.C. § 12112.............................................................................................. passim

## Regulations

29 C.F.R. § 1630.2(n)(2) .......................................................................................10

29 C.F.R. § 1630.2(n)(3) .........................................................................................8

29 C.F.R. § 1630.2(n)(3)(ii) .....................................................................................6

86 Fed. Reg. ...........................................................................................................32

iv

In fifty-eight pages of Opposition briefing, CentraCare fails to explain why vaccination is an essential function of a job where the employee is fully remote. There was no job-related reason for CentraCare to demand Christine Klimek be vaccinated against the instruction of her medical providers. The Opposition ("Opp.") talks around this issue, contending CentraCare's vaccination Policy was "a legitimate condition of employment" and a "business judgment" "based heavily on public health guidance and statistics." Opp. 27, 31-32. These contentions are senseless as applied to Klimek. A fully-remote employee does not present any risk of infection to CentraCare patients or employees. CentraCare's social preference for vaccination did not supplant its duty under the ADA to reasonably accommodate Klimek's disability by excusing her from vaccination.

The Opposition also notably omits any assertion that CentraCare considered and rejected modification of its vaccination Policy as an accommodation for Klimek. 42 U.S.C. § 12111(9) requires an employer to reasonably modify policies to accommodate a disabled employee's need. The Opposition does not attempt to square CentraCare's actions with § 12111(9); in fact, the Opposition does not mention § 12111 at all. Instead, CentraCare turns the law upside-down, arguing that its Policy ipso facto

1

justified denying Klimek's request to continue working without vaccination. Under the ADA, the Policy must reasonably yield to Klimek's disability, not Klimek's disability to the Policy.

A third glaring omission in the Opposition is the absence of any discussion of 42 U.S.C. § 12112. Subsections 12112(b)(3)(A), (5)(A) and (6) each prohibited CentraCare from terminating Klimek for not receiving a vaccine that her disability prevented her from receiving. The Opposition does not address 42 U.S.C. § 12112.

As did the district court, CentraCare's Opposition ignores or misapplies basic principles of the ADA. CentraCare's refusal to address the critical issues in this appeal concedes that no legally or factually sound defense of the district court's summary judgment Order exists, and the other arguments that the Opposition does present are meritless. The undisputed facts show CentraCare violated federal and Minnesota law when it terminated Klimek for not being vaccinated. At minimum the evidence would support a reasonable jury verdict in favor of Klimek. The district court's summary judgment Order should be reversed.

2

<u>ARGUMENT</u>

**I. KLIMEK'S DISABILITY PRECLUDED CENTRACARE FROM REQUIRING VACCINATION AS A "CONDITION OF EMPLOYMENT" FOR HER.**

The central question in this appeal is whether Klimek could perform her essential job functions without COVID vaccination. Like the district court, CentraCare denies that she could. Yet also like the district court CentraCare identifies no job task that Klimek could not perform while unvaccinated – except for the purported essential function of being vaccinated. This is circular. CentraCare's argument is that Klimek's job required her to be vaccinated merely because CentraCare wanted her to be vaccinated. The ADA is not so easily circumvented.

**A. <u>CentraCare Failed to Meet Its Burden to Show Vaccination Was an Essential Job Function for Klimek.</u>**

CentraCare asserts compliance with its vaccination Policy was an essential function of Klimek's job. Opp. 25-33. CentraCare therefore bears the burden to establish that vaccination was essential. "An employer who disputes a failure-to-accommodate claim on the ground that the employee could not perform an essential function of the job must establish that the function at issue is essential." *McNeil v. Union Pac. R.R. Co.*, 936 F.3d 786, 789 (8th Cir. 2019). There is no evidence to meet this burden.

3

The relevant record is stark. CentraCare does not dispute that Klimek's written job description showed her tasks were done on a computer with no necessary physical proximity to others, that the tasks centered on analyzing documentation and data, and that Klimek worked from home one hundred percent of the time. *Cf.* Klimek Br. 30 *with* Opp. 25-33. No reasonable, much less essential, job-related purpose is served by applying to a worker never physically present at the employer's facilities a Policy preventing physical spread of disease. A hallmark of essential job functions is that the employer suffers adverse consequences if the employee does not perform them. *See Kammueller v. Loomis, Fargo & Co.*, 383 F.3d 779, 786 (8th Cir. 2004). CentraCare did not suffer **any** "consequences of not requiring" Klimek "to perform the function" of being vaccinated. *See id.*

Further, CentraCare permitted more than a thousand employees engaged in direct patient care to continue working without vaccination, in response to requests for religious accommodation, and CentraCare "did not grant or deny" any vaccination exemption "based upon whether such individual provided direct patient care." App. 67; R. Doc. 64-8. CentraCare attempts to escape these facts by arguing that the law governing religious accommodations is different from the law governing disability

4

Appellate Case: 25-1837     Page: 9     Date Filed: 08/20/2025 Entry ID: 5549885

accommodations. Opp. 31. The standards are parallel. An employer need not grant a religious accommodation that imposes undue hardship on the employer. *Harrell v. Donahue*, 638 F.3d 975, 979 (8th Cir. 2011). In fact, on the issues of job qualification and conditions of employment, CentraCare's own brief cites cases that addressed requests for religious accommodation and not disability accommodation! Opp. 27 (quoting *Greenberg v. Visiting Nurse Servs. in Westchester, Inc.*, No. 23-CV-4252, 2024 U.S. Dist. LEXIS 170818 (S.D.N.Y. Sep. 19, 2024)); Opp. 32-33 (quoting *Jean-Pierre v. Naples Cmty. Hosp., Inc.*, 817 Fed. App'x 822 (11th Cir. 2020)). The religious exemptions CentraCare granted show CentraCare did not regard vaccination as an essential function even for patient-treating employees.

There is more. For obvious reasons an employer cannot make a reasonable determination of essential job function if the employer does not know the employee's job duties and does not consider whether the employee can complete those duties absent compliance with its policy. Essential function is determined on a job-specific basis. *Harris v. Union Pac. R.R. Co.*, 953 F.3d 1030, 1035 (8th Cir. 2020). CentraCare does not deny that its doctors did not know Klimek's job duties at the time they reviewed her request to be excused from vaccination and never considered at all the question of

5

whether *any* employee could work safely without vaccination. *Cf.* Klimek Br. 13, 31 *with* Opp. 13-15.

A reasonable jury could, and indeed would be obligated to, conclude that CentraCare did not carry its burden to show vaccination was essential to Klimek's job function.[1] CentraCare offers five contrary arguments. Opp. 25-33. None provide any basis or evidence upon which the Court could conclude that vaccination was essential, and CentraCare's departures from the reasoning of the district court highlight the deficiency of the district court's analysis.

First, CentraCare argues that policy compliance "can" be essential even if not mentioned in a job description. Opp. 25. The observation is meaningless. CentraCare cannot dispute that a written job description is an important factor for evaluating whether a job function is essential. *See* 29 C.F.R. § 1630.2(n)(3)(ii); *Kammueller*, 383 F.3d at 786. This factor weighs against regarding vaccination as essential here. While an unwritten

---

[1] While the Opposition repeatedly asserts "compliance" with its Policy was essential for Klimek, CentraCare does not attempt to explain how requiring "compliance" was meaningfully different from requiring *vaccination* with respect to Klimek. The district court's distinction between the two, *see* Add. 21-22; App. 192-193, R.Doc. 100, is empty, *see* Klimek Br. 38-40.

6

obligation *can be* essential, *whether it actually is* essential depends upon the specific obligation and the specific job. There was no reason for CentraCare's Policy to be essential for Klimek's job.

Second, CentraCare argues that in September 2021 it declared its vaccination Policy to be a "condition of employment." Opp. 26. Again the observation is meaningless. CentraCare's declaration was not a *reason* justifying the Policy or *evidence* showing the Policy was essential to Klimek's job. It was a fiat. Klimek's opening brief showed an employer's say-so is not sufficient to establish a job function as essential, citing *Kammueller*, 383 F.3d at 787, and *Canny v. Dr Pepper/Seven-Up Bottling Grp., Inc.*, 439 F.3d 894, 902 (8th Cir. 2006). Klimek Br. 35-36. The Opposition offers no response. It does not mention *Kammueller* or *Canny*. To the extent CentraCare argues that its September 2021 declaration changed Klimek's written job description, the argument misfires because the written description factor concerns descriptions created *before* the employer claimed the employee failed to satisfy them. *See Kammueller*, 383 F.3d at 786 (written job descriptions "prepared before advertising or interviewing applicants for the job").

Third, CentraCare asserts COVID vaccination "can and does constitute a legitimate condition of employment." Opp. 27. That is not the relevant

7

Appellate Case: 25-1837    Page: 12    Date Filed: 08/20/2025 Entry ID: 5549885

legal question. Vaccination cannot be assumed as essential for *all* jobs. Essential functions must be evaluated on a job-specific basis. *Harris*, 953 F.3d at 1035; *see* 29 C.F.R. § 1630.2(n)(3). Further, the ADA requires employers to reasonably modify conditions of employment if necessary to accommodate an employee's disability. 42 U.S.C. §§ 12112(b)(5)(A), 12111(9). The relevant legal question is whether for purposes of Klimek's ADA claim her vaccination status was an essential, unmodifiable function of *her* job. The evidence uniformly shows it was not.

Neither of the unpublished cases cited by CentraCare on this point support CentraCare's argument. In *Rodriguez Garza v. Philhaven*, No. 1:23-CV-00698, 2025 U.S. Dist. LEXIS 115925 (M.D. Pa. June 18, 2025), the employee was a medical assistant and the court made no mention of her being a remote worker at any time. In *Greenberg*, 2024 U.S. Dist. LEXIS 170818, *23, *25, the plaintiff was not a fully remote worker prior to her request for religious accommodation and never requested to be transferred to a fully remote schedule. *Rodriguez Garza* and *Greenberg* have no significance to whether vaccination is essential to a fully-remote worker.

Fourth, CentraCare discusses the COVID pandemic but does not explain how the referenced information purportedly made vaccination

8

essential for Klimek's job. Opp. 28. None of the referenced information indicates in any way that absent vaccination Klimek would have been unable to perform essential job tasks.

Fifth, CentraCare asserts that in the future it might have wanted to transfer Klimek to in-person job responsibilities. Opp. 29-30. This theory was relied upon by the district court, and Klimek's opening brief identified four reasons why the theory does not support the conclusion that vaccination was essential to Klimek's role, including that *according to CentraCare itself* providing direct patient care was not a consideration upon which CentraCare relied when refusing to allow Klimek to continue to work without vaccination. Klimek Br. 32-35. In response, CentraCare implausibly asserts that it is not "speculative" for an employer to regard as *essential* an unwritten task the employer had never before called upon the employee in her current position to perform. Opp. 29-30. The law, which CentraCare does not dispute or even address, is that "marginal" functions of a position are not essential. *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 568 (8th Cir. 2007); *see* Klimek Br. 33-34. A task not included in the employee's written job description that she has never been asked to perform in her current position does not rise to the level of a "marginal" function, much less an "essential"

9

Appellate Case: 25-1837    Page: 14    Date Filed: 08/20/2025 Entry ID: 5549885

one. Illustrative reasons to consider a job function essential include the position exists "to perform that function," or if there is a "limited number of employees available among whom the performance of that job function can be distributed," or if the function is "highly specialized so that the incumbent in the position is hired for his or her expertise or ability to perform the particular function." *Turner v. Hershey Chocolate USA*, 440 F.3d 604, 612 (3d Cir. 2006) (quoting 29 C.F.R. § 1630.2(n)(2)). No such reason, or any comparable reason, applies here.

Moreover, the record plainly shows Klimek's disability, while it did not prevent her from fulfilling her job responsibilities, *would* have prevented her from fulfilling tasks necessary for in-person patient care. App. 169; R. Doc. 89 at ¶ 8. The ADA precluded CentraCare from making any hypothetical future demand that Klimek change her job function to provide in-person nursing services.

Klimek's opening brief showed the district court did not identify any reason that vaccination was essential to Klimek's job. Klimek Br. 31-45. The Opposition also fails to identify any evidence to support that proposition. CentraCare failed to carry its burden to establish vaccination as an essential job function and therefore CentraCare cannot dispute Klimek's failure-to-

10

accommodate claim on the ground that Klimek "could not perform an essential function of the job." *See McNeil*, 936 F.3d at 789; *Wal-Mart Stores,* 477 F.3d at 568.

### B. "Broader Community" Health Does Not Establish an Essential Job Function.

The district court relied on a novel theory that concern for the health of "the broader communities" justified CentraCare's insistence that Klimek be vaccinated. Add. 20-21; App. 191-192, R.Doc. 100. Klimek's opening brief showed this theory is not a permissible basis under the ADA for an employer to refuse accommodation to a disabled employee. Klimek Br. 36-38. CentraCare's Opposition identifies no reason, other than an appeal to CentraCare's "business judgment," to support the assertion that vaccination to protect the health of "broader communities" was essential for Klimek's job. *See* Opp. 31-33. Nor does CentraCare identify any law to support the proposition that preferences concerning "broader communities" override an employer's obligations under the ADA. The three authorities cited by CentraCare on this point, Opp. 32-33, underscore the lack of merit in its argument:

11

- The district court in *Adams v. Mass Gen. Brigham Inc.*, after describing "a hospital organization struggling to cope with a worldwide pandemic," ***denied*** the hospital defendant's motion for summary judgment against ADA claims, except as to nine plaintiffs who failed to show they were disabled. No. 21-11686-FDS, 2023 U.S. Dist. LEXIS 174606, *2, *26-28 (D. Mass. Sept. 28, 2023).

- In *W.S. v. Ragsdale*, the district court denied a motion for a temporary restraining order against a school district's ***mask mandate***, where the plaintiffs' claims were premised on state and federal constitutional claims, not the ADA. 540 F. Supp. 3d 1215 (N.D. Ga. 2021).

- In *Jean-Pierre*, the court decided an employee's religious beliefs did not prevent his employer from terminating him for failing to work on Saturdays, when he refused to apply for another position which did not require working on Saturdays. 817 Fed. App'x at 827-28.

None of these cases suggest the ADA's obligations can be subordinated to an employer's purported concern for the health of the community.

CentraCare concludes its defense of the community health justification by responding to the medical inquiry point made in Klimek's opening brief. Opp. 33. In doing so, CentraCare agrees "business necessity" was not part of

Appellate Case: 25-1837    Page: 17    Date Filed: 08/20/2025 Entry ID: 5549885

its summary judgment motion. *Id*. CentraCare thereby concedes that Klimek could work unvaccinated without interfering with CentraCare's operations. Whatever the EEOC's views on vaccination, the ADA does not permit employers to even *inquire* about employee health conditions that are not job-related. 42 U.S.C. § 12112(d)(1), (d)(4)(A), (a), (b)(6); *Thomas v. Corwin*, 483 F.3d 516, 527 (8th Cir. 2007). CentraCare's broad-brush vaccination requirement without regard to Klimek's job function contravenes that federal policy. Vaccination status is plainly a health condition.

## II. THE OPPOSITION CONFIRMS CENTRACARE VIOLATED TWO ADA PROVISIONS.

The Opposition confirms that CentraCare violated two central employer obligations under the ADA: the requirement to reasonably modify policy to accommodate an employee's disabilities and the requirement to provide individualized consideration of a disabled employee's capabilities. CentraCare does not even claim to have fulfilled the first, and the undisputed facts show it did not fulfill the second.

### A. CentraCare Failed to Reasonably Modify Its Policy.

42 U.S.C. §§ 12112(b)(5)(A) and 12111(9) require employers to reasonably modify their policies to permit disabled employees to perform

13

their jobs. *See* Klimek Br. 50-52, 59-60. CentraCare owed Klimek a statutory duty to modify its Policy, if reasonably possible, to accommodate her.

The district court misapplied the law concerning this obligation, apparently believing simple application of the Policy's terms to Klimek satisfied the ADA. *See* Klimek Br. 53-54, 57-61; Add. 21-22, 29-31; App. 192-193, 200-202, R.Doc. 100. The Opposition takes the same view. *See* Opp. 18, 26-27. CentraCare does not claim its Policy could not have been modified to accommodate Klimek. CentraCare also does not dispute that 42 U.S.C. §§ 12112(b)(5)(A) and 12111(9) require employers to reasonably modify their policies to accommodate disabled employees.

Instead, the Opposition ignores the issue and emphasizes that CentraCare applied its Policy to all workers. Opp. 6 ("all staff across all locations"), 8, 17, 26, 27, 29, 30. This argument is an admission of liability. Application of a policy to disabled workers without regard to their individualized job function and capabilities is precisely what §§ 12112(b)(5)(A) and 12111(9) prohibit. When CentraCare became aware of Klimek's request to continue working without being vaccinated due to her disability, CentraCare became obligated to "take some initiative," *Garrison v. Dolgencorp, LLC*, 939 F.3d 937, 942 (8th Cir. 2019), and to "identify potential

14

effective accommodations" in consultation with Klimek, *EEOC v. Convergys Customer Mgmt. Grp.*, 491 F.3d 790, 795 (8th Cir. 2007). It had to "consider[] how best to accommodate" her specific needs. *Kowitz v. Trinity Health*, 839 F.3d 742, 746 (8th Cir. 2016). "We applied our policy to everyone" is not a defense to an ADA failure-to-accommodate claim.

CentraCare asserts, "if all employees seeking exemptions needed to show was the ability to work remotely, CentraCare would be required to grant exemptions to any remote employee, regardless of disability or religious preference." Opp. 53. This is wrong and misleading. CentraCare is required by the ADA to grant an exception from its vaccination requirement for any employee who ***both*** (1) has a disability that prevents her from receiving the vaccine ***and*** (2) can fulfill her essential job functions without being vaccinated. Both were true of Klimek.

Because CentraCare does not even claim to have considered whether its Policy could be reasonably modified to accommodate Klimek, and because a reasonable modification was plainly available, the Opposition implicitly admits CentraCare violated §§ 12112(b)(5)(A) and 12111(9).

15

**B. CentraCare Terminated Klimek Without Performing an Individualized Assessment of Her Disability or Capabilities.**

The ADA requires individualized consideration of a disabled person's *health* and *job*. One of its key purposes is to prohibit employers from applying broad-brush policies without regard to a disabled person's particular circumstances. There are at least two necessary individualized components to the employer's ADA obligation:

- Considering the employee's specific medical limitations. *Sutton v. United Air Lines*, 527 U.S. 471, 483 (1999) ("whether a person has a disability under the ADA is an individualized inquiry").

- Considering the impact of the limitations on the employee's specific job duties. *Convergys*, 491 F.3d at 795 ("first analyz[ing] the relevant job and the specific limitations imposed by the disability") (quotation omitted).

"[T]he employer must conduct an individualized inquiry into the individual's actual medical condition, and the impact, if any, the condition might have on that individual's ability to perform the job in question." *Holiday v. City of Chattanooga*, 206 F.3d 637, 643 (6th Cir. 2000). CentraCare's process did not evaluate Klimek as an individual. The conclusion that

16

CentraCare did not act in good faith follows. *See Ehlers v. Univ. of Minn.*, 34 F.4th 655, 662 (8th Cir. 2022) (construing *Canny*, 439 F.3d at 899, 902-903).

CentraCare claims to have conducted an individualized inquiry concerning Klimek's disability, Opp. 40-41, but the undisputed evidence shows CentraCare's inquiry did not consider Klimek as an individual person or Klimek's capability to fulfill her individual job duties without vaccination. At minimum this is a jury question.

### 1. CentraCare failed to perform an individualized assessment of Klimek's medical limitations.

CentraCare made its determination concerning Klimek's medical condition without any reference to her particular health and abilities, treating her solely as a member of the class of people diagnosed with RSD on the assumption that all persons with RSD are the same. To determine whether to require Klimek to be vaccinated, CentraCare merely compared Klimek's diagnosed condition (RSD/CRPS) with the list of then-CDC-recognized counterindications for COVID vaccination. *See* Klimek Br. 11-13. Because Klimek did not have one of the three CDC-listed conditions, she was denied a vaccine exemption under the Policy. *Id.*

Appellate Case: 25-1837    Page: 22    Date Filed: 08/20/2025 Entry ID: 5549885

CentraCare tries to obscure these facts by claiming its process included "clinical judgment" and "literature reviews," Opp. 47, but the testimony of the doctors who made CentraCare's decision was that they made no effort to determine the effect that vaccination would have on Klimek's RSD, had little knowledge about RSD treatment or contraindications, and made no effort to learn about RSD when responding to Klimek's request. App. 107; R. Doc. 64-11 at 87:13-23; App. 95-96; R. Doc. 64-10, at 26:18-27:13, 30:7-17; App. 109-111; R. Doc. 64-11, at 94:8-19, 98:7-99:3; 108:13-22.

These doctors' boilerplate reliance on the absence of RSD from CDC's evolving guidelines concerning a novel, controversial vaccine was not an inquiry focused on *Klimek's* individual limitations. It was a class-based approach irreconcilable with the ADA's command that disabled persons be treated as unique persons rather than indistinguishable members of a broad, depersonalized group. From 2016 through 2021 and into the present, medical providers who examined Klimek as an unique individual concluded uniformly that she should not receive any vaccinations. App. 76; R. Doc. 64-9 at 45:8-13; App. 82; R. Doc. 64-9 at 100:1-23; App. 127; R. Doc. 65; App. 132, 135; R. Docs. 67, 69; App. 143; R. Doc. 72; App. 146; R. Doc. 73.

Appellate Case: 25-1837    Page: 23    Date Filed: 08/20/2025 Entry ID: 5549885

The Opposition shows two additional reasons the CDC's general statements about COVID vaccination have no evidentiary value, for purposes of an ADA claim, compared with the contrary conclusions of medical providers who treated or examined the specific employee. Quoting *Jacobs v. Mercy Health*, 719 F. Supp. 3d 894, 911 (E.D. Mo. 2024), the Opposition states, "[T]he CDC does not recognize GBS [Guillain-Barre Syndrome] as a contraindication of the COVID-19 vaccine" – but *CentraCare* recognized Guillain-Barre as a potential contraindication to the vaccine. *Cf.* Opp. 39 *with* App. 26; R. Doc. 56-11 at DEF0202.[2] That is, CentraCare itself did not accept all CDC statements on vaccine contraindications as the final word. CentraCare also admits the authorities cited by Klimek "concern administrative and CDC's overreach." Opp. 43. Omission of RSD from generalized, changing medical judgment calls about COVID vaccine contraindications, made by an agency known to overreach with respect to COVID, is not evidence that places into dispute the consistent conclusions

---

[2] *Adams*, another case cited in the Opposition, denied summary judgment against ADA claims brought by plaintiffs who had conditions not listed by the CDC as contraindications for the COVID vaccine, because the plaintiffs "assert[ed] that they had other valid medical reasons for avoiding vaccination." 2023 U.S. Dist. LEXIS 174606, *25.

19

Appellate Case: 25-1837    Page: 24    Date Filed: 08/20/2025 Entry ID: 5549885

of Klimek's treating medical providers and independent medical examiner that she should not take the vaccine. *See* Klimek Br. 43-45.

### 2. CentraCare failed to perform an individualized assessment of Klimek's capability to perform her job duties.

CentraCare forthrightly proclaims that the specific characteristics of Klimek's job played no role in its decision to deny her request to continue working without vaccination. Opp. 28 ("Klimek's Remote Work Status Is Irrelevant to Whether She Was Qualified"); 29; *see* App. 67; R. Doc. 64-8. In CentraCare's view, job function was irrelevant to whether a disabled employee was entitled to continue working without vaccination. The ADA says otherwise. "[U]nder the plain language of the ADA," a district court "cannot determine whether" an employer's policy constitutes a practice of unlawful discrimination "without considering whether the policy is job-related for each" employment position in question. *Harris*, 953 F.3d at 1035; *see Holiday*, 206 F.3d at 643. The Opposition admits CentraCare did not fulfill its ADA obligation to conduct an individualized assessment of Klimek's capability to fulfill her job function absent vaccination.

20

### 3. CentraCare's arguments concerning its "process" are diversionary.

CentraCare lauds its "review process" toward Klimek. Opp. 46-50. As shown above, the process was deficient, however long it lasted, because CentraCare did not undertake the required individualized analysis. Further, the process was not directed toward identifying possible accommodations for Klimek; rather, the process sought to persuade Klimek she didn't need an accommodation and should ignore her doctors and take the vaccine. App. 117; R. Doc. 64-12 at 149:18-21 ("Q. Did you talk with Christine about any potential solutions to the problem absent taking the vaccine itself? A. No."); App. 85; R. Doc. 64-9, at 116:16-25 (offer to speak with Klimek's medical providers "with the intention of – of trying to convince me to take it"); App. 59-61; R. Doc. 64-7 at PL-001187-1189; Add. 13; App. 184, R.Doc. 100. The ADA required much more.

### C. The ADA Applies to "Business Decisions."

CentraCare argues that mandatory vaccination for employees whose doctors tell them not to be vaccinated is merely a "business decision" unquestionable by courts. Opp. 51 n.6, 30, 32-33. This argument, which the district court did not adopt, conflates two different principles. CentraCare

21

Appellate Case: 25-1837    Page: 26    Date Filed: 08/20/2025 Entry ID: 5549885

made a business decision to establish the Policy. But the way in which CentraCare *applied* the Policy to Klimek was subject to the requirements of the ADA. As the authority relied upon by CentraCare for this point, *see* Opp. 51 n.6, expressly states, "employers are free to make their own business decisions, even inefficient ones, ***so long as they do not discriminate unlawfully***." *Hanebrink v. Brown Shoe Co.*, 110 F.3d 644, 646 (8th Cir. 1997) (emphasis added).

It is not a defense against an ADA claim to assert that the employer made a "business decision" unless the application of the decision is compliant with the ADA. 42 U.S.C. § 12112(b)(5)(A) prohibits discrimination in the form of "not making reasonable accommodations" to a disabled employee "unless . . . the accommodation would impose an undue hardship on the operation of the business." While the duty to reasonably accommodate can sometimes require an employer to suffer expense or inconvenience, accommodating Klimek would have imposed ***no*** discernable cost or inconvenience on CentraCare, and in fact CentraCare admits that no "business necessity" defense is at issue here. Opp. 33.

CentraCare was free to make the "business decision" to adopt the Policy, but the ADA required CentraCare to reasonably accommodate

22

Appellate Case: 25-1837    Page: 27    Date Filed: 08/20/2025 Entry ID: 5549885

Klimek by permitting her to continue working remotely without vaccination, regardless of the Policy.

### III. CENTRACARE'S ARGUMENTS CONCERNING THE ELEMENTS OF KLIMEK'S CLAIMS ARE MERITLESS.

Much of the Opposition is directed toward matters on which the evidence conclusively disproves the arguments advanced by CentraCare.

### A. <u>Vaccination Would Have Harmed Klimek.</u>

CentraCare repeatedly asserts Klimek failed to provide medical authority or documentation to demonstrate her condition precluded her from vaccination. Opp. 11-12, 18, 40. The record shows Klimek submitted two such statements from CentraCare nurse practitioner Jennifer Chirhart, Klimek's treating medical provider. App. 132, R. Doc. 67, App. 135; R. Doc. 69. Chirhart's medical conclusion that Klimek should not take a vaccine due to RSD/CRPS followed CentraCare's prior exemption of Klimek from MMR vaccination based on RSD/CRPS, after Klimek submitted another treating provider's statement that due to her RSK "the risks of a vaccine seem to outweigh the benefits." App. 127; R. Doc. 65. Other medical providers including an independent medical examiner later also determined Klimek

23

should not receive a COVID vaccination. App. 82; R. Doc. 64-9 at 100:1-23; App. 143; R. Doc. 72; App. 146-47; R. Doc. 73.

CentraCare – which admits COVID vaccination is associated with "clinical worsening of CRPS," Opp. 9 (quoting CentraCare App. 113, R. Doc. 56-15, at DEF0287) – ignores the ample evidence in the record that knowledgeable medical providers affirmed Klimek should not be vaccinated. The record does not show a single provider who treated or examined Klimek and recommended she receive vaccination.

CentraCare concludes its brief with a discussion of *Tarquinio v. Johns Hopkins Univ. Applied Physics Lab.*, 141 F.4th 568 (4th Cir. 2025). Opp. 56-57. In *Tarquinio*, the request for exception from vaccination was denied as "insufficiently supported." *Id.* at 572. The plaintiff did not provide her employer with any medical basis to show her condition precluded vaccination. She provided "no current medical documents" and "no confirmation from her doctor," and "never explained, beyond opaque references to 'immune dysregulation,' why her disability made COVID vaccination risky." *Id.* at 572, 575. She refused to permit the employer to speak with her medical providers about her condition. *Id.* at 575. The court concluded, "if the employee prevents the employer from understanding her

24

disability, then the employer's duty never arises, and the employee's claim fails." *Id.*

*Tarquinio* stands for the proposition that an employer can require an employee to substantiate, with written documentation from a medical provider, that the employee's health condition prevents the employee from vaccination. Klimek did exactly that.

CentraCare argues that Klimek refused to permit CentraCare to meet with her medical providers, like Tarquinio. Opp. 57-58. The comparison is faulty. Tarquinio's employer asked to meet with her medical providers *to obtain information about her health condition and verify whether the condition precluded vaccination*, and asked alternatively that Tarquinio provide "current documentation signed by [her] provider" to substantiate her inability to be vaccinated and "why the COVID[-]19 vaccine is contraindicated with respect to your specific medical condition." 141 F.4th at 571. CentraCare did not ask to meet with Klimek's medical providers to learn about or understand Klimek's health condition. CentraCare already possessed two current written statements signed by Klimek's medical provider (who was a CentraCare employee) explaining that Klimek's specific condition precluded COVID vaccination. CentraCare had no interest

25

in learning details about Klimek's health because Klimek's specific condition played no role in CentraCare's decision. CentraCare offered to meet with Klimek's providers not to gather information but rather to persuade them to change their mind and recommend she receive a vaccination. *See* Add. 13; App. 184, R.Doc. 100. Klimek's facts are opposite *Tarquinio* on the decisive points.

### B.   Klimek Was Disabled.

CentraCare offers four borderline frivolous theories to support the assertion Klimek was not disabled by RSD, within the meaning of the ADA.

First, CentraCare argues that Klimek's uninterrupted period of not taking any vaccinations since 2010 supports CentraCare's position. Opp. 11. By the same logic a patient with a medically documented peanut allergy cannot know whether eating peanut butter would harm her because she hasn't eaten any peanuts since 2010. Klimek's steadfast avoidance of vaccinations since 2010 supports the conclusion that her condition precludes COVID vaccination.

Next CentraCare asserts RSD does not "substantially" limit any major life activities of Klimek. Opp. 23-24. However, CentraCare does not deny RSD substantially limits the operation of Klimek's neurological function. *Cf.*

26

Appellate Case: 25-1837    Page: 31    Date Filed: 08/20/2025 Entry ID: 5549885

*id. with* Klimek Br. 24-25. Nor does CentraCare deny that Klimek's abilities to perform fine motor tasks, carry items, sleep, drive long distances, perform many "direct nursing activities," think, and eat are substantially reduced. *Cf.* Opp. 23-24 *with* Klimek Br. 25-26. CentraCare's denial of the conclusion that Klimek is disabled is meaningless because CentraCare does not deny the facts that establish Klimek is disabled.

Next CentraCare argues Klimek's limitations must be "substantial," and not "non-trivial" to qualify as a disability. Opp. 23. However, CentraCare does not dispute that the standard for a "substantial" limitation is not demanding, *cf.* Opp. 23 *with* Klimek Br. 21-24, and CentraCare agrees a "substantial" impairment is equivalent to a "material" impairment, Opp. 21-22 n.2. Whether "substantial" is characterized as meaning "material" or "non-trivial" – if the two have any difference -- the record shows Klimek's impairment is substantial, material, *and* non-trivial. *See* Klimek Br. 24-26.

Next CentraCare argues that evidence of Klimek's disability is "generalized" and does not describe the "timeframe, frequency, or extent of the limitations." Opp. 24. But CentraCare admits that the evidence shows Klimek's limitations began "post-injury in 2010 and 2011" and that the evidence shows her limitations continued during this lawsuit. *Id*. at 23-24.

27

CentraCare does not identify, and the record does not contain, any evidence to suggest Klimek's limitations mysteriously ceased in 2021 before reappearing after she was terminated. Rather, the record shows Klimek's condition in 2021 substantially limited her important life activities as it did before and after 2021. Klimek informed CentraCare at least twice in writing in 2021 of her severe limitations from RSD. Among other things, she wrote:

- "I now have a recorded permanent disability in my right arm which is a life-long and progressive condition. My right arm, wrist, and hand bones along with the soft tissue have atrophied over the years . . ." App. 139-140; R. Doc. 70 at DEF0405-0406 (Nov. 3, 2021 letter).

- "I cannot have anything done to my body intentionally as it exacerbates my condition . . . . I live with the condition every day including acute and chronic pain throughout my body, not only in the right arm but in any part of my body in which I have incurred an injury since 2010." R. Doc. 68 at PL-001456-57 (Sept. 17, 2021 email).

The assertion Klimek was not substantially impaired by RSD in 2021 is preposterous. CentraCare relies not on evidence to support its assertion

28

but on logical fallacy. CentraCare claims Klimek's ability to be "pretty independent" and to "manage any pain at home" somehow contraindicates a disability. Opp. 23. Substantial impairment of a person's ability to perform important life activities is fully consistent with being "pretty independent" and managing pain at home, as readily illustrated by the examples of persons missing an arm or suffering from severe rheumatoid arthritis. Klimek's condition meets the low ADA standard of a "substantial" impairment of an important life activity. *See* Klimek Br. 21-26. At minimum Klimek presented evidence sufficient to permit a jury to reasonably decide this issue in her favor.

### C. CentraCare Terminated Klimek on the Basis of Her Disability.

CentraCare argues that Klimek was not terminated on the basis of her disability, but rather based on her vaccination status. Opp. 34. The district court did not find this argument even worth mentioning in its Order. The ADA does not permit employers to escape their obligations based on such sophistry. Discrimination "on the basis of disability" is defined in the statute to include "utilizing *standards*, *criteria* . . . that have the *effect* of discrimination on the basis of disability," "*not making reasonable accommodations* to the

29

known physical or mental limitations of an otherwise qualified individual with a disability," and "using qualification standards . . . *that screen out or tend to screen out* an individual with a disability." 42 U.S.C. § 12112(b)(3), (5)(A), (6) (emphases added). If an employee cannot perform a non-job-function task (*e.g.*, walking, vaccination) because of a disability (*e.g.*, paraplegia, physical limitations caused by RSD), the employer cannot terminate her based on the "status" of inability to perform the task (*e.g.*, non-walking status, unvaccinated status) as a defense against an ADA claim. That would have the effect of discrimination on the basis of disability, would be a failure to make reasonable accommodation, and would impose a qualification standard that tends to screen out an individual with a disability. Under the statute, termination of Klimek for disability-caused unvaccinated status is equivalent to termination based on the disability itself.

### D. <u>Klimek's Requested Accommodation Was Reasonable and Related to Her Disability.</u>

CentraCare argues that Klimek did not request an accommodation that was reasonable and related to her disability. Opp. 35-54. The record shows Klimek was an employee already working from home one hundred percent

30

of the time whose medical providers told her not to receive a vaccination due to her disabling health condition, and she asked CentraCare to excuse her from being vaccinated and allow her to continue working from home. *See* Klimek Br. 8-10, 55. The relevance and reasonability of her request are obvious. CentraCare advances a smorgasbord of assertions evading the obvious, but identifies no evidence to create a dispute of material fact.

### 1. *Hustvet* **is inapposite.**

CentraCare does not deny the unsuccessful plaintiff in *Hustvet* had no disability and had a job that required her to be in physical proximity with clients who were immune compromised or fragile. *Cf.* Klimek Br. 41-42 *with* Opp. 36-37. The reasons such an employee could reasonably be required by her employer to receive a vaccination against communicable disease, without running afoul of the *Americans with Disabilities Act*, need no explanation. *Hustvet* is distinguishable on the critical facts. CentraCare asserts the "central holding" of *Hustvet* concerns "recognized public health authorities." *Id.* at 37. *Hustvet*'s undeveloped reference to the CDC is dicta. After the Court determined Hustvet was not disabled and her employer had an important job-related reason to require vaccination, no consideration of the relevance of CDC opinions was necessary.

31

## 2. The "CMS Rule" supports Klimek.

CentraCare next relies upon prefatory language explaining a "CMS Rule," specifically 86 Fed. Reg. 61,555 (Nov. 5, 2021). Opp. 31, 37. Klimek provided CentraCare with the documentation described in the Rule – statements by an authenticating practitioner recommending Klimek not be vaccinated based on her RSD. App. 132, R. Doc. 67, App. 135; R. Doc. 69. Moreover, the CMS Rule specifically *affirms* that Klimek did not need to be vaccinated for her fully-remote job:

- "Individuals who provide services 100 percent remotely, such as fully remote telehealth or payroll services, are not subject to the vaccination requirements of this IFC," and

- "[E]mployers must comply with applicable Federal anti-discrimination laws and civil rights protections," specifically including "The Americans with Disabilities Act," when implementing COVID-19 vaccination policies.

86 Fed. Reg. at 61,570, 61,568.

32

### 3. Hearsay generalized medical statements do not support summary judgment.

CentraCare cites two sources unmentioned by the district court concerning the alleged ability of persons with RSD to take COVID vaccination. Opp. 9, 39-40, 50. These materials do not support the district court's decision for several reasons.

First, they are hearsay. Inadmissible hearsay cannot be considered at summary judgment. *Bell v. Baptist Health*, 60 F.4th 1198, 1205 (8th Cir. 2023). One of the sources appears to be an Internet site and Facebook posting from a private organization (RSDSA), and the other an article in the Pain Management Journal. CentraCare App. 100-107; R. Doc. 56-14; CentraCare App. 109-114; R. Doc. 56-15 at DEF0283. Both are unsworn statements from out of court, offered by CentraCare for the truth of their assertions.

Second, the RSDSA statement says, "As always, **we are NOT instructing/demanding anyone get the vaccine**. . . . **[P]lease consult your physician for personalized medical advice**." CentraCare App. 107; R. Doc. 56-14 at DEF1706 (emphases added). That is, the statement does *not* instruct anyone to receive the COVID vaccine and specifically advises patients to consult their physician for personalized medical advice. The only

33

"personalized medical advice" in the record is the recommendations of Klimek's treating medical providers that she should not receive the vaccination.

Third, the journal article says COVID vaccination has been shown to exacerbate RSD/CRPS symptoms. CentraCare App. 109; R. Doc. 56-15 at DEF0283 ("We present the acute worsening of clinical presentation in complex regional pain syndrome (CRPS), following mRNA-based COVID-19 vaccination."). While the authors encourage vaccination, CentraCare App. 113; R. Doc. 56-15 at DEF0287, the authors never examined Klimek. Their view has zero weight, even if it was admissible, when the opinions of the medical professionals who did examine or treat Klimek are available.

### 4. Continuing to work from home was part of Klimek's request to CentraCare.

Like the district court, CentraCare argues, "Klimek requested a medical exemption from vaccination, not an accommodation to work remotely." Opp. 51. This asserted distinction is factually incorrect, unreasonable, and legally irrelevant. *See* Klimek Br. 55-58.

34

## <u>CONCLUSION</u>

For the reasons stated above and in Klimek's opening brief, the district court's decision should be reversed.

Dated August 20, 2025         PARKER DANIELS KIBORT LLC

<u>/s/Andrew D. Parker</u>
Andrew D. Parker (MN Bar No. 0195042)
888 Colwell Building
123 North Third Street
Minneapolis, MN 55401
(612) 355-4100
parker@parkerdk.com

*Counsel for Appellant Christine Klimek*

Appellate Case: 25-1837   Page: 40   Date Filed: 08/20/2025 Entry ID: 5549885

## <u>Certificate of Compliance</u>

1.  This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

> **X**   this document contains <u>6,500</u> words

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because:

> **X**   this document has been prepared in a proportionally spaced typeface using Microsoft Word version 2504, in 14-point Book Antiqua font.

Dated: August 20, 2025                    /s/ Andrew D. Parker
                                          Attorney for Appellant Christine Klimek


## <u>Eighth Circuit Rule 28A(h)(2) Certification</u>

The brief in this filing has been scanned for viruses and is virus-free.

Dated: August 20, 2025                    /s/ Andrew D. Parker


## <u>Certificate of Service</u>

I hereby certify that on August 20, 2025, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system.  I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

                                          /s/ Andrew D. Parker

Appellate Case: 25-1837    Page: 41    Date Filed: 08/20/2025 Entry ID: 5549885